**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: _____

JUAN COLLINS, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                                                                    **CLASS ACTION COMPLAINT**

QUINCY BIOSCIENCE, LLC,                          **JURY DEMAND**
a Wisconsin limited liability company,

      Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff Juan Collins brings this action, on behalf of himself and all others similarly situated, against Defendant Quincy Bioscience, LLC ("Quincy") and states:

### NATURE OF ACTION

      1.      Quincy manufactures, markets, and distributes Prevagen, a purported brain health supplement made with the protein apoaequorin (pron. 'a-po-ah-kwor-in').[1] For over a decade, Quincy has uniformly marketed Prevagen nationwide as being designed for one purpose:



Quincy unequivocally represents that "Prevagen improves memory" on the front page of its website,[2] in every advertisement, be it in print, on the internet, or on television, and even on the front of every bottle of Prevagen—where it cannot be missed by consumers. Quincy further represents on the front of every Prevagen package label that Prevagen "[s]upports" "Healthy

---

[1] These products include: Prevagen Regular Strength Capsules (10 mg. apoaequorin), Prevagen Regular Strength 60 Capsules (10 mg. apoaequorin), Prevagen Extra Strength Capsules (20 mg. apoaequorin), Prevagen Mixed Berry Chewable (10 mg. apoaequorin), Prevagen Extra Strength Chewable (20 mg. apoaequorin), and Prevagen Professional Strength (40 mg. apoaequorin) (collectively, "Prevagen" or "the products").

[2] https://www.prevagen.com/

Brain Function," "Sharper Mind," and "Clearer Thinking." On the back of every Prevagen label, Quincy further represents that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days."

2.      In truth, it is impossible for Prevagen to work as represented, and Quincy repeatedly and uniformly makes false statements to the public about Prevagen's ability (rather, non-ability) to improve memory or to otherwise affect the brain. Apoaequorin, the only purported active ingredient in Prevagen, is nothing more than a protein that, once ingested, is completely and rapidly destroyed by the digestive system and transformed into common amino acids (and possibly small peptides) no different than those derived from, say, baloney.

3.      Moreover, Prevagen is sold in doses ranging from 10–40 mg (or .01–.04 grams). Given that the average daily diet contains about 75 grams of protein, a single dose of Prevagen accounts for about .013–.053% of the protein the average person consumes daily. Thus, the protein consumed through a daily dose of Prevagen amounts to a mere drop in the ocean that can have no measurable effect on the brain.

4.      Finally, the fact that Prevagen cannot affect the brain is further supported because the protein derivatives the apoaequorin is rapidly digested into are unable to cross the blood brain barrier, so they can never reach the brain to affect it to begin with.

5.      Therefore, Prevagen is rapidly digested and completely destroyed during the absorption process and cannot "[s]upport" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," it cannot "help with mild memory problems associated with aging" nor can it "improve memory within 90 days," or any of the other things Quincy claims it can. The only reason a consumer would purchase Prevagen is to obtain these advertised health benefits, which Prevagen does not—and cannot—provide.

6.      Quincy is well-aware that Prevagen does not provide the health benefits they advertise. Quincy attempts to bolster its misrepresentations through hyping an unpublished, in-house study it performed to test Prevagen, which it calls the "Madison Memory Study." Yet, in a recent action the FTC brought against Quincy, the court indicated that "[i]t is common ground that the Madison Memory Study … *failed to show a statistically significant improvement in the experimental group over the placebo group as a whole*."[3] Further, on February 8, 2019, during

---

[3]   Patten, Bonnie. *Prevagen is Going to The Dogs*. (Feb. 22, 2019) *available at* https://www.truthinadvertising.org/prevagen-is-going-to-the-dogs/

oral argument before the Second Circuit Court of Appeal regarding that same case, Quincy's counsel had the following exchange with the panel:

> Prevagen: "*We don't dispute that* if you look across the entire 211 people who completed the study *there was no statistically significant difference* but-"
>
> Court: "You couldn't. You couldn't dispute that."
>
> Prevagen: "And I'm not."[4]

Regarding its claims that apoaequorin can cross the blood-brain barrier, Quincy said at the same oral argument that:

> Did we ever say we have evidence that it [Prevagen] crosses the *human* blood brain barrier? *No*. We only say we have evidence that it crosses the blood brain barrier *in the dog study*.[5]

7.      Quincy's misrepresentations regarding Prevagen are false, deceptive, and are likely to mislead reasonable consumers.

