**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: 1:19-cv-22864-MGC

JUAN COLLINS, on behalf of himself and
all others similarly situated,

      Plaintiff,

vs.

QUINCY BIOSCIENCE, LLC,
a Wisconsin limited liability company
      Defendants.
_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION**
**COMPLAINT AND TO STRIKE THE CLASS ALLEGATIONS THEREIN**
**AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 1

ARGUMENT ........................................................................................................ 5

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ........................ 5

     A.     Plaintiff's FDUTPA And Unjust Enrichment Claims Must Be Dismissed Because His Allegations Are Contradicted By the Madison Memory Study .................... 6

     B.     The Complaint Should Be Dismissed Because Plaintiff Is Not A Reasonable Consumer and Suffered No Injury ................................................................ 8

     C.     Plaintiff's Claims Should Be Dismissed Because They Are Based On A Lack Of Substantiation Theory Available Only to Government Actors .......................... 11

     D.     Plaintiff's Claims Are Not Plead with Sufficient Particularity ........................... 12

     E.     The Court Should Dismiss Plaintiff's Claims for Statutory Damages Under FDUTPA ...................................................................................................... 14

II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING ................................................................................................... 14

     A.     Plaintiff Lacks Standing to Pursue Claims Based on Any Products Other Than the Variety of Prevagen He Allegedly Purchased ........................................... 15

     B.     Plaintiff Lacks Standing to Seek Injunctive Relief ........................................... 15

III.    THE CLASS ALLEGATIONS SHOULD BE STRICKEN ................................... 16

     A.     Plaintiff's Claims Are Atypical Of Class Members Who Purchased Prevagen Products ....................................................................................................... 16

     B.     Individualized Questions of Law and/or Fact Will Predominate Over Any Common Questions That May Exist ................................................................ 17

     C.     The Proposed Class Definition Is Overbroad And Unascertainable .................. 19

     D.     The Plaintiff Cannot Represent a Class Seeking Injunctive Relief /Under Rule 23(b)(2) Because He Lacks Standing to Do So ............................................... 20

CONCLUSION .................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADT Sec. Servs., Inc. v. Swenson,*
    No. CIV. 07-2983, 2008 WL 2828867 (D. Minn. July 21, 2008) ..................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................. 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................. 5

*Bohlke v. Shearer's Foods, LLC,*
    No. 9:14-CV-80727, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015) ..................................15

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
    116 F.3d 1364 (11th Cir. 1997) ............................................................................3, 6

*Camden Shipping Corp. v. Manson Constr. Co.,*
    No. 3:07-CV-560-J-25 JRK, 2008 WL 11433231 (M.D. Fla. Mar. 19,
    2008) ......................................................................................................................14

*Carriuolo v. Gen. Motors Co.,*
    823 F.3d 977 (11th Cir. 2016) ................................................................................16

*Casey v. Florida Coastal Sch. of Law, Inc.,*
    No. 3:14-cv-1229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015) ...................... 5, 9, 10

*Casey v. Florida Coastal Sch. of Law, Inc.,*
    No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084 (M.D. Fla. Aug. 11,
    2015) ...................................................................................................................... 9

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,*
    332 Fed. App'x 565 (11th Cir. 2009) .......................................................................11

*Colgate v. JUUL Labs, Inc.,*
    345 F. Supp. 3d 1178 (N.D. Cal. 2018) ....................................................................14

*Comercial LTDA v. BPI Sports, LLC,*
    No. 0:16-CV-60147-WPD, 2016 WL 11504099 (S.D. Fla. Dec. 1, 2016).....................12

*Dapeer v. Neutrogena Corp.,*
    95 F. Supp. 3d 1366 (S.D. Fla. 2015) ................................................................. 15, 16

*Franulovic v. Coca Cola Co.*,
  390 F. App'x 125 (3d Cir. 2010)..................................................................................11

*FTC v. Quincy Bioscience Holding Co.*,
  272 F. Supp. 3d 547 (S.D.N.Y. 2017)..........................................................................3

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) ..........................................................................15

*Garcia v. Santa Maria Resort, Inc.*,
  528 F. Supp. 2d 1283 (S.D. Fla. 2007) ......................................................................5, 2

*Gen. Motors Acceptance Corp. v. Laesser*,
  718 So. 2d 276 (Fla. 4th DCA 1998) ...........................................................................18

*In re GNC Corp.*,
  789 F.3d 505 (4th Cir. 2015) ....................................................................................7, 8

*In re GNC Corp.*,
  No. 14-2491, 2014 WL 2812239 (D. Md. June 20, 2014) ............................................7

*Greifenstein v. The Estee Lauder Corp., Inc.*,
  No. 12-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2014) .........................................7

*Guerrero v. Target Corp.*,
  889 F. Supp. 2d 1348 (S.D. Fla. 2012) ........................................................................6

*Hill v. Hoover Co.*,
  899 F. Supp. 2d 1259 (N.D. Fla. 2012)........................................................................6

*Hoffman v. Nat. Factors Nutritional Prods. Inc.*,
  No. 12-7244 (ES)(MAH), 2014 U.S. Dist. LEXIS 86798 (D.N.J. June 26,
  2014) ............................................................................................................................11

*Hubbel v. Aetna Cas. & Sur. Co.*,
  758 So. 2d 94 (Fla. 2000).............................................................................................18

*In re iPhone 4S Consumer Litig.*,
  No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ..............................14

*Karhu v. Vital Pharms., Inc.*,
  No 13-cv-60768, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014) .......................................19

*Leon v. Cont'l AG*,
  301 F. Supp. 3d 1203 (S.D. Fla. 2017) .................................................................12, 13

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
    No. 15-24363-CIV, 2018 WL 4932871 (S.D. Fla. Apr. 23, 2018) ..................................15

*Merl v. Warner Bros. Entm't Inc.*,
    No. 1:12-CV-20870-PAS, 2013 WL 266049 (S.D. Fla. Jan. 23, 2013) ........................... 6

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ..................................................................................... 5

*Montgomery v. New Piper Aircraft, Inc.*,
    209 F.R.D. 221 (S.D. Fla. 2002) ................................................................................18

*Murray v. Auslander*,
    244 F.3d 807 (11th Cir. 2001) ..................................................................................... 6

*In re NJOY, Inc. Consumer Class Action Litig.*,
    No. CV1400428MMMRZX, 2014 WL 12586074 (C.D. Cal. Oct. 20,
    2014) ........................................................................................................................... 3

*O'Neill v. The Home Depot U.S.A., Inc.*,
    243 F.R.D. 469 (S.D. Fla. 2006) ................................................................................18

