**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 19-22864-Civ-COOKE/GOODMAN**

JUAN COLLINS and JOHN FOWLER,
on behalf of themselves and all others
similarly situated,

      Plaintiff,

v.

QUINCY BIOSCIENCE, LLC,
a Wisconsin limited liability company,

      Defendant.

_____/

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

<u>**AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiffs Juan Collins and John Fowler bring this action, on behalf of themselves and all others similarly situated, against Defendant Quincy Bioscience, LLC ("Quincy") and state:

**NATURE OF ACTION**

1.    Quincy manufactures, markets, and distributes Prevagen, a purported brain health supplement made with the protein apoaequorin (pron. 'a-po-ah-kwor-in').[1] For over a decade, Quincy has uniformly marketed Prevagen nationwide as being designed for one purpose:



Quincy unequivocally represents that "Prevagen improves memory" on the front page of its website,[2] in every advertisement, be it in print, on the internet, or on television, and even on the

___

[1] These products include: Prevagen Regular Strength Capsules (10 mg. apoaequorin), Prevagen Regular Strength 60 Capsules (10 mg. apoaequorin), Prevagen Extra Strength Capsules (20 mg. apoaequorin), Prevagen Mixed Berry Chewable (10 mg. apoaequorin), Prevagen Extra Strength Chewable (20 mg. apoaequorin), and Prevagen Professional Strength (40 mg. apoaequorin) (collectively, "Prevagen" or "the products"). The products are referred to collectively because, in a real sense, the "product" at issue in this case is apoaequorin, which the evidence will show is equally and uniformly ineffective across the six varieties of Prevagen such that Plaintiffs and class members have all suffered the same injury regardless of which variety of Prevagen they purchased.

[2] https://www.prevagen.com/

front of every bottle of Prevagen—where it cannot be missed by consumers. Quincy further represents on the front of every Prevagen package label that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking." On the back of every Prevagen label, Quincy further represents that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days."

2.    In truth, it is impossible for Prevagen to work as represented, and Quincy repeatedly and uniformly makes false statements to the public about Prevagen's ability (rather, non-ability) to improve memory or to otherwise affect the brain. Apoaequorin, Prevagen's purportedly active ingredient, is nothing more than a protein that, once ingested, is completely and rapidly destroyed by the digestive system and transformed into common amino acids (and possibly small peptides) no different than those derived from, say, baloney.

3.    Moreover, Prevagen is sold in doses ranging from 10–40 mg (or .01–.04 grams). Given that the average daily diet contains about 75 grams of protein, a single dose of Prevagen accounts for about .013–.053% of the protein the average person consumes daily. Thus, the protein consumed through a daily dose of Prevagen amounts to a mere drop in the ocean that can have no measurable effect on the brain. This is true regardless of the variety of Prevagen purchased, which are identical in that they each suffer from the same fatal defect—that apoaequorin cannot have a measurable effect on the brain, whether taken in a 10mg, 20mg, or 40mg dose.

4.    Finally, the fact that Prevagen cannot affect the brain is further supported because the protein derivatives the apoaequorin is rapidly digested into are unable to cross the blood brain barrier, so they can never reach the brain to affect it to begin with.

5.    Therefore, because Prevagen is rapidly digested and completely destroyed during the absorption process, as a matter of body chemistry it cannot "[s]upport" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," it cannot "help with mild memory problems associated with aging" nor can it "improve memory within 90 days," or any of the other things Quincy claims it can. Because Prevagen cannot provide the promised benefits as a matter of body chemistry, there can never be any competent and reliable scientific evidence supporting these claims, and therefore Quincy's representations that Prevagen is "clinically tested" are also false and misleading.

6.    The only reason a consumer would purchase Prevagen is to obtain these advertised health benefits, which Prevagen does not—and cannot—provide.