8.      As a result of Quincy's false and deceptive representation, consumers – including Plaintiff and members of the proposed Class – have purchased a product that does not perform as advertised. Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased Prevagen to halt the dissemination of these false, misleading and deceptive advertising messages, correct the false and misleading perception they have created in the minds of consumers, and obtain redress for those who have purchased Prevagen. Based on violations of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq.*, Florida Statutes ("FDUTPA") and unjust enrichment, Plaintiff seeks injunctive and monetary relief for consumers who purchased Prevagen.

## PARTIES

9.      Plaintiff Juan Collins ("Plaintiff Collins") is a citizen of Leon County, Florida and is currently a Senior Attorney for the Florida Dispute Resolution Center of the Office of the State Courts Administrator. Plaintiff Collins was also a Deputy General Counsel at the Agency for Persons with Disabilities, an Assistant General Counsel at the Florida Department of Children and Families, and is a retired JAG Officer having served over 29 years in the United States Army Reserve. Plaintiff Collins is the father of six children and has eight grandchildren and two god-sons. Plaintiff Collins serves on the Board of Directors for the Neighborhood Medical Center and

---

[4] *Id.*

[5] *Id.*

the Sickle Cell Foundation and serves as Vice-President of the Tallahassee Area Chapter of 100 Black Men. Plaintiff Collins was selected "Man of the Year" by the Tallahassee Chapter of 100 Black Men at the Chapter's 2017 Black Tie Scholarship Gala on June 16, 2017. When Plaintiff Collins' sister was diagnosed with Alzheimer's, he did everything in his power to help prolong her life and to preserve her mental faculties. This is why in Summer 2017 Plaintiff Collins purchased Prevagen Extra Strength from a Walgreens located at 1106 Clearlake Road, Cocoa, Florida 32922. Prior to purchasing these products, Plaintiff Collins was exposed to and saw Quincy's memory improvement representations by reading the Prevagen Extra Strength label, as well as other advertisements, including television, internet, and print advertisements. The Prevagen Extra Strength Plaintiff Collins purchased did not and could not improve memory or support healthy brain function as represented. As a result, Plaintiff Collins suffered injury in fact and lost money at the point of purchase. Had Plaintiff Collins known the truth about Quincy's misrepresentations and omissions, he would not have purchased the Prevagen Extra Strength.

10.     Defendant Quincy is a limited liability company organized and existing under the laws of the state of Wisconsin. Quincy's headquarters is at 301 South Westfield Road, Suite 200, in Madison, Wisconsin. The sole member of Quincy is Quincy Bioscience Holding Company, Inc. Quincy Bioscience Holding Company, Inc. is a Wisconsin corporation. Defendant Quincy is therefore a citizen of Wisconsin. Defendant Quincy manufactures, advertises markets, distributes, and/or sells Prevagen to tens of thousands of consumers in Florida and throughout the United States. Quincy may be served with process by serving its registered agent, Keith A. Thomsen, at 726 Heartland Trail, Suite 300, Madison, WI 53717.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is an action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than Quincy.

12.     This Court has personal jurisdiction over Quincy because Quincy is authorized to do business and is conducting business throughout the United States, including in Florida. Quincy has marketed, promoted, distributed, and sold the Prevagen products in the United States, including Florida, and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and Quincy is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of the Prevagen products in this District and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

14.     Quincy manufactures, distributes, markets and sells nationwide, including in Florida, a variety of Prevagen products, which contain a purported active ingredient called apoaequorin (pron. 'a-po-ah-kwor-in'), which Quincy clams "is safe and uniquely supports brain function."[6] This lawsuit concerns six of those products, *see* p. 1, *supra* at n. 1.