*Pelkey v. McNeil Consumer Healthcare*,
    No. 10-61853-CIV, 2011 WL 677424 (S.D. Fla. Feb. 16, 2011) ..................................11

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ............................................................................. 7, 20

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006)....................................................................18

*Scheuerman v. Nestle Healthcare Nutrition*,
    Nos. 10-3684 (FSH)(PS), 10-5628 (FSH)(PS), 2012 U.S. Dist. LEXIS
    99397 (D.N.J. July 17, 2012) ......................................................................................11

*In re Scientific-Atlanta, Inc. Secs. Litig.*,
    571 F. Supp. 2d 1315 (N.D. Ga. 2007)........................................................................16

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-CV-7061 (NSR), 2016 WL 8650462 (S.D.N.Y. Feb. 5, 2016) ........................... 8

*Spence v. Basic Research*,
    No. 2:16-cv-925-CW, 2017 U.S. Dist. LEXIS 85175 (D. Utah June 2,
    2017) ..........................................................................................................................14

*Teggerdine v. Speedway LLC*,
    No. 8:16-CV-3280-T-27TGW, 2017 WL 2105224 (M.D. Fla. May 12,
    2017) ................................................................................................................14

*Trunzo v. CitiMortgage*,
    Civ. No. 2:11-cv-1124, 2014 U.S. Dist. LEXIS 43056 (W.D. Pa. Mar. 31,
    2014) ................................................................................................................17

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) ......................................................................14

*Vandenbrink v. State Farm Mut. Auto. Ins. Co.*,
    No. 8:12-CV-897-T-30TBM, 2012 WL 3156596 (M.D. Fla. Aug. 3, 2012) ...................16

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ......................................................................18

*Walewski v, Zenimax Media, Inc.*,
    No. 6:11-cv-1178-Orl-28DAB, 2012 WL 834125 (M.D. Fla. Jan. 30, 2012)...................19

**Statutes and Rules**

Fla. Stat. § 501.211(2) ........................................................................................18

Fed. R. Civ. P. 9(b) .............................................................................1, 5, 6, 12, 14

Fed. R. Civ. P. 23 ................................................................................................1, 16

Defendant Quincy Bioscience LLC ("Quincy" or "Defendant") respectfully submits this motion for an order dismissing plaintiff Juan Collins' ("Plaintiff") Class Action Complaint (the "Complaint") (Dkt. No. 1) and striking the class allegations therein pursuant to Rules 12(b)(6), 9(b), 12(b)(1), 12(f) and 23 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's "false advertising" claims against Quincy fail for the most fundamental reason: the double-blinded, placebo-controlled, randomized clinical trial on which Plaintiff relies in his Complaint and on which Quincy premised its advertisements for its line of brain health supplements marketed under the Prevagen® brand name, conclusively demonstrates that Quincy's marketing statements about the Prevagen products were both truthful and fully substantiated. As such, Plaintiff's claims that Quincy violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and is liable to Plaintiff based on a claim of unjust enrichment each fail. The Court should dismiss the Complaint with prejudice in its entirety.

Even if the clinical study that Plaintiff relies upon did not belie all of his claims in this action, which it does, Plaintiff's claims fall short on many other bases. Plaintiff did not act in a manner consistent with that of a reasonable consumer, and he has not suffered the requisite injury to maintain a FDUTPA claim. In addition, because Plaintiff's claims sound in fraud, they must, but do not, satisfy the stringent pleading requirements of Fed. R. Civ. P. 9(b). Further, even if Plaintiff had adequately plead an actionable claim under FDUTPA or for unjust enrichment, Plaintiff lacks standing to assert claims relating to five of the six Prevagen products referenced in the Complaint or to seek injunctive relief. Finally, because the allegations in the Complaint make it clear that Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23, the Complaint's class allegations should be stricken because Plaintiff's idiosyncratic experience with Prevagen puts him in a class of one.

## BACKGROUND

Plaintiff filed his Complaint on July 11, 2019, asserting claims under FDUTPA and for unjust enrichment on behalf of himself and a proposed class of others similarly situated. The Complaint challenges Quincy's marketing with respect to its line of dietary brain health

supplements marketed under the Prevagen® brand name (collectively "Prevagen"). (Compl. ¶ 1.) The Complaint asserts claims related to six different Prevagen products, even though Plaintiff alleges he only purchased one. The active ingredient in each of these products is apoaequorin, a calcium-binding protein originally discovered in *aequoria victoria* jellyfish. (*Id.* ¶ 1; *see also* https://www.prevagen.com/.) Plaintiff does not allege that he purchased Prevagen for himself, but instead alleges that he purchased it for his sister, who was diagnosed with Alzheimer's disease prior to the time Plaintiff purchased the product. (*Id.* ¶ 9.)

The challenged advertising and labeling clearly state that Prevagen will "improve memory within 90 days," ***"help[s] with mild memory problems associated with aging,"*** and supports a "sharper mind," "clearer thinking," and "healthy brain function." (Compl. ¶ 1 (emphasis added).) Because Prevagen is a dietary supplement and marketed as such, its advertising contains the disclaimer: "This product is not intended to diagnose, treat, cure or prevent any disease." (*Id.* ¶¶ 19.) To be certain, Plaintiff does not allege that Prevagen is advertised as a treatment for Alzheimer's disease. It is not. Nor does he allege that Quincy made any representations or claims that Prevagen would prolong the life of an individual suffering from Alzheimer's or in any way preserve their "mental faculties," which Plaintiff alleges to be one of the reasons he purchased Prevagen. (*Id.* ¶ 9.) Instead, Plaintiff merely alleges (incorrectly) that Prevagen's marketing statements are "false, misleading, and deceptive." (*Id.* ¶ 16.) Plaintiff bases these allegations on the conclusory and unsupported assertion that "it is impossible for Prevagen to work as represented" because Prevagen's active ingredient, "once ingested, is completely and rapidly digested" and "unable to cross the blood brain barrier." (*Id.* ¶¶ 2, 4.) Plaintiff further alleges that "the fact that Prevagen cannot affect the brain is further supported because the protein derivatives the apoaequorin is rapidly digested into are unable to cross the blood brain barrier, so they can never reach the brain to affect it to begin with." (*Id.* ¶ 4.) Plaintiff does not provide any factual or scientific support for these allegations. Plaintiff does not, however, allege that Quincy advertised that Prevagen's active ingredient was not completely digested or crossed the human blood-brain barrier. That is because the advertising at issue contained no such statements.