7.     Similar allegations regarding Prevagen survived a motion to dismiss in a related action pending in the Northern District of California, *Racies v. Quincy Bioscience LLC*, No. 4:15-cv-00292-HSG, ECF No. 34, p. 2, 6 (N.D. Cal. May 19, 2015) (defining the "body chemistry allegations" and concluding that "[t]he Court finds that Plaintiff's body chemistry allegations, taken as true for purposes of this motion to dismiss, are sufficient to state a claim"). Notably, this action does not include any allegations regarding "lack of substantiation" of Quincy's representations regarding Prevagen. *See id.*, 2–6 (explaining the difference between "body chemistry allegations" and "lack of substantiation" allegations).

8.     The *Racies* court went on to grant certification of a class of California consumers who purchased Prevagen. *Racies v. Quincy Bioscience LLC*, No. 4:15-cv-00292-HSG, 2017 WL 6418910 (N.D. Cal. Dec. 15, 2017).

9.     Quincy is well-aware that Prevagen does not provide the health benefits it advertises. Quincy attempts to bolster its misrepresentations through hyping an unpublished, in-house study it performed to test Prevagen, which it calls the "Madison Memory Study."[3] Yet, in a recent action the FTC brought against Quincy, the court indicated that "[i]t is common ground that the Madison Memory Study . . . *failed to show a statistically significant improvement in the experimental group over the placebo group as a whole.*"[4] Further, on February 8, 2019, during oral argument before the Second Circuit Court of Appeal regarding that same case, Quincy's counsel had the following exchange with the panel:

Quincy: "*We don't dispute that* if you look across the entire 211 people who completed the study *there was no statistically significant difference* but-"

Court: "You couldn't. You couldn't dispute that."

Quincy: "And I'm not."[5]

Regarding its claims that apoaequorin can cross the blood-brain barrier, Quincy said at the same oral argument that:

---

[3] Plaintiffs reference the Madison Memory Study to highlight Quincy's admissions that its own study failed to show a statistically significant improvement in the experimental group over the placebo group, evidencing Quincy's knowledge of the falsity of its claims. As Plaintiffs' claim is that, as a matter of body chemistry, there can be no competent and reliable scientific evidence supporting Quincy's claims regarding the efficacy of apoaequorin as a memory enhancer (which will be proven at trial through expert testimony and other evidence), the Madison Memory Study is not central to Plaintiffs' claims.

[4] Patten, Bonnie. *Prevagen is Going to The Dogs*. (Feb. 22, 2019) *available at* https://www.truthinadvertising.org/prevagen-is-going-to-the-dogs/

[5] *Id.* (emphasis added).

Did we ever say we have evidence that it [Prevagen] crosses the *human* blood brain barrier? *No*. We only say we have evidence that it crosses the blood brain barrier *in the dog study*.[6]

10.     Plaintiffs have retained one of the foremost experts in Pharmacology and Neuroscience who is an expert in the field regarding whether and how substances such as apoaequorin can affect the brain. His analysis after a review of Prevagen's ingredients and the representations regarding its purported efficacy is in accord with the allegations of this complaint; apoaequorin does not have characteristics that distinguish it from other dietary proteins that are digested in the stomach, cannot cross the blood brain barrier to affect the brain, and even if it could, is present in Prevagen in such small amounts that it could have no measurable effect on the brain.

11.     The results of Plaintiffs' expert's analysis are in accord with the analysis of Dr. Richard P. Bazinet, who submitted an expert report in support of class certification in *Racies*. *Racies*, No. 4:15-cv-00292-HSG, ECF No. 123-5 (N.D. Cal. Sept. 15, 2017). Further, they are in accord with the opinions of all reasonable experts in this field. *See, e.g.,* Anthony Pearson, MD, *Jellyfish Memory Supplement Prevagen Called 'Clear-Cut Fraud'*, Medpage Today, June 8, 2019, https://www.medpagetoday.com/blogs/skeptical-cardiologist/80321 (last accessed Sept. 6, 2019); Joe Schwarcz PhD, *Prevagen for Mental Clarity?*, McGill University Office for Science and Society, Jan. 4, 2019, https://mcgill.ca/oss/article/health/prevagen-mental-clarity (last accessed Sept. 6, 2019).