15.     Quincy's Prevagen products are sold in virtually every major food, drug, and mass retail outlet in the country, as well as online through Quincy's Prevagen website. Prevagen prices range from about $39.95–$89.95 per bottle, depending on the pill count or dosage of apoaequorin. The following are screen shots of the products:[7]



| Prevagen® Regular Strength Capsules | Prevagen® Regular Strength Chewables | Prevagen® Extra Strength Capsules |
|---|---|---|
| $39.95 | $39.95 | $59.95 |
| SHOP NOW | SHOP NOW | SHOP NOW |
| 10 mg of the patented ingredient apoaequorin per capsule. | 10 mg of the patented ingredient apoaequorin in a mixed berry tablet. | 20 mg of the patented ingredient apoaequorin per capsule. |

---

[6] *See* https://www.prevagen.com/about-prevagen/

[7] *See* https://www.prevagen.com/shop/



16.     Since Prevagen's launch in 2007, Quincy has consistently conveyed the message to consumers throughout the United States, including in Florida, that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." It does not. Quincy's misrepresentations are false, misleading and deceptive.

17.    Despite the evidence, scientific fact, and Quincy's own admissions that Prevagen does not and cannot improve memory or support brain function, sharper mind or clearer thinking, each and every Prevagen package and label repeatedly emphasizes that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." Each and every consumer who purchases Prevagen is exposed to these deceptive misrepresentations, which appear prominently and conspicuously on the front, back, and/or sides of each Prevagen box as follows:





18.     And, on the top of the Prevagen box is a picture of the brain encircled by the "SUPPORTS HEALTHY BRAIN FUNCTION" misrepresentation:



19. Quincy's misrepresentations regarding Prevagen are conspicuously present on its website:





As well as in its television and internet advertisements:



20.     As of the filing of this Complaint, Quincy continues to unequivocally and falsely claim that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." The only reason a consumer would purchase Prevagen is to obtain these advertised health benefits, which Prevagen does not—and cannot—provide.

21.     Plaintiff and the Class members have been damaged in their purchases of these products based on Quincy's false representations. Plaintiff and Class members have been and will continue to be deceived or misled by Quincy's false and deceptive misrepresentations. Plaintiff would not have purchased Prevagen had he known that Quincy's claims were false and misleading.

## CLASS ACTION ALLEGATIONS

22.     As detailed below in the individual counts, Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

### A. **Class Definitions**

23.     Plaintiff seeks to represent the following Florida Class:

> All consumers from Florida who, within the applicable limitations period, purchased the Prevagen products.

24.     Excluded from the above Class are Quincy and its officers, directors and employees and those who purchased Prevagen for resale.

25.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before or after the Court determines whether such certification is appropriate as discovery progresses.

### B. **Numerosity**

26.     The Class is comprised of thousands of consumers throughout the state of Florida. The Class is so numerous that joinder of all members of the Class is impracticable. The precise number of class members is unknown to Plaintiff.

### C. **Commonality/Predominance**

27.     This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b) whether the alleged conduct constitutes violations of the FDUTPA;

(c) whether Quincy engaged in false or misleading advertising;

(d) whether Quincy has been unjustly enriched at the expense of Plaintiff and the Class members as a result of Quincy's false and misleading representations;

(e) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f) whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

### D. Typicality

28.     Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Quincy's deceptive statements, including that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class Members.

### E. Adequacy of Representation

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the classes. Plaintiff anticipates no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiff has chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

### F. Requirements of Fed. R. Civ. P. 23(b)(3)

30.     The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed Class members are based on the common marketing and sales practices Quincy utilized in its sale of Prevagen to Plaintiff and the unnamed Class members.

31.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

32.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Class as is in the case at bar, common questions will be held to predominate over individual questions.

**G.   Superiority**

33.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a)  Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the country;

(b)  Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c)  There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d)  The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e)  Individual suits would not be cost effective or economically maintainable as individual actions; and

(f)  The action is manageable as a class action.

**H.   Requirements of Fed. R. Civ. P. 23(b)(2)**

34.     Quincy has acted and refused to act on grounds generally applicable to the classes by engaging in a uniform marketing and advertising campaign containing false, misleading and deceptive representations and material omissions that were reasonably likely to mislead Plaintiff and the Class, thereby making appropriate final injunctive relief with respect to the classes as a whole.