As Plaintiff admits in his Complaint, Quincy conducted a 90-day randomized, double-blind, placebo controlled study that fully substantiates its advertising for Prevagen, the Madison Memory Study.  (Compl. ¶ 6.)  The Madison Memory Study, which is referred to and relied upon in Plaintiff's Complaint—fully supports and substantiates Quincy's marketing statements.  This admission alone undermines the claims in his Complaint.

The Madison Memory Study was designed "to determine whether Prevagen with apoaequorin (10 mg) improves quantitative measures of cognitive function in community dwelling, older adults."  Kenneth C. Lerner, *Madison Memory Study: A Randomized, Double-Blinded, Placebo-Controlled Trial of Apoaequorin in Community-Dwelling, Older Adults*, at 1 (Aug. 1, 2016) (attached as Exhibit 1 to the Declaration of Glenn T. Graham ("Graham Decl."), submitted herewith).[1]  Indeed, the Madison Memory Study was considered at both the district court level and Second Circuit in *FTC v. Quincy Bioscience Holding Co.,* 272 F. Supp. 3d 547 (S.D.N.Y. 2017), *vacated and remanded by* 753 Fed. App'x 87 (2d. Cir. 2019), after the FTC referenced the same study in its complaint, as Plaintiff did here.  Those decisions in the FTC's case, which raise different legal issues under the FTC Act, have no impact on the claims brought by Plaintiff in this action.[2]  The decisions demonstrate, however, that the Madison Memory Study can and should be considered on this motion.  *See Quincy Bioscience Holding Co.,* 272 F. Supp. 3d at 550-53 (discussing Madison Memory Study); *Quincy Bioscience Holding Co.,* 753 Fed. App'x at 88-89 (raising no issues with the district court's discussion of the Madison Memory Study).

The Madison Memory Study involved 218 adults aged 40 to 91, each with self-reported memory difficulties, who were randomly assigned to receive either an apoaequorin capsule or a placebo.  (Graham Decl. Ex. 1 at 2, 4.)  Examiners obtained a baseline cognitive score for each participant using an eight-question screening tool called AD8, used to differentiate between adults facing normal cognitive aging and those with early signs of dementia.  (*Id.*)  In the study, AD8 scores of 0 to 2 are considered reflective of normal aging

---

[1] The Court may rely on the Madison Memory Study in deciding the instant motion because it is referenced in the Complaint and central to Plaintiff's claims. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[2] In addition, the FTC does not allege that Quincy made any claims relating to Alzheimer's.

or "very mild" cognitive impairment—*i.e.*, healthy, older adults. (*Id.*) The study did not test for Prevagen's potential impact on persons diagnosed with Alzheimer's disease.

On days zero, eight, 30, 60, and 90, participants completed nine quantitative computerized tests designed to measure several areas of cognitive function. (*Id.* at 2-3.) The tests were selected from the Cogstate Research Battery—a widely used neuropsychological battery of computerized cognitive tests. (*Id.* at 2, 5-9.) These tests are favored for their "brief, repeatable" tasks on which performance cannot be meaningfully impacted by "practice." (*Id.* at 2.) They included: International Shopping List (ISL) and International Shopping List – Delayed Recall (ISRL), which measured verbal learning and memory, respectively; Groton Maze Learning (GML) and Groton Maze Learning – Delayed Recall (GMP), which measured executive function and memory, respectively; Detection (DET), which measured psychomotor function; Identification (IDN), which measured visual learning; and One Back (ONB) and Two Back (TWOB), which measured working memory. (*Id.* at 2-4.) At the end of 90 days, test results were analyzed to, among other things, "assess whether sample selection bias occurred" and "prevent[]  . . . false positive associations . . . and loss minimization of data." (*Id.* at 4.)

The Madison Memory Study showed "statistically significant results in the AD8 0-1 and AD8 0-2 subgroups," which "contain[ed] individuals with either minimal or no cognitive impairment, and are the appropriate population for a dietary supplement intended to support people with mild memory loss associated with aging." (*Id.* at 5.) Specifically, the results showed that participants in the intended treatment group with AD8 scores of 0-2—in other words, otherwise healthy adults with mild, but not severe memory impairment—saw statistically significant improvements as compared to placebo recipients on the GML (p=0.04), OCL (p=0.02), and IDN (p=0.04) tests, and showed trends toward statistical significance on the GMR test (p=0.11). (*Id.* at 9.) Participants in the intended treatment group with AD8 scores of 0-1 also experienced statistically significant improvements as compared to placebo recipients on the GMR (p=0.01), DET (p=0.02), and OCL (p=0.01) tests, and showed trends toward statistical significance on the GML (p=0.10) and ISL (p=0.13) tests. (*Id.* at 5-9.) Notably, people diagnosed with Alzheimer's disease were not in the intended treatment group nor is the product marketed to such people.

Because Prevagen is "intended for healthy, non-demented individuals," results from the AD8 0-1 and AD8 0-2 subgroups are "the most relevant to the efficacy of the product." (*Id.* at 2.)   Accordingly, the study concluded that "Prevagen demonstrated the ability to improve aspects of cognitive function in older participants with either normal cognitive aging or very mild impairment, as determined by AD8 screening." (*Id.* at 9.)

Despite the fact that Plaintiff does not allege that Prevagen was ever marketed to individuals suffering from Alzheimer's and despite the fact that Plaintiff does not allege that the Madison Memory Study studied the effect of Prevagen on individuals suffering from Alzheimer's, he nevertheless claims that the study supports his claims against Quincy under FDUTPA and for unjust enrichment.  (Compl. ¶ 6.)  This interpretation is baseless and belied by the Madison Memory Study's own results.

## ARGUMENT

### I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (quotations and citations omitted). In other words, the Complaint's "actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Moreover, when, as here, the claims asserted sound in fraud, they must also satisfy Rule 9(b)'s heightened pleading standard, requiring that they be plead with particularity.  *See Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1288 (S.D. Fla. 2007); *see also Casey v. Florida Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229, 2015 WL 10818746, at *1 (M.D. Fla. Sept. 29, 2015) (where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim . . . the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)") (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).  Rule 9(b) requires Plaintiff to plead "the who, what, when, where and how of the allegedly false statements[.]" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

Here, the allegations in the Complaint do not plausibly state a claim upon which relief can be granted because they are plainly contradicted by the Madison Memory Study.

In addition, Plaintiff's FDUTPA claim fails because Plaintiff did not behave in an objectively reasonable manner and has suffered no injury that could not have reasonably been avoided.  Moreover, despite the fact that both of Plaintiff's claims sound in fraud, Plaintiff failed to plead them with the particularity required by Rule 9(b).  Accordingly, the Complaint should be dismissed in its entirety.