12.     Quincy's misrepresentations regarding Prevagen are false, deceptive, and are likely to mislead reasonable consumers.

13.     As a result of Quincy's false and deceptive representation, consumers – including Plaintiffs and members of the proposed Class – have purchased a product that does not perform as advertised and is therefore worthless. Plaintiffs bring this action on behalf of themselves and other similarly situated Florida consumers to correct the false and misleading perception Quincy has created in the minds of consumers, and to obtain redress for those Florida consumers who have purchased Prevagen. Based on violations of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq.*, Florida Statutes ("FDUTPA") and unjust enrichment, Plaintiffs seek declaratory and monetary relief for Florida consumers who purchased Prevagen.

---

[6] *Id*. (emphasis added).

## PARTIES

14.    Plaintiff Juan Collins ("Plaintiff Collins") is over the age of 18 and is a citizen of Leon County, Florida and is currently a Senior Attorney for the Florida Dispute Resolution Center of the Office of the State Courts Administrator. Plaintiff Collins was also a Deputy General Counsel at the Agency for Persons with Disabilities, an Assistant General Counsel at the Florida Department of Children and Families, and is a retired JAG Officer having served over 29 years in the United States Army Reserve. Plaintiff Collins is the father of six children and has eight grandchildren and two god-sons. Plaintiff Collins serves on the Board of Directors for the Neighborhood Medical Center and the Sickle Cell Foundation and serves as Vice-President of the Tallahassee Area Chapter of 100 Black Men. Plaintiff Collins was selected "Man of the Year" by the Tallahassee Chapter of 100 Black Men at the Chapter's 2017 Black Tie Scholarship Gala on June 16, 2017. When Plaintiff Collins' sister was first diagnosed with Alzheimer's, he did everything in his power to help prolong her life and to preserve her mental faculties. In Summer 2017 Plaintiff Collins purchased Prevagen Extra Strength from a Walgreens located at 1106 Clearlake Road, Cocoa, Florida 32922. Prior to purchasing Prevagen, Plaintiff Collins was exposed to and saw Quincy's memory improvement representations by reading the Prevagen label, as well as other advertisements, including television, internet, and print advertisements. The Prevagen Plaintiff Collins purchased did not and could not improve memory or support healthy brain function as represented and was therefore worthless. As a result, Plaintiff Collins suffered injury in fact and lost money at the point of purchase. Had Plaintiff Collins known the truth about Quincy's misrepresentations and omissions, he would not have purchased Prevagen.

15.    Plaintiff John Fowler ("Plaintiff Fowler") is over the age of 18 and is a citizen of Palm Beach County, Florida. Plaintiff Fowler has purchased Prevagen Regular Strength (both 30 and 60 capsules) multiple times in person and online over the last year. For example, on or about May 12, 2019, Plaintiff Fowler purchased 4 bottles of Prevagen Regular Strength at $27.99 per bottle online from ebay.com. Before that, around September 2018, Plaintiff Fowler purchased a bottle of Prevagen Regular Strength in person at a Walgreens located at 10110 Lyons Rd, Boynton Beach, FL 33473. Prior to purchasing Prevagen, Plaintiff Fowler was exposed to and saw Quincy's memory improvement representations by reading the Prevagen labels, as well as other advertisements, including television, internet, and print advertisements. The Prevagen Plaintiff Fowler purchased did not and could not improve memory or support healthy brain function as

represented and was therefore worthless. As a result, Plaintiff Fowler suffered injury in fact and lost money at the point of each purchase. Had Plaintiff Fowler known the truth about Quincy's misrepresentations and omissions, he would not have purchased Prevagen.