**COUNT I**
**For Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**§ 501.201, Florida Statutes, *et seq.***
**(On behalf of Plaintiff Collins and Members of the Florida Class)**

35.     Plaintiff Collins realleges and incorporates by reference the allegations contained in paragraphs 1–34 as if fully set forth herein.

36.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq*. ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of

competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

37.     Plaintiff Collins is a consumer as defined by section 501.203, Fla. Stat. The Prevagen products are goods within the meaning of the FDUTPA. Quincy is engaged in trade or commerce within the meaning of the FDUTPA.

38.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The FDUTPA also prohibits false and misleading advertising.

39.     Quincy's unfair and deceptive practices as described herein are likely to mislead – and have misled – consumers acting reasonably in the circumstances.

40.     Quincy has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

41.     Plaintiff Collins and consumers in the Florida Class have been aggrieved by Quincy's unfair and deceptive practices and acts of false advertising in that they paid for the Prevagen products that did not and could not "[s]upport[]" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," "help with mild memory problems associated with aging" or "improve memory within 90 days" as represented.

42.     The harm suffered by Plaintiff Collins and consumers in the Florida Class was directly and proximately caused by the deceptive, misleading and unfair practices of Quincy, as more fully described herein.

43.     Pursuant to section 501.211(1), Fla. Stat., Plaintiff Collins and consumers in the Florida Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Quincy and for restitution and disgorgement.

44.     Additionally, pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiff Collins and consumers in the Florida Class make claims for damages, attorneys' fees and costs.

**COUNT II**
**Unjust Enrichment**
**(On behalf of Plaintiff Collins and Members of the Florida Class)**

45.     Plaintiff Collins realleges and incorporates by reference the allegations contained in paragraphs 1–34 as if fully set forth herein.

46.     At all times relevant hereto, Quincy designed, manufactured, produced, promoted, marketed and/or sold the Prevagen products.

47.     Plaintiff Collins and consumers in the Florida Class conferred upon Quincy non-gratuitous payments for the Prevagen products. Quincy appreciated, accepted or retained the non-gratuitous benefits conferred by Plaintiff Collins and consumers in the Florida Class, with full knowledge and awareness that, as a result of Quincy's deceptive marketing, Plaintiff Collins and consumers in the Florida Class were not receiving Prevagen products of the quality, nature, fitness or value that had been represented by Quincy and reasonable consumers would have expected.

48.     Quincy profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff Collins and consumers in the Florida Class, under circumstances in which it would be unjust for Qunicy to be permitted to retain the benefit. Under common law principles of unjust enrichment, Quincy should not be permitted to retain the benefits of this unjust enrichment.

49.     Because Quincy's retention of the non-gratuitous benefits conferred by Plaintiff Collins and consumers in the Florida Class is unjust and inequitable, Plaintiff Collins and consumers in the Florida Class are entitled to, and hereby seek disgorgement and restitution of Quincy's wrongful profits, revenue, and benefits in a manner established by the Court.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

   a.   Certifying the Florida Class as requested herein;

   b.   Awarding Plaintiff Collins and consumers in the Florida Class damages;

   c.   Awarding restitution and disgorgement of Defendant's revenues to Plaintiff Collins and consumers in the Florida Class;

   d.   Awarding injunctive relief as permitted by law or equity, including enjoining Quincy from continuing the unlawful practices as set forth herein, and directing Quincy to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

e.  Awarding statutory damages, as appropriate;

f.  Ordering Quincy to engage in a corrective advertising campaign;

g.  Awarding attorneys' fees and costs; and

h.  Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: July 11th, 2019.

Respectfully submitted,

By: */s/ Adam Moskowitz*

Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

Jack Scarola, Esq.
Florida Bar No. 169440
jsx@searcylaw.com
**SEARCY DENNEY SCAROLA
BARNHART & SHIPLEY PA**
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Telephone: (561) 686-6300
Fax: (561) 383-9451

*Counsel for Plaintiff and the Class*