### A.   Plaintiff's FDUTPA And Unjust Enrichment Claims Must Be Dismissed Because His Allegations Are Contradicted By the Madison Memory Study

To plead a claim under FDUTPA, Plaintiff must allege that Quincy (1) engaged in a deceptive act or unfair practice (2) that caused him (3) actual damages.  *See Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012).  To state a claim for unjust enrichment he must plead, among other things, that (1) he conferred a benefit on Quincy and (2) it would be inequitable for Quincy to retain that benefit.  *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012).  Plaintiff attempts to establish these elements of his claims with conclusory allegations that Quincy's advertising for Prevagen was misleading, but he offers no scientific or other factual support for his allegations.  (Compl. ¶¶ 9, 41, 47.)  Moreover, the allegations are squarely contradicted by the Madison Memory Study itself.

"[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  When the contents of such documents contradict the allegations contained in the complaint, "the document governs" and the complaint should be dismissed.  *Merl v. Warner Bros. Entm't Inc.*, No. 1:12-CV-20870-PAS, 2013 WL 266049, at *3 (S.D. Fla. Jan. 23, 2013).

Here, Plaintiff's FDUTPA and unjust enrichment claims are both based on allegations that Quincy made false claims regarding Prevagen's efficacy.  (Compl. ¶¶ 41, 47-48.)  Yet none of the allegations in the Complaint identify any claims that Quincy made with respect to Alzheimer's disease.  To bolster the allegations contained in the Complaint, Plaintiff relies on and references the Madison Memory Study.  *(Id.* ¶ 6.)  The Madison Memory Study, however, contradicts Plaintiff's conclusory allegations.

The Fourth Circuit has held that a plaintiff cannot allege that a marketing statement is false unless the plaintiff alleges that all reasonable experts in the relevant scientific field

agree that the representation is false.  *See In re GNC Corp.*, 789 F.3d 505, 516 (4th Cir. 2015). Since Plaintiff's Complaint acknowledges that competent scientific evidence exists supporting Quincy's advertising of Prevagen, his claims must be dismissed to the extent they are based upon the premise that Quincy's advertising is false.

The plaintiffs in *GNC Corp.* alleged that the advertisements and marketing relating to the defendants' dietary supplements were false and "incapable of providing the advertised joint health benefits."  *Id.* at 510.  The plaintiffs there brought claims under various states' consumer protection laws, including FDUTPA, as well as for breach of express warranty. *In re GNC Corp.*, No. 14-2491, 2014 WL 2812239, at *1 (D. Md. June 20, 2014).

The district court held that "[i]f there are experts who support what defendants say in their advertisements, the advertisements are not false and misleading, an unfair trade practice, or otherwise violative of the consumer protection statutes, unless the clinical trial relied upon by defendants was itself false and/or deceptive."  *Id.* at *12.

The Fourth Circuit affirmed, holding "that in order to state a false advertising claim on a theory that representations have been proven to be false, plaintiffs must allege that all reasonable experts in the field agree that the representations are false.  If plaintiffs cannot do so because the scientific evidence is equivocal, they have failed to plead that the representations based on this disputed scientific evidence are false."  *In re GNC*, 789 F.3d at 516.  Likewise, "[w]hen litigants concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is 'literally false.'"  *Id.* at 515.  *See also Greifenstein v. The Estee Lauder Corp., Inc.*, No. 12-09235, 2013 WL 3874073, at *4-5 (N.D. Ill. July 26, 2014) (dismissing a false advertising claim where the Complaint acknowledged the existence of studies supporting the challenged marketing claim).

Plaintiff's claims should similarly be dismissed because he fails to allege that all reasonable experts agree that representations by Quincy regarding the efficacy of Prevagen are false.  Nor can he make such an allegation, as his Complaint concedes that scientific evidence *does* exist to support Quincy's claims.  Plaintiff specifically relies on the Madison Memory Study in the Complaint.  That study proves the existence of scientific support for Quincy's claims.  (Compl. ¶ 6.)  To the extent that Plaintiff argues that he disagrees with

Quincy's interpretation of that study, *In re GNC* requires dismissal.  By relying on the Madison Memory Study, Plaintiff cannot – and does not – allege that "that all reasonable experts in the field agree that the representations are false."

The Madison Memory Study studied normal, healthy older individuals who took Prevagen.  It was not intended to study people with Alzheimer's and Plaintiff does not allege that it did.  In fact, the results of this gold standard study showed improvements in memory and cognition among the intended treatment population.  (Graham Decl. Ex. 1 at 5-9.)  The individuals studied with mild memory loss or normal aging experienced statically significant increases in scores on a number of tests for memory and cognition, when compared with a group of individuals taking a placebo.  (*Id.*)  Because this study affirmatively disproves allegations central to Plaintiff's claims—that Quincy's advertising of Prevagen is allegedly false—Plaintiff fails to plausibly plead a claim under FDUTPA or for unjust enrichment.  Accordingly, those claims should be dismissed.  *See e.g.*, *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2016 WL 8650462, at *4 (S.D.N.Y. Feb. 5, 2016) (dismissing claims under FDUTPA when a study that the plaintiffs attacked in their complaint demonstrated that the defendant's advertising representations were true).

### B. The Complaint Should Be Dismissed Because Plaintiff Is Not A Reasonable Consumer and Suffered No Injury

Plaintiff's FDUTPA and unjust enrichment claims must also be dismissed because Plaintiff did not take Prevagen as indicated to improve mild memory problems associated with aging.  Instead, he allegedly purchased Prevagen for his sister who had been diagnosed with Alzheimer's.[3]  (Compl. ¶ 9.)  But as both the Complaint and Prevagen's advertising make clear, Prevagen is a not a drug; it is dietary supplement that "help[s] with mild memory problems associated with aging." (*Id.* ¶ 20).  Prevagen's advertising is explicit that "is not intended to diagnose, treat, cure or prevent any disease." (*Id.* ¶ 17.)  Alzheimer's is a disease that is *not* a normal part of the aging process.  *See* https://www.alz.org/alzheimers-dementia/what-is-alzheimers.  While there is no current cure for Alzheimer's, there are medications and other options to help treat the cognitive symptoms of Alzheimer's disease.

---

[3] Plaintiff never actually alleges that his sister ever took Prevagen.  Nor does Plaintiff allege that his sister took Prevagen and was tested with respect to whether it worked as he expected it would.  He merely alleges that he purchased Prevagen Extra Strength.  (Compl. ¶ 9.)