16.     Defendant Quincy is a limited liability company organized and existing under the laws of the state of Wisconsin. Quincy's headquarters is at 301 South Westfield Road, Suite 200, in Madison, Wisconsin. The sole member of Quincy is Quincy Bioscience Holding Company, Inc. Quincy Bioscience Holding Company, Inc. is a Wisconsin corporation. Defendant Quincy is therefore a citizen of Wisconsin. Defendant Quincy manufactures, advertises markets, distributes, and/or sells Prevagen to tens of thousands of consumers in Florida and throughout the United States. Quincy may be served with process by serving its registered agent, Keith A. Thomsen, at 726 Heartland Trail, Suite 300, Madison, WI 53717.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is an action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than Quincy. Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as Plaintiffs' individual claims are brought by Florida citizens against a Wisconsin citizen, and given the nature of the claims and the declaratory relief sought the amount in controversy is greater than $75,000.00, exclusive of interest and costs.

18.     This Court has personal jurisdiction over Quincy because Quincy is authorized to do business and is conducting business throughout the United States, including in Florida. Quincy has marketed, promoted, distributed, and sold the Prevagen products in the United States, including Florida, and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and Quincy is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of the Prevagen products in this District and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

20.     Quincy manufactures, distributes, markets and sells Prevagen nationwide, including in Florida. Prevagen contains a purported active ingredient called apoaequorin (pron. 'a-po-ah-kwor-in'), which Quincy clams "is safe and uniquely supports brain function."[7] As the real "product" at issue in this lawsuit is apoaequorin, this lawsuit concerns all Prevagen varieties, *see* p. 1, *supra* at n. 1.

21.     Prevagen is sold in virtually every major food, drug, and mass retail outlet in the country, as well as online through Quincy's Prevagen website. Prevagen prices range from about $24.00–$90.00 per bottle, depending on the pill count or dosage of apoaequorin. The following are screen shots of the products:[8]

| Prevagen® Regular Strength Capsules | Prevagen® Regular Strength Chewables | Prevagen® Extra Strength Capsules |
|:---:|:---:|:---:|
| $39.95 | $39.95 | $59.95 |
| SHOP NOW | SHOP NOW | SHOP NOW |
| 10 mg of the patented ingredient apoaequorin per capsule. | 10 mg of the patented ingredient apoaequorin in a mixed berry tablet. | 20 mg of the patented ingredient apoaequorin per capsule. |

---

[7] *See* https://www.prevagen.com/about-prevagen/

[8] *See* https://www.prevagen.com/shop/

**Prevagen®
Extra Strength
Chewables**



$59.95

SHOP NOW

20 mg of the patented
ingredient apoaequorin in
a mixed berry tablet.

**Prevagen®
Regular Strength
60 Capsules**



$74.95

SHOP NOW

60 count bottle with
10 mg of the patented
ingredient apoaequorin.

**Prevagen®
Professional
Strength**



$89.95

SHOP NOW

40 mg of the patented
ingredient apoaequorin
per capsule.

22.     Since Prevagen's launch in 2007, Quincy has consistently conveyed the message to consumers throughout the United States, including in Florida, that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." It does not. Quincy's misrepresentations are false, misleading and deceptive.

23.     Despite the evidence, scientific fact, and Quincy's own admissions that Prevagen does not and cannot improve memory or support brain function, sharper mind or clearer thinking, each and every Prevagen package and label repeatedly emphasizes that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." Each and every consumer who purchases Prevagen is exposed to these deceptive misrepresentations, which appear prominently and conspicuously on the front, back, and/or sides of each Prevagen box as follows:





24.     And, on the top of the Prevagen box is a picture of the brain encircled by the "SUPPORTS HEALTHY BRAIN FUNCTION" misrepresentation:



25.     Quincy's misrepresentations regarding Prevagen are conspicuously present on its website:





As well as in its television and internet advertisements:



26.     As of the filing of this Complaint, Quincy continues to unequivocally and falsely claim that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." The only reason a consumer would purchase Prevagen is to obtain these advertised health benefits, which Prevagen does not—and cannot—provide.

27.     Plaintiffs and the Class members have been damaged in their purchases of these products based on Quincy's false representations. Plaintiffs and Class members have been and will continue to be deceived or misled by Quincy's false and deceptive misrepresentations. Plaintiffs would not have purchased Prevagen had they known that Quincy's claims were false and misleading.