*See* https://www.alz.org/alzheimers-dementia/treatments/medications-for-memory. Despite the plain language of Prevagen's advertising, Plaintiff claims that he purchased Prevagen Extra Strength to help "preserve [his sister's] mental faculties" after she was diagnosed with Alzheimer's. (Compl. ¶ 9.) Prevagen is not advertised for such a use.

A claim under FDUTPA "'requires proof that defendant's act would likely 'mislead the [objective] consumer acting reasonably in the circumstances.'" *Casey*, 2015 WL 10818746, at *3 (quoting *Democratic Republic of the Congo v. Air Capital Grp., LLC*, No. 14-11243, 614 Fed. App'x 460, 2015 WL 3619452, at *8 (11th Cir. June 11, 2015) (unpublished)) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). "That standard requires a showing of 'probable, not possible, deception that is likely to cause injury to a reasonable relying consumer.'" *Casey v. Florida Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 10818746 (quoting *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)).

Plaintiff alleges that when his sister "was diagnosed with Alzheimer's, he did everything in his power to prolong her life and to preserve her mental faculties," which is why he claims he purchased Prevagen. (Compl. ¶ 9.) Plaintiff also alleges that "it is impossible for Prevagen to work as represented." (*Id.* ¶ 2) Yet despite filling his Complaint with images of advertisements, he cannot point to one statement made by Quincy that claimed that Prevagen was an effective intervention for Alzheimer's. Nor does he plausibly allege exactly how "it is impossible for Prevagen to work as represented." Despite relying on the Madison Memory Study for the purposes of filing this Complaint, Plaintiff did not point to one aspect of the study that tested people diagnosed with Alzheimer's disease. There was none. While Plaintiff's efforts to preserve his sister's mental faculties are laudable, his belief that a dietary supplement could change the outcome of his sister's disease stretches the limits of credulity. Here, Plaintiff's FDUTPA claim fails as a matter of law because it is objectively unreasonable for a consumer to purchase a dietary supplement that clearly is not intended to treat a serious neurological disease such as Alzheimer's, and then claim that it was falsely advertised when it did not treat his sister's Alzheimer's.

In *Casey*, 2015 WL 10818746, at *2-3, for example, the court dismissed FDUTPA claims based on the allegation that a law school's advertised employment rate and job placement rates were falsely advertised on its website and in news reporting services because the plaintiffs did not satisfy the reasonable consumer standard. Despite plaintiffs' allegations concerning the allegedly false placement rates, the court noted that plaintiffs "acknowledge that [d]efendant had some of the lowest admissions standards of accredited or provisionally accredited laws schools in the nation." *Id.* at *3. The court further noted that, "[d]espite its low ranking, [p]laintiffs allege that [d]efendant's [e]mployment number rivaled 'those of much higher ranked, top-tier schools.'" *Id.* The court held that "[t]his would have been a red flag to a reasonable consumer in [p]laintiffs' position, and should have caused the reasonable consumer to, at a minimum, seek out more nuanced information to allow for a meaningful comparison of law schools, including the types of employment graduates obtained." *Id.* "Such an inquiry was reasonably expected and could have prevented [p]laintiffs' alleged injuries." *Id.* Accordingly, the court held that plaintiffs "failed to state a plausible claim that the [d]efendant's publishing of the employment data in the manner alleged would result in probable deception to a reasonable consumer, or that the substantial injury alleged could not have been reasonably avoided." *Id.*

The same is true here. Plaintiff's allegations that he purchased Prevagen to help prolong his sister's life and preserve her mental faculties in light of her Alzheimer's diagnosis is completely unreasonable and contrary to Prevagen's advertisement. No reasonable consumer could possibly be deceived in this manner based on the disclosure that Prevagen is a dietary supplement not intended to treat any diseases. Plaintiff's allegation that he was "exposed to and saw Quincy's memory improvement representations by reading the Prevagen Extra Strength label" constitutes an admission that he saw that disclosure language. (Compl. ¶ 9.) He then chose to purchase Prevagen anyway. A reasonable consumer would not act this way and this further demonstrates why Plaintiff's experience in purchasing Prevagen is so idiosyncratic that he will never be able to represent a class of consumers who purchased Prevagen knowing full well that it was a dietary supplement intended for a population completely different from people suffering from Alzheimer's. False advertising claims are not intended to compensate consumers who purchase a product

with unreasonable expectations that are directly contradicted by the product's own advertising. The Complaint must be dismissed. *See, e.g., Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. App'x 565, 567-68 (11th Cir. 2009) (affirming district court decision that a consumer acting reasonably would not have been deceived by alleged misrepresentations when such representations were contradicted by the franchise agreement reviewed by plaintiffs).

### C.   Plaintiff's Claims Should Be Dismissed Because They Are Based On A Lack Of Substantiation Theory Available Only to Government Actors

Plaintiff essentially alleges that Quincy lacks substantiation for its advertising and marketing claims of Prevagen, but he has failed to set forth any facts or scientific studies plausibly suggesting that to be true. Such "lack of substantiation" claims, however, are only available to government enforcement agencies such as the Federal Trade Commission and state attorneys general, and cannot be brought by private plaintiffs. Private plaintiffs are required to allege facts to plausibly suggest that Quincy's advertising is demonstrably false. Plaintiff's failure to do so is fatal to his claims.

Courts repeatedly dismiss false advertising claims based on a lack of substantiation theory because they were filed by private plaintiffs. Indeed, many courts have held that "prior substantiation claims—i.e., claims in which a plaintiff alleges that a defendant cannot substantiate the advertising effects it made about a product—are not cognizable under" consumer protection statutes similar to FDUTPA. *See Hoffman v. Nat. Factors Nutritional Prods. Inc.*, No. 12-7244 (ES)(MAH), 2014 U.S. Dist. LEXIS 86798, at *9 (D.N.J. June 26, 2014) (citing *Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 128 (3d Cir. 2010)); *see also Scheuerman v. Nestle Healthcare Nutrition,* Nos. 10-3684 (FSH)(PS), 10-5628 (FSH)(PS), 2012 U.S. Dist. LEXIS 99397, at *6 (D.N.J. July 17, 2012) ("the case law is clear . . . that prior substantiation claims are not cognizable under" New Jersey and California's consumer protection statutes) (collecting cases); *Franulovic*, 390 Fed. App'x at 128 ("a New Jersey Consumer Fraud Act claim cannot be premised on a prior substantiation theory of liability"). Indeed, in *Pelkey v. McNeil Consumer Healthcare*, No. 10-61853-CIV, 2011 WL 677424, at * 4 (S.D. Fla. Feb. 16, 2011), a court in this district entertained dismissal of a complaint based on a similar premise. *See id.* (stating that a plaintiff "cannot base her claims

on an allegation that Total Care is misbranded under the FDCA as this is a federal statute for which no private right of action exists"). Plaintiff has affirmatively plead the Madison Memory Study to support the allegations in his Complaint. (Compl. ¶ 6.) That study does not support any of Plaintiff's claims and, in fact, substantiates and supports *Quincy's* marketing of Prevagen. Plaintiff cites to no contrary scientific support for his claims and they must be dismissed.