**CLASS ACTION ALLEGATIONS**

28.     As detailed below in the individual counts, Plaintiffs bring this lawsuit on behalf of himself and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

     **A.  <u>Class Definitions</u>**

29.     Plaintiffs seek to represent the following Florida Classes:

> Pursuant to Rule 23(a) and (b)(3), during the fullest period allowable by law, all Florida consumers who purchased Prevagen.

> Pursuant to Rule 23(a) and (b)(2), during the fullest period allowable by law, all Florida consumers who purchased Prevagen.

30.     Excluded from the above Classes are Quincy and its officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff, and those who purchased Prevagen for resale.

31.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before or after the Court determines whether such certification is appropriate as discovery progresses.

     **B.  <u>Numerosity</u>**

32.     The Class is comprised of thousands of consumers throughout the state of Florida. The Class is so numerous that joinder of all members of the Class is impracticable. While the precise number of class members is currently unknown to Plaintiffs, the evidence will show that

Quincy has sold, either directly or through third party retailers, well over 200,000 bottles of Prevagen within the state of Florida alone.

33.     Moreover, it is administratively feasible to ascertain class members by reference to objective criteria: Florida consumers who purchased Prevagen during specified time periods. There are no subjective issues such that determining class membership would require a "mini-trial" on the merits of each class member's claim.

34.     The evidence will show that Quincy maintains records that will be useful in identifying Class Members. As Quincy's CEO and President, Mark Underwood, has stated on behalf of Quincy in verified responses to interrogatories in *Racies*, "[Quincy] maintains the information provided to [Quincy] by those customers who purchase directly from [Quincy], which information typically includes the direct customers' name, email address, and billing and/or street address." *Racies*, No. 4:15-cv-00292-HSG at ECF No. 123-11, 12 (Sept. 15, 2017). Underwood also attested in *Racies* that "[i]n 2015 and 2016 in California, for example, direct sales to individual consumers constituted only 18.1% and 5.4% of Quincy's California sales revenue, respectively. *The sales ratios in California are reflective of Quincy's sales in other states*. Before 2015, direct sales to individual consumers in California constituted *about half* of all sales in California." *Racies*, No. 4:15-cv-00292-HSG at ECF No. 128-1, 3 (Oct. 13, 2017) (emphasis added). Further, Quincy has a process for collecting consumer testimonials, through which they collect consumer's contact information for follow up, and therefore likely has contact information for Florida consumers who have not purchased Prevagen directly through Quincy. *Id.*, 3–4.

35.     Moreover, the evidence will show that self-identification of class members will be a manageable process because every bottle of Prevagen was sold with the same ineffective and worthless apoaequorin and was packaged with identical, uniform misrepresentations on the labels. Class members will be able to self-identify through proof of purchase (such as receipts, credit card statements, or possession of the actual bottle(s) of Prevagen purchased) or through affidavit.

36.     Additionally, the evidence will show that third-party retailers who sell Prevagen possess significant information sufficient to identify purchasers of Prevagen, which can identify class members and be used to cross-reference and substantiate self-identifying affidavits to confirm class membership.

**C.   Commonality/Predominance**

37.     This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

>   (a) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;
>
>   (b) whether the alleged conduct constitutes violations of the FDUTPA;
>
>   (c) whether Quincy engaged in false or misleading advertising;
>
>   (d) whether Quincy has been unjustly enriched at the expense of Plaintiffs and the Class members as a result of Quincy's false and misleading representations;
>
>   (e) whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and
>
>   (f) whether Plaintiffs and Class members are entitled to other appropriate remedies, including a declaration.

**D.   Typicality**

38.     Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Quincy's deceptive statements, including that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," that Prevagen "help[s] with mild memory problems associated with aging" and "improve[s] memory within 90 days." Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class Members.