### D. Plaintiff's Claims Are Not Plead with Sufficient Particularity

Claims under FDUTPA and unjust enrichment must be plead with the particularity required by Rule 9(b) when the plaintiff alleges fraud. *See Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017) (requiring that FDUTPA claims sounding in fraud be plead in accordance with Rule 9(b)); *W.W. Sports Importadora Exportadora e Comercial LTDA v. BPI Sports, LLC*, No. 0:16-CV-60147-WPD, 2016 WL 11504099, at *2 (S.D. Fla. Dec. 1, 2016) (requiring that unjust enrichment claims sounding in fraud be plead with particularity). Here, both Plaintiff's claims are both grounded in fraud because Plaintiff alleges that Quincy's advertising made false statements with respect to Prevagen's efficacy. (Compl. ¶¶ 41, 47-48.) As a result, those claims can only survive a motion to dismiss if they are plead with particularity. *See Leon v. Cont'l AG*, 301 F. Supp. 3d at 1226; *W.W. Sports*, 2016 WL 11504099, at *2. Because they are not, Plaintiff's claims should be dismissed.

In order to satisfy Rule 9(b) a plaintiff must plead:

> 1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007). The purpose of this standard is to place defendants "on notice of the precise misconduct with which they are charged." *Leon*, 301 F. Supp. 3d at 1226 (internal quotations omitted).

Plaintiff fails to satisfy the first three prongs of this standard. First, he fails to plead "precisely what statements were made in what documents," because he fails to specifically identify the advertisements on which his claims are based. Plaintiff asserts claims related only to the Prevagen Extra Strength label and a variety of other "television, internet, and

-12-

print advertisements" to which he was allegedly exposed.  (Compl. ¶ 9.)  He does not allege which of the two varieties of "Prevagen Extra Strength" he allegedly purchased, nor does he allege which particular television, internet, and print advertisements he was exposed to. The Complaint includes pictures of an alleged Prevagen television and internet advertisements, but it does not say whether these pictures are from the advertisements that Plaintiff actually saw.  (*Id.* ¶ 19.)  Finally, the Complaint contains no information whatsoever regarding the alleged print advertisements.

Second, Plaintiff fails to plead the time and place where each of the alleged misrepresentations was allegedly made.  The most specific allegations Plaintiff offers are with regard to the "Prevagen Extra Strength label."  (*Id.* ¶ 9.)  Even there he alleges only that he purchased Prevagen Extra Strength at a particular Walgreens during the general time period of "Summer 2017."  (*Id.*)  He does not, however, say exactly when he encountered the label.  As set forth above, if he read the label and decided to purchase Prevagen to treat his sister's Alzheimer's disease, then his Complaint must be dismissed because he did not behave like a reasonable consumer.  With regard to the other advertisements, Plaintiff's allegations are even more vague. He alleges only that he saw them some time "prior to purchasing" Prevagen. (*Id.*)

Finally, Plaintiff fails to plead the content of the alleged statements.  He claims he "was exposed to and saw Quincy's memory improvement representations."  (*Id.*)  However, the Complaint cites a number of representations, including that "Prevagen Improves Memory," "supports Healthy Brain Function, Sharper Mind, and Clearer Thinking," "help[s] with mild memory problems associated with aging," and "improve[s]   memory within 90 days."  (Compl. ¶ 1) (internal quotations omitted.))  Plaintiff does not allege which of these statements he actually saw.  This lack of detail is entirely insufficient to place Quincy "on notice of the precise misconduct with which they are charged" and, therefore, the Complaint should be dismissed under Rule 9(b).  *See Leon*, 301 F. Supp. 3d at 1226.

The complaint in *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMRZX, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) presented strikingly similar allegations.  The plaintiffs in that case asserted claims under FDUTPA based on allegations that "they were exposed to and saw [d]efendant's material, deceptive marketing

-13-

claims and packaging." *Id*. at *10.  The plaintiffs did "not identify which advertisements they saw or where they saw them." *Id.* at 11.  Instead the plaintiffs maintained that their pleading was sufficient because "they … included representative images of the misrepresentations in the complaint and identified at least one location or publication in which each was published or displayed during the relevant period." *Id*.  The court held that such allegations were insufficient to satisfy Rule 9(b) and dismissed the FDUTPA claims. *Id.* at *12, *15.  Faced with similarly inadequate allegations, this Court should reach the same result.[4]

### E.     The Court Should Dismiss Plaintiff's Claims for Statutory Damages Under FDUTPA

Plaintiff seeks to recover statutory damages for his FDUTPA claims.  (Compl. Prayer for Relief ¶ e.)  Under FDUTPA, statutory damages may only be recovered by an "enforcing authority," such as the attorney general, not by private litigants such as Plaintiff. *See Teggerdine v. Speedway LLC*, No. 8:16-CV-3280-T-27TGW, 2017 WL 2105224, at *4 (M.D. Fla. May 12, 2017); *Camden Shipping Corp. v. Manson Constr. Co.*, No. 3:07-CV-560-J-25 JRK, 2008 WL 11433231, at *5 (M.D. Fla. Mar. 19, 2008).  Therefore, Plaintiff's request for statutory damages should be dismissed. *Camden*, 2008 WL 11433231, at *5.

## II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING

Lack of standing provides grounds for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  Here, Plaintiff lacks standing to assert claims based on Prevagen products he did not purchase.  Those claims should be dismissed for lack of subject matter jurisdiction to the extent they are based on products he did not purchase and also to the extent that they seek any injunctive relief with respect to those products.

---

[4]  Other courts have dismissed claims based on similarly lacking allegations. *See, e.g., Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1191 (N.D. Cal. 2018); *Spence v. Basic Research*, No. 2:16-cv-925-CW, 2017 U.S. Dist. LEXIS 85175, at *20 (D. Utah June 2, 2017); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *12 (N.D. Cal. July 23, 2013); *ADT Sec. Servs., Inc. v. Swenson*, No. CIV. 07-2983 (JRT/AJBf), 2008 WL 2828867, at *7 (D. Minn. July 21, 2008).