39.     The evidence that will support and prove Plaintiffs' claims is probative of each Class Member, with damages being the only divergent factual characteristic. For example, Quincy has admitted that, from the time it first introduced Prevagen to the present, its advertising of Prevagen has been uniform, and "it has not made any state-specific change to the labeling of" Prevagen. *Racies v. Quincy Bioscience LLC*, No. 4:15-cv-00292-HSG, ECF No. 123-9, 4–5 (Sept. 15, 2017) (verified response to request for admission). Further, as to damages, because proving Plaintiffs' claims will prove that Prevagen is rendered valueless as a result of the scientific fact that apoaequorin cannot affect the brain, then the purchase price is the appropriate measure of damages for Plaintiffs and every Class Member.

40.     Moreover, as the *Racies* court explained, "the manner in which [Plaintiffs] took the product is not at issue in this case because the relevant inquiry and related injury occurs at the time Plaintiffs purchased the product based on the product label." *Racies*, 2017 WL 6418910, at *3.

41.     Plaintiffs' claims are thus typical of the claims of the classes they seek to represent.

**E.   Adequacy of Representation**

42.     Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the classes. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiffs have chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

**F.   Requirements of Fed. R. Civ. P. 23(b)(3)**

43.     The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiffs and the unnamed Class members are based on the common marketing and sales practices Quincy utilized in its sale of Prevagen to Plaintiffs and the unnamed Class members.

44.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

45.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Class as is in the case at bar, common questions will be held to predominate over individual questions.

46.     In certifying the California class in *Racies*, the Northern District of California found that common issues on liability predominated where, at trial, plaintiff would (as will Plaintiffs here) "present commonly-applicable evidence, including his expert's opinion that basic scientific principles show that Prevagen cannot provide the benefits claimed, to establish the falsity of Defendant's efficacy representations." *Racies v. Quincy Bioscience, LLC*, 15-CV-00292-HSG, 2017 WL 6418910, at *4 (N.D. Cal. Dec. 15, 2017).

**G.   Superiority**

47.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the country;

(b) Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As

a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

48. In certifying the California class in *Racies*, the Northern District of California found that a class action was the superior method of adjudicating these claims, rejecting Quincy's arguments regarding claimed manageability issues and concluding that "that there may be some difficulty in identifying all class members is not dispositive," that "under Plaintiff's theory of the case, 'all the Prevagen Products are worthless' and any benefit would be attributable to the placebo effect," and that "[a] refund is also not a superior alternative to *adjudicating* class members' claims." *Racies*, 2017 WL 6418910 at *5.

**H. Requirements of Fed. R. Civ. P. 23(b)(2)**

49. Quincy has acted and/or refused to act on grounds generally applicable to the classes by engaging in a uniform marketing and advertising campaign containing false, misleading and deceptive representations and material omissions that were and are reasonably likely to mislead Plaintiffs and the Classes, thereby making appropriate final declaratory relief with respect to the classes as a whole.

**I. Requirements of Fed. R. Civ. P. 23(c)(4)**

50. As it is clear that the predominant issue regarding Quincy's liability is whether Quincy's representations are false and/or misleading because, as a matter of body chemistry, Prevagen cannot "[s]upport" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," it cannot "help with mild memory problems associated with aging" nor can it "improve memory within 90 days," utilizing Rule 23(c)(4) to certify either or both of the Florida Classes for a class wide adjudication on this issue would materially advance the disposition of the litigation as a whole.

## FRAUDULENT CONCEALMENT TOLLING

51.     All applicable statutes of limitation have been tolled by Quincy's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action. Plaintiffs and members of the class did not and could not have known about the facts giving rise to the causes of action at any point during Quincy's aggressive false advertising campaign and staunch defense of other pending suits. Quincy fraudulently concealed the truth from its customers and, accordingly, the relevant statutes of limitation should be equitably tolled until July 11, 2019, at the earliest.