**A.**      **Plaintiff Lacks Standing to Pursue Claims Based on Any Products Other Than the Variety of Prevagen He Allegedly Purchased**

"[I]n the Eleventh Circuit, a named plaintiff in a consumer class action cannot raise claims relating to products which she herself did not purchase."  *Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014).   Plaintiff asserts claims related to six different Prevagen products (Compl. ¶ 1 n.1.) but only alleges that he purchased one single product, "Prevagen Extra Strength."   (*Id.* ¶ 9.)   Therefore, Plaintiff's claims relating to the other Prevagen products listed in the Complaint should be dismissed.

Nor can Plaintiff save his claims relating to the other Prevagen products by arguing that they are similar to Prevagen Extra Strength.   This Court has explicitly rejected such an argument on several occasions.   *See Bohlke, LLC*, 2015 WL 249418, at *4; *Garcia*, 43 F. Supp. 3d at 1394.   The Court should do the same in this case and dismiss Plaintiff's claims related to any Prevagen products that he did not purchase because he lacks standing to assert them.

**B.**      **Plaintiff Lacks Standing to Seek Injunctive Relief**

Before a plaintiff can seek injunctive relief under FDUTPA, he must allege facts sufficient to establish standing to seek such relief under Article III of the United States Constitution.   *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *4 (S.D. Fla. Apr. 23, 2018); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1374 (S.D. Fla. 2015).   FDUTPA's authorization of injunctive relief "cannot supplant Constitutional standing requirements."   *Id.*   In order to demonstrate Article III standing, a Plaintiff must "allege a threat of future harm."   *Id.*   Here, Plaintiff fails to allege any threat of future harm from Quincy's advertising related to Prevagen.   Indeed, to the contrary, Plaintiff alleges that had he "known the truth about" Quincy's advertisements, "he would not have purchased the Prevagen Extra Strength." (Compl. ¶ 9.)   Because Plaintiff fails to allege any threat of future harm, his claims should be dismissed to the extent they seek injunctive relief.   *See Dapeer*, 95 F. Supp. 3d at 1374 (dismissing FDUTPA claim for injunctive relief because plaintiff failed to allege any threat of future harm from products at issue).   To the extent he claims Quincy's advertising is false, he cannot plausibly allege that

he will be harmed in the future.  (*See* Compl. ¶ 9 (stating Plaintiff would not have purchased Prevagen had he "known the truth" about Prevagen's advertising.))

III.     **THE CLASS ALLEGATIONS SHOULD BE STRICKEN**

In order to obtain class certification a plaintiff must satisfy the multiple requirements of Rule 23.  First, he must "establish that the proposed class is adequately defined and clearly ascertainable."  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).  If this requirement is satisfied, the plaintiff must establish each of the following prongs of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of [Plaintiff] are typical of the claims or defenses of the class; and (4) [Plaintiff] will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).  Finally, if the plaintiff is able to satisfy these Rule 23(a) requirements, he must show that the class claims satisfy the prerequisites to proceeding as a class action under one of the three categories set forth in Rule 23(b).  *See Carriuolo*, 823 F.3d at 984-85.  Under Rule 12(f), class allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the plaintiff will be unable to make any one of these three showings.  *See Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-CV-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) ("[w]here the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification.)"  It is apparent on the face of the Complaint that Plaintiff's class claims fail at each of these three steps.

A.     **Plaintiff's Claims Are Atypical Of Class Members Who Purchased Prevagen Products**

Plaintiff cannot serve as a class representative in this matter because he does not "possess the same interest [or] suffer the same injury as the class members" he seeks to represent and therefore cannot be "typical under Rule 23(a)(3)."  *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001).  Plaintiff also cannot serve as a class representative because he is subject to unique defenses, meaning his personal circumstances, as opposed to that of the putative class generally, would become a focus of the litigation.  *See, e.g., In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1327 (N.D. Ga. 2007) ("[i]t is certainly true that a defense which is unique to the class representative and which has the potential to

-16-

become 'the focus of the litigation' may suffice to destroy typicality"); *Trunzo v. CitiMortgage*, Civ. No. 2:11-cv-1124, 2014 U.S. Dist. LEXIS 43056, at *27 (W.D. Pa. Mar. 31, 2014) (class certification denied at the pleading stage because causation defense unique to the named plaintiffs threatened to become a "major focus of the litigation").

As discussed above, Plaintiff's claims are seriously atypical, not to mention suspect, because he purchased Prevagen for someone with Alzheimer's despite the fact that he purportedly viewed Prevagen's label that makes clear Prevagen is a dietary supplement and is not intended to treat any disease, much less Alzheimer's.    Further, the very advertisements contained in Plaintiff's Complaint clearly state the extent to which Prevagen has been tested in the Madison Memory Study.   (Compl. ¶ 19) ("Prevagen has been clinically shown to help with mild memory loss associated with aging*.")  Indeed, Plaintiff asserts that his claims are typical because "all Class members . . . were subject to Quincy's [allegedly] deceptive statements, including that Prevagen . . . "help[s] with mild memory problems associated with aging." (*Id.* ¶ 28.)  But Plaintiff did not purchase Prevagen for mild memory problems.  He purchased it for his sister who suffered from Alzheimer's.  (*Id.* ¶ 9.)  Because Plaintiff did not behave as an objectively reasonable consumer and did not suffer the same injury as putative class members, he cannot serve as a class representative.

Moreover, as discussed in Section II *supra*, Plaintiff at most has standing to assert claims related to one of the six Prevagen products identified in the Complaint (Prevagen Extra Strength).   The Eleventh Circuit has held that "[i]t should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).  In other words, where a plaintiff lacks standing to bring a claim in his own right, he cannot assert such claims on behalf of a class.  *Id.*  Therefore, because Plaintiff lacks standing to assert claims related to the five Prevagen products he did not purchase (at a minimum), any class allegations related to those products should be stricken.

### B.    Individualized Questions of Law and/or Fact Will Predominate Over Any Common Questions That May Exist

In order to satisfy Rule 23(b)(3)'s predominance requirement, a plaintiff must be able to establish that there are "issues that are susceptible to class-wide proof" that "predominate

such that they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quotation omitted).  It is not enough that common questions exist; they must predominate over any individualized questions of law or fact.  *Id.*  Here, Plaintiff's claims cannot satisfy this requirement as individual issues regarding his claims predominate and because claims of unjust enrichment are inappropriate for resolution on a common basis.  The class allegations should therefore be stricken.