52.     Instead of disclosing the ineffectiveness and inability of apoaequorin to cross the blood-brain barrier and affect the brain, Quincy falsely represented that Prevagen "[s]upports" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking." By making many affirmative representations that concealed the ineffectiveness of Prevagen as described in this complaint, Quincy actively and successfully concealed Plaintiffs' and class members' causes of action (which are based on the deceptive and untrue representations made by Quincy about Prevagen).

53.     Furthermore, by making repeated false statements to consumers concerning the ineffectiveness of Prevagen, Quincy actively and successfully concealed Plaintiffs' and class members' causes of action by fraudulent means.

### COUNT I
#### For Violations of the Florida Deceptive and Unfair Trade Practices Act, § 501.201, Florida Statutes, *et seq.* (On behalf of Plaintiffs and Members of the Florida Class)

54.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–53 as if fully set forth herein.

55.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq*. ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

56.     Plaintiffs are consumers as defined by section 501.203, Fla. Stat. The Prevagen products are goods within the meaning of the FDUTPA. Quincy is engaged in trade or commerce within the meaning of the FDUTPA.

57.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The FDUTPA also prohibits false and misleading advertising.

58.     Quincy's unfair and deceptive practices as described herein are likely to mislead – and have misled – consumers acting reasonably in the circumstances.

59.     Quincy has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

60.     Plaintiffs and consumers in the Florida Classes have been aggrieved by Quincy's unfair and deceptive practices and acts of false advertising in that they paid for Prevagen that did not and could not "[s]upport[]" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," "help with mild memory problems associated with aging" or "improve memory within 90 days" as represented. As a result, Plaintiffs and the Florida Classes have purchased worthless products such that their actual damages are the full purchase price of Prevagen.

61.     In addition, the practice employed by Quincy, whereby Quincy sold, promoted and marketed Prevagen with the deceptive representations herein described constitutes a *per se* violation of FDUTPA under section 501.203(3)(c) because it is in violation of the Florida Food Safety Act, § 500.04 (1) and (2), Florida Statutes in that said products are misbranded.

62.     Defendant's false, unlawful, and misleading product descriptions render its products misbranded under Florida law. Specifically, section 500.04 of the Florida Food Safety Act prohibits the manufacture, sale or delivery of "misbranded food." Quincy admits that Prevagen is a dietary supplement, which meets the definition of "food" under the FFSA. § 500.03(n)(5). Food is "misbranded" when "its labeling is false or misleading in any particular." Fla. Stat. § 500.11(1)(a) & (b). A food is considered mislabeled unless the proper disclosures are made "on the outside container or wrapper" on the product. § 500.03(1)(t). Misbranded products cannot be legally sold and are legally worthless.

63.     The harm suffered by Plaintiffs and consumers in the Florida Classes was directly and proximately caused by the deceptive, misleading and unfair practices of Quincy, as more fully described herein.

64.     Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiffs and consumers in the Florida Classes make claims for damages, attorneys' fees and costs.

**COUNT II**
**For Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**§ 501.201, Florida Statutes, *et seq.***
**(On behalf of Plaintiffs and Members of the Florida Class)**

65.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–53 as if fully set forth herein.

66.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq*. ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

67.     Plaintiffs are consumers as defined by section 501.203, Fla. Stat. The Prevagen products are goods within the meaning of the FDUTPA. Quincy is engaged in trade or commerce within the meaning of the FDUTPA.

68.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The FDUTPA also prohibits false and misleading advertising.

69.     Quincy's unfair and deceptive practices as described herein are likely to mislead – and have misled – consumers acting reasonably in the circumstances.

70.     Quincy has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

71.     Plaintiffs and consumers in the Florida Classes have been aggrieved by Quincy's unfair and deceptive practices and acts of false advertising in that they paid for the Prevagen products that did not and could not "[s]upport[]" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," "help with mild memory problems associated with aging" or "improve memory within 90 days" as represented.

72.     In addition, the practice employed by Quincy, whereby Quincy sold, promoted and marketed Prevagen with the deceptive representations herein described constitutes a *per se* violation of FDUTPA under section 501.203(3)(c) because it is in violation of the Florida Food Safety Act, § 500.04 (1) and (2), Florida Statutes in that said products are misbranded.