For example, "[u]nder FDUTPA, proof of causation is required."  *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 480 (S.D. Fla. 2006); Fla. Stat. § 501.211(2); *Hubbel v. Aetna Cas. & Sur. Co.*, 758 So. 2d 94, 96-97 (Fla. 2000); *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002).  In Florida, a class action may not be maintained where individual issues predominate because "class-wide proof of causation is impossible." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. Dist. Ct. App. 2006).

Thus, to prove liability under FDUTPA, each putative class member will have to show not only that he or she was exposed to Quincy's advertising and marketing materials and the specific Prevagen advertisement that contained the challenged claims and read the representations therein, but also that the alleged misrepresentations caused his or her injury and damages.  "Such inquiries would result in a series of mini-trials for each putative class member on the issue of causation, which strongly militates against a finding of predominance." *Montgomery*, 209 F.R.D. at 230; *O'Neill*, 243 F.R.D. at 481.

Plaintiff's own behavior with respect to his alleged purchases of Prevagen is highly idiosyncratic and unique—highlighting the individual inquiry that the Court would need to delve into with respect to each putative class member.  Plaintiff purchased Prevagen Extra Strength after viewing the label that made clear Prevagen was a dietary supplement and not intended to treat any disease.  Nonetheless, Plaintiff completely disregarded that limitation and decided to purchase Prevagen to purportedly help treat his sister's Alzheimer's.  Other consumers were not "harmed" in this idiosyncratic way, therefore individualized issues of

-18-

causation and damages with respect to each putative class member's experience will predominate.

### C.   The Proposed Class Definition Is Overbroad And Unascertainable

Class definitions that include putative plaintiffs who have not suffered any redressable injury are overbroad and should be stricken pursuant to Rule 12(f).  In *Walewski v, Zenimax Media, Inc.*, No. 6:11-cv-1178-Orl-28DAB, 2012 WL 834125, at *4 (M.D. Fla. Jan. 30, 2012), *aff'd* 502 Fed. App'x 857, 861 (11th Cir. 2012), the proposed class was defined as "[a]ll persons or entities residing in the United States who purchased any version of the Elder Scrolls IV: Oblivion video game."  *Id.*  The proposed definition included all such purchasers of the product at issue, without regard to whether or not the purchaser actually suffered any damages as a result of the purchase.  *See id.*   There the district court found, and the Eleventh Circuit affirmed, that the proposed class definition was not adequately defined.  *See id.* at *4-6.

Plaintiff's proposed class is similarly overbroad, as it includes "[a]ll consumers in Florida who … purchased the Prevagen products" without limiting the class to those purchasers who suffered any damages or even the Prevagen product that Plaintiff, himself, purchased.  (Compl. ¶ 23.)  This definition is overbroad and over inclusive and should be stricken from the Complaint.

Plaintiff's proposed class is also unascertainable because it would require the Court to conduct individualized mini-trials just to determine class membership.  "A class is ascertainable if the Court can determine whether a given person is a class member through administratively feasible methods."  *Karhu v. Vital Pharms., Inc.*, No 13-cv-60768, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014), *aff'd* 621 Fed. App'x 945 (11th Cir. 2015).  In *Karhu*, 2014 WL 815253, at *3, this Court held that the proposed class was not ascertainable because the putative class members purchased the product at issue from distributors and retailers and the defendant-manufacturer did not have a record of the identities of most members of the proposed class.  Additionally, the court declined to rely on receipts, records or testimony of the prospective class members themselves to determine class membership.  *See id.*

Similarly, here, Plaintiff alleges that he purchased Prevagen at Walgreens and that "Prevagen products are sold in virtually every major food, drug, and mass retail outlet in the

country, as well as online through Quincy's Prevagen website." (Compl. ¶¶ 9, 15.) The proposed class definition, therefore, is unascertainable because there is no practical means of identifying class members who purchased the products at third party retailers or department stores. As proposed, the class cannot be certified and the class allegations should be stricken.

      **D.**     **The Plaintiff Cannot Represent a Class Seeking Injunctive Relief Under Rule 23(b)(2) Because He Lacks Standing to Do So**

A plaintiff cannot represent a class when he, individually, lacks standing to pursue the kind of claims asserted by the class. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Plaintiff is attempting to represent a class under Rule 23(b)(2), seeking injunctive relief on a common basis. (Compl. ¶ 34.) However, as discussed in Section II.B. *supra*, Plaintiff lacks standing to seek injunctive relief. Therefore, he cannot represent a class seeking injunctive relief under Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, Quincy respectfully request that the Court dismiss Plaintiff's Class Action Complaint with prejudice. In the alternative, the Court should strike the class allegations from the Class Action Complaint.

## CERTIFICATION OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the movant has made reasonable efforts to confer with all parties and non-parties who may be affected by the relief sought in the motion but has been unable to do so. The reasonable efforts were specifically as follows: By email dated August 23, 2019, Defendant's counsel advised Plaintiff's counsel that Defendant would be moving to dismiss the Complaint and strike the class action allegations and invited Plaintiff's counsel to advise whether they wanted to discuss the motion. As of the time of this filing, Plaintiff's counsel has not responded to that request.

Dated: August 26, 2019

                    Respectfully Submitted,

                    /s/ Matthew Luzadder
                    Matthew Luzadder (FBN: 0011286)
                    mluzzader@kelleydrye.com

KELLEY DRYE & WARREN LLP
Counsel for Defendant
333 West Wacker Drive
26th Floor
Chicago, IL 60606
Telephone: (312) 857-7070
Facsimile: (312) 857-7095

- and -

KELLEY DRYE & WARREN LLP

Geoffrey W. Castello (*pro hac vice* application to be made)
NJ Attorney ID No. 021091995
Glenn T. Graham (*pro hac vice* application to be made)
NJ Attorney ID No. 013822009
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

ATTORNEYS FOR DEFENDANT QUINCY
BIOSCIENCE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2019, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system.  I certify that all current participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system upon:

Adam Moskowitz, Esq.
(Adam@moskowitz-law.com)
Howard Bushman, Esq.
(Howard@moskowitz-law.com)
Joseph M. Kaye, Esq.
(joseph@moskowitz-law.com)
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza

-21-

Suite 601
Coral Gables, FL 33134
Office: (305) 740-1423

John Scarola, Esq.
(_scarolateam@searcylaw.com)
Searcy Denney Scarola Barnhart & Shipley
PO Drawer 3626
West Palm Beach, FL 33402-3626
Office: (561) 383-9451

Attorneys for Plaintiff

/s/  *Matthew Luzadder*
Matthew Luzadder (FBN:  0011286)

ATTORNEYS FOR DEFENDANT
QUINCY BIOSCIENCE, LLC