73.     Defendant's false, unlawful, and misleading product descriptions render its products misbranded under Florida law. Specifically, section 500.04 of the Florida Food Safety Act prohibits the manufacture, sale or delivery of "misbranded food." Quincy admits that Prevagen is a dietary supplement, which meets the definition of "food" under the FFSA. § 500.03(n)(5). Food is "misbranded" when "its labeling is false or misleading in any particular." Fla. Stat. § 500.11(1)(a) & (b). A food is considered mislabeled unless the proper disclosures are made "on the outside container or wrapper" on the product. § 500.03(1)(t). Misbranded products cannot be legally sold and are legally worthless.

74.     The harm suffered by Plaintiffs and consumers in the Florida Classes was directly and proximately caused by the deceptive, misleading and unfair practices of Quincy, as more fully described herein.

75.     In addition to seeking recovery of their attorneys' fees and costs pursuant to section 501.2105, Fla. Stat., pursuant to section 501.211(1), Fla. Stat., Plaintiffs and consumers in the Florida Classes seek a declaratory judgment that Quincy has violated FDUTPA because its representations are false and/or misleading because, as a matter of body chemistry, Prevagen cannot "[s]upport" "Healthy Brain Function," "Sharper Mind," and "Clearer Thinking," it cannot "help with mild memory problems associated with aging" nor can it "improve memory" or "improve memory within 90 days." Plaintiffs and consumers in the Florida Classes further seek a declaratory judgment that Prevagen is a misbranded food under Florida law, and therefore Quincy has committed *per se* violations of FDUTPA.

### COUNT III
### Unjust Enrichment
### (On behalf of Plaintiffs and Members of the Florida Class)

76.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–53 as if fully set forth herein.

77.     At all times relevant hereto, Quincy designed, manufactured, produced, promoted, marketed and/or sold the Prevagen products.

78.     Plaintiffs and consumers in the Florida Classes conferred upon Quincy non-gratuitous payments for the Prevagen products. Quincy appreciated, accepted or retained the non-gratuitous benefits conferred by Plaintiffs and consumers in the Florida Class, with full knowledge and awareness that, as a result of Quincy's deceptive marketing. Plaintiffs and consumers in the

Florida Classes were not receiving Prevagen products of the quality, nature, fitness or value that had been represented by Quincy and reasonable consumers would have expected; in fact, the Prevagen they purchased was worthless.

79.     Quincy profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs and consumers in the Florida Class, under circumstances in which it would be unjust for Quincy to be permitted to retain the benefit. Under common law principles of unjust enrichment, Quincy should not be permitted to retain the benefits of this unjust enrichment.

80.     Because Quincy's retention of the non-gratuitous benefits conferred by Plaintiffs and consumers in the Florida Classes is unjust and inequitable, Plaintiffs and consumers in the Florida Classes are entitled to, and hereby seek disgorgement and restitution of Quincy's wrongful profits, revenue, and benefits in a manner established by the Court.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

     a.  Certifying the Florida Classes as requested herein;

     b.  Awarding declaratory relief as permitted by law or equity;

     c.  Awarding Plaintiffs Collins and Fowler and consumers in the Florida Classes damages;

     d.  Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and consumers in the Florida Class;

     e.  Awarding attorneys' fees and costs; and

     f.  Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

Dated: September 11, 2019.

Respectfully submitted,

By: */s/ Adam Moskowitz*__

Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
Curtis E. Osceola, Esq.
Florida Bar No. 1015979
curtis@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

Jack Scarola, Esq.
Florida Bar No. 169440
jsx@searcylaw.com
**SEARCY DENNEY SCAROLA**
**BARNHART & SHIPLEY PA**
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Telephone: (561) 686-6300
Fax: (561) 383-9451

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system, which will serve a copy of this amended complaint on all counsel of record.

By: */s/ Adam M. Moskowitz*_____
Adam M. Moskowitz