# Exhibit A

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

(212) 808-7800

WASHINGTON, DC

LOS ANGELES, CA

HOUSTON, TX

AUSTIN, TX

CHICAGO, IL

PARSIPPANY, NJ

STAMFORD, CT

BRUSSELS, BELGIUM

AFFILIATE OFFICE

MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

GEOFFREY W. CASTELLO

EMAIL: gcastello@kelleydrye.com

November 7, 2019

**VIA ECF**

Hon. Ronnie Abrams, U.S.D.J.,
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Vanderwerff v. Quincy Bioscience Holding Co., Inc., et al.*
Case No. 1:19-cv-07582-RA

*Karathanos v. Quincy Bioscience Holding Co., Inc., et al.*
Case No. 1:19-cv-08023-RA

*Spath v. Quincy Bioscience Holding Co., Inc., et al.*
Case No. 1:19-cv-03521-RA

Your Honor:

We represent Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience LLC, Prevagen, Inc. d/b/a Sugar River Supplements, Quincy Bioscience Manufacturing, LLC, Mark Underwood, and Michael Beaman (collectively, "Defendants") in the above-referenced actions. We write jointly with common counsel for the New Jersey Plaintiff (James Vanderwerff) and the New York Plaintiffs (John Karathanos and Elaine Spath) to update this Court as to the status of these proposed consumer protection class actions involving sales and purchases of the Prevagen® dietary supplement.

As the parties advised the Court in our September 27, 2019 letter, Defendants and the Plaintiffs in *Vanderwerff*, *Karathanos*, and *Spath* actions have agreed in principle to a nationwide class action settlement. We are pleased to report that these parties have since entered into a formal Stipulation of Settlement. A copy of the Stipulation of Settlement is attached hereto as Exhibit A.

**K E L L E Y   D R Y E   &   W A R R E N** LLP

Hon. Ronnie Abrams, U.S.D.J.
November 7, 2019
Page Two

As the Court will see in Section 3.1.5 of the Stipulation of Settlement, the parties' settlement is, and of necessity has to be, explicitly contingent upon the Federal Trade Commission ("FTC") and New York Attorney General ("NYAG") agreeing to it in principle. The actions of the Defendants, the New York Plaintiffs, and the New Jersey Plaintiff in entering into the Stipulation of Settlement was a necessary step in the overall settlement process, but just one of several. Defendants intend to submit this letter and the Stipulation of Settlement to the FTC and the NYAG contemporaneously with the filing of this letter in connection with their on-going discussions with those agencies.

It should be noted that *Racies v. Quincy Bioscience, LLC*, No. 4:15-cv-292-HSG (N.D. Cal.), a class action brought on behalf of California purchasers of Prevagen, is scheduled to go to trial on January 6, 2020, before Judge Haywood S. Gilliam and a jury. Although the attached Stipulation of Settlement would be nationwide in scope if granted final approval, the parties have agreed not to ask this Court to attempt to stay the *Racies* trial date. The Stipulation of Settlement leaves Quincy free to seek appropriate relief from the *Racies* court and leaves *Racies*' counsel free to oppose such a request. This Court also should be aware that the Stipulation of Settlement was negotiated without input from the plaintiffs in related, later-filed, proposed class actions that are pending in the Southern District of Florida (*Collins*) and the Western District of Texas (*Engert*). Those cases were filed in 2019, after the parties in *Spath*, *Vanderwerff*, and *Karathanos* were well along in their settlement discussions.

Defendants, the New York Plaintiffs, and the New Jersey Plaintiff collectively request that the Court schedule a conference to discuss further with Your Honor the next steps to be taken in the *Spath*, *Vanderwerff*, and *Karathanos* actions.

Respectfully submitted,

*/s/ Geoffrey W. Castello*

Geoffrey W. Castello

Encl.
cc:     All counsel of record (via ECF)

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Elaine Spath, individually and on behalf of all others similarly situated, | **STIPULATION OF SETTLEMENT** |
| Plaintiff, | |
| vs. | |
| Quincy Bioscience Holding Co., Inc.; Quincy Bioscience, LLC; Prevagen, Inc.; and Quincy Bioscience Manufacturing, LLC, | CASE NO. 1:19-cv-03521-RA |
| Defendants. | |

| | |
|---|---|
| James Vanderwerff, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| vs. | CASE NO. 1:19-cv-07582-RA |
| Quincy Bioscience Holding Co., Inc.; Quincy Bioscience, LLC; Prevagen, Inc.; Quincy Bioscience Manufacturing, | |

LLC; Mark Underwood; and Michael
Beaman,

        Defendants.

---

John Karathanos, individually and on
  behalf of all others similarly situated,

        Plaintiff,

    vs.

Quincy Bioscience Holding Co., Inc.;
Quincy Bioscience, LLC; Prevagen,
Inc.; Quincy Bioscience Manufacturing,
LLC; Mark Underwood; and Michael
Beaman,

        Defendants.

CASE NO. 1:19-cv-08023-RA

This Stipulation of Settlement and attached exhibits (the "Settlement Agreement") dated as of October __, 2019, is made by and among the following: on the one hand, Plaintiffs Elaine Spath, James Vanderwerff, and John Karathanos ("Plaintiffs") on behalf of themselves, and on behalf of each of the Settlement Class Members (as defined herein), by and through Plaintiffs' Counsel; and on the other, Defendants Quincy Bioscience, LLC ("Quincy"), Quincy Bioscience Holding Company, Inc., Prevagen, Inc., Quincy Bioscience Manufacturing, LLC, Mark Underwood and Michael Beaman (collectively, the "Settling Defendants," and, together with Plaintiff, the "Settling Parties"), by and through their counsel. This Settlement Agreement is intended by the Settling Parties to resolve, discharge and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Settlement Agreement.

## 1.  DEFINITIONS

In addition to the foregoing defined terms, the following terms shall have the meanings as set forth below:

1.1  The "Actions" mean *Spath v. Quincy Bioscience Holding Company, Inc.*, No. 1:19-cv-3521-RA, *Vanderwerff v. Quincy Bioscience Holding Co.*, No. 1:19-cv-7582-RA, and *Karathanos v. Quincy Bioscience Holding Co.*, No. 1:19-cv-8023-RA, now pending in the United States District Court for the Southern District of New York.

1.2 "Claims Administrator" means Heffler Claims Group. The Claims Administrator shall be subject to and comply with this Settlement Agreement.

1.3 "Plaintiffs' Counsel" means KamberLaw LLC, Motley Rice LLC, and Wilentz, Goldman & Spitzer, P.A.

1.4 "Class Period" means the period beginning January 1, 2010, through and including the date the Preliminary Approval Order is entered.

1.5 "Court" means the United States District Court for the Southern District of New York.

1.6 "Effective Date" means the first date after which all of the following events and conditions have been met or have occurred: (a) the Settlement Agreement is executed and delivered by/to all Settling Parties and approved by the Court; (b) the Court enters the Final Judgment and Order Approving Settlement ("Final Judgment"); (c) the Final Judgment becomes "Final," with "Final" meaning the occurrence of any of (i) the expiration of the time for an appeal or petition for review of the Final Judgment, or (ii) in the event an appeal or petition is filed, final affirmance of the Final Judgment following review, or final dismissal of any appeal or petition from the Final Judgment. If the Final Judgment is set aside, materially modified, vacated or reversed by the Court or by an appellate court, and is not fully reinstated on further appeal, then the Final Judgment does not become "Final" and the Effective Date cannot occur. The sole exceptions are if the Final Judgment is

modified as to the amount of fees or costs payable to Plaintiffs' Counsel or a reduction in the incentive awards payable to Plaintiffs. A change in those amounts shall not preclude the Final Judgment from becoming Final. In the event the Final Judgment is modified in a manner that would preclude the Final Judgment from becoming Final, the Settling Party or Parties aggrieved by such modification— "aggrieved" meaning, for Plaintiffs, a reduction in benefits available to Settlement Class Members, and for Settling Defendants, an increase in their monetary obligations or a material modification in the definition of Released Claims or the scope of the Settlement Class—shall have the option, at its or their sole discretion, to accept the modification and allow the Final Judgment as so modified to become Final. If such a Settling Party wishes to exercise this option, that Settling Party shall file a written notice of waiver with the Court within ten (10) days after such Settling Party is notified by applicable court process of the modification. The modified Final Judgment shall not become Final unless all aggrieved Settling Parties file such a waiver. If all aggrieved Settling Parties file waivers, then the Final Judgment shall become Final on the later of the date all such waivers are filed, or all of the conditions of this Paragraph 1.6 are satisfied.

    1.7 "Escrow Agent" means JP Morgan Chase Bank, N.A.

    1.8 "Notice" means the notice provided for in Section 6 and substantially in the form attached hereto as Exhibits A and B.

1.9 "Preliminary Approval Order" means the order to be entered by the Court that preliminarily approves the Settlement Agreement, certifies the Settlement Class for settlement purposes only, approves the Notice and the Summary Notice, and sets the Fairness Hearing, as provided for in Section 6. A proposed Preliminary Approval Order is attached hereto as Exhibit C.

1.10 "Settlement Agreement" means this Stipulation of Settlement, including all attached exhibits.

1.11 "Settlement Class" means all persons in the United States and its territories who purchased Prevagen® Regular Strength, Prevagen® Extra Strength, Prevagen® Mixed Berry Chewable, Prevagen® Extra Strength Chewable, and Prevagen® Professional Strength (collectively, "Prevagen") during the Class Period. Excluded from the Settlement Class are the Defendants, Defendants' employees, and members of Defendants' immediate families.

1.12 "Settlement Class Members" means all persons falling within the definition of the Settlement Class who do not opt out of the settlement as provided herein.

1.13 "Fairness Hearing" means the hearing to determine whether this Settlement Agreement should be finally approved by the Court, as provided for in Section 6.

6

1.14 "Summary Notice" means the written notice provided for in Section 6 and substantially in the form attached hereto as Exhibit B.

1.15 The word "or" means and/or.

1.16 The plural includes the singular and vice-versa.

## 2. LITIGATION BACKGROUND

2.1 *Spath* Case. Plaintiff Elaine Spath commenced her action in the United States District Court for the District of New Jersey on August 2, 2018. By agreement, Settling Defendants' obligation to respond to the complaint was deferred pending the outcome of motion practice in the *Vanderwerff* case, as described below. Settling Defendants provided the same discovery to Plaintiff Spath's counsel as they provided to counsel for Plaintiff Vanderwerff. On April 15, 2019, Plaintiff Spath voluntarily transferred her case to the Southern District of New York to facilitate settlement of the Actions.

2.2 *Vanderwerff* Case. Plaintiff James Vanderwerff commenced his action in the United States District Court for the District of New Jersey on February 7, 2017. On March 30, 2017, Settling Defendants moved to stay the *Vanderwerff* action pending the Second Circuit Court of Appeals' consideration of the Federal Trade Commission appeal described below. On April 10, 2017, Settling Defendants moved to dismiss the *Vanderwerff* action. The court denied the motion for stay on September 1, 2017, and declined to stay discovery during the pendency of Settling

Defendants' motion to dismiss.  Limited (written-only) discovery has proceeded in the *Vanderwerff* case.  In April and May 2019, Settling Defendants and Plaintiff Vanderweff submitted supplemental briefing with respect to Settling Defendants' motion to dismiss.  As of the date of this Settlement Agreement, Settling Defendants' motion to dismiss is fully briefed and awaiting oral argument or a decision.  On August 8, 2019, Plaintiff Vanderwerff voluntarily transferred the case to the Southern District of New York in order to facilitate settlement of the Actions.

2.3  *Karathanos* Case.  Plaintiff John Karathanos commenced his action in the United States District Court for the Eastern District of New York on February 27, 2017.  Settling Defendants moved to dismiss the *Karathanos* action on June 29, 2017.  The court stayed the *Karathanos* case on January 18, 2018, pending the Second Circuit Court of Appeals' consideration of the Federal Trade Commission appeal described below.  After the court lifted the stay, the Settling Defendants renewed their motion to dismiss on May 20, 2019.  As of the date of this Settlement Agreement, that motion to dismiss is fully briefed and pending oral argument or a decision.  Plaintiff Karathanos voluntarily transferred his action to the Southern District of New York on August 8, 2019, in order to facilitate settlement of the Actions.

2.4  Federal Trade Commission/New York Attorney General Action

8

2.4.1 Complaint. On January 9, 2017, the Federal Trade Commission ("FTC") and New York Attorney General ("NYAG") sued Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., Quincy Bioscience Manufacturing, LLC, Mark Underwood, and Michael Beaman, in a case captioned *FTC v. Quincy Bioscience Holding Co.*, No. 1:17-cv-124-LLS (S.D.N.Y.) (the "FTC Action"). The FTC Action alleges violations of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, Sections 349 and 350 of the GBL, and New York Exec. Law § 63(12).

2.4.2 Motion to Dismiss. On April 6, 2017, defendants in the FTC Action filed motions to dismiss the FTC Action in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(2). The FTC and the NYAG filed their oppositions on April 25, 2017 and defendants filed their reply briefs on May 5, 2017. On September 28, 2017, the Court granted defendants' motion to dismiss pursuant to Rule 12(b)(6), dismissing the FTC Action in its entirety.

2.4.3 Appeal. On November 15, 2017, the FTC filed its notice of appeal of the dismissal of the FTC Action. On November 20, 2017, the NYAG filed its notice of appeal of the dismissal of the FTC Action. On February 21, 2019, in a *per curium* decision, the Second Circuit vacated the

order dismissing the case, but not addressing other bases for dismissal that the district court had not reached.

2.4.4  Current status.  As of the date of execution of this Agreement, the court denied defendants' motions to dismiss the FTC Action on those other grounds, but no discovery has occurred in the FTC Action.

## 3.  BENEFITS OF THE SETTLEMENT

3.1  <u>Benefits to Settlement Class</u>.  As explained in detail below, Quincy, on behalf of all Settling Defendants, will make the following benefits available to Settlement Class Members:

3.1.1  Over time, as explained further below, Quincy will pay the total sum of Eleven Million One Hundred Seventy-Five Thousand Dollars ($11,175,000) into a "common fund" (hereafter, the "Settlement Fund"), from which the costs of providing notice to the Settlement Class and administering the settlement, and also the fees and costs awarded to Plaintiffs' Counsel, shall be deducted, and the remainder of which shall be available for Settlement Class Members to claim according to the terms of this Settlement Agreement.

3.1.2  Pursuant to the Memorandum of Understanding ("MOU") reached at the October 2018 Mediation, beginning on November 1, 2018, and continuing monthly thereafter, Quincy has set aside the sum of Two Hundred Twenty-Five Thousand Dollars ($225,000) per month.  As of October 15, 2019,

Quincy has set aside a total of Two Million, Seven Hundred Thousand Dollars ($2,700,000). Upon the Court granting Preliminary Approval to this Settlement Agreement, all set-aside funds as of that date will be transferred to the Escrow Agent. The Escrow Agent, at the direction of the Parties and pursuant to the direction of the Court, may release funds from escrow to pay for the costs of notice and administration. The Escrow Agent otherwise will hold the funds in trust until the Settlement Agreement becomes Final or is terminated pursuant to its terms. Beginning on the first of the next month following Preliminary Approval, and each month thereafter until the Settlement Agreement has become Final (unless the Settlement Agreement is terminated pursuant to its terms), Quincy will pay Two Hundred Twenty-Five Thousand Dollars ($225,000) per month to the Settlement Administrator to be held in trust. Upon the Settlement Agreement becoming Final, then at the direction of the Parties, the Escrow Agent shall transfer all remaining escrowed funds to the Settlement Administrator to pay claims of Settlement Class Members in accordance with Section 4.

3.1.3 Within fifteen days after this Settlement Agreement has become Final, to the extent Quincy has not already transferred to the Escrow Agent and/or Settlement Administrator at least Five Million Dollars ($5,000,000) in payments from the monthly contributions described above, Quincy will deliver to the

Settlement Administrator the difference between all amounts previously transferred and Five Million Dollars ($5,000,000).

3.1.4  After the Settlement Agreement has become Final, Quincy will begin paying Three Hundred Thousand Dollars ($300,000) per month to the Settlement Administrator until Quincy has made the total settlement payment of Eleven Million One Hundred Seventy Five Thousand Dollars.

3.1.5  In addition to this settlement payment, Quincy has agreed to make changes to the manner in which it markets Prevagen (the "Injunctive Provisions").  It is contemplated that any changes to the manner in which Quincy markets Prevagen will be the subject of discussions between Quincy on the one hand and the FTC and NYAG on the other.  Either side may withdraw from this Settlement Agreement, terminating it, if the FTC and/or NYAG advise that they do not approve of it or will object to it for any reason.  Further, if any of the following circumstances occur, Defendants shall immediately notify Plaintiff's Counsel and Plaintiff's Counsel shall have the right to withdraw from this agreement within fourteen days of any of the following:

(a)     Quincy advises Plaintiffs' counsel of the final agreement it has reached with the above-referenced government agencies and that agreement includes Injunctive Provisions that are not satisfactory to Plaintiffs' Counsel;

(b) Quincy advises Plaintiffs' counsel that Quincy and the FTC will not reach agreement to injunctive changes or that the FTC will object to this Settlement Agreement for any other reason; or

(c) FTC and Quincy have not achieved agreement with the FTC regarding changes to the Injunctive Provisions by the date on which the Court requires the Settling Parties to report back on the status of Quincy's negotiations with the FTC and NYAG.

3.2 <u>Opinion of Plaintiffs' Counsel</u>. Plaintiffs' Counsel have analyzed the benefits to be obtained under the terms of the proposed Settlement and have considered the costs, risks, and delays associated with the continued prosecution of the Action and likely appeals, as well as the merits of the defenses asserted by Settling Defendants and the issues associated with satisfying Federal Rule of Civil Procedure 23 and thereby obtaining and sustaining class certification in this matter. Plaintiffs' Counsel believe that, in consideration of all of the circumstances and after good faith, prolonged, serious, and contentious arms-length negotiations in mediation with Defendants, the proposed settlement is fair, reasonable, adequate and in the best interests of the Settlement Class. In making these statements and submitting a declaration filed concurrently herewith, Plaintiffs' Counsel are not making any admission of fact or law in regard to liability, fault allocation, or damages with respect to the Action.

3.3 <u>Opinion of Settling Defendants</u>. Settling Defendants have concluded that it is in their best interests that the Action be settled on the terms embodied in the Settlement Agreement. Settling Defendants reached that conclusion after: (1) analyzing the factual and legal issues in the Action and considering the uncertainty of litigation; (2) determining that further conduct of the Action through trial and any possible appeals would be protracted and expensive; and (3) considering the benefits of permitting Quincy to conduct its business unhampered by the distractions of continued litigation.

**NOW, THEREFORE, IT IS HEREBY AGREED** by and between the Settling Parties, through their respective counsel, that the Action and the Released Claims be finally and fully settled, compromised and released, and the Action shall be dismissed on the merits with prejudice, on the terms set forth herein.

**4. MONETARY RELIEF AND PRODUCT RETURN**

4.1 <u>Monetary Fund</u>. As set forth above, Quincy will establish a Settlement Fund in the amount of Eleven Million One Hundred Seventy Five Thousand Dollars ($11,175,000), paid over time.

4.2 <u>Claims From the Settlement Fund</u>. After deducting all notice and administration costs, the payment of fees and costs to Plaintiffs' Counsel, and any incentive awards paid to Plaintiffs, the remainder, which shall be referred to herein

14

as the "Available Settlement Funds," shall be available to be claimed by Settlement Class Members on the following terms:

4.2.1  Settlement Class Members possessing proof that they purchased Prevagen—such proof consisting of itemized receipts or similar indicia deemed acceptable by the Settlement Administrator in its sole discretion—and who state on a claim form that they do not believe Prevagen provided a benefit to them, may receive a full refund for up to sixteen bottles of Prevagen.  These claims will be referred to herein as "Proof of Purchase Claims," and each claimant, a "Proof of Purchase Claimant."

4.2.2  Settlement Class Members lacking proof of purchase, but who attest on a claim form that they purchased one or more bottles of Prevagen and state the approximate date(s) on which they purchased the bottle(s), and state that they do not believe Prevagen provided a benefit to them, may receive Eight Dollars ($8.00) per bottle for up to five (5) bottles of Prevagen they claim to have purchased.  These claims will be referred to herein as "No Proof Claims," and each claimant, a "No Proof Claimant."

4.2.3  If the Available Settlement Funds are insufficient to pay all valid claims, then the Settlement Administrator will reduce claims *pro rata*, as follows:

(a)     If the full amount of valid Proof of Purchase Claims would consume no more than two-thirds of all Available Settlement Funds, then those

15

Proof of Purchase Claims shall be paid in full before No Proof Claims are paid. If the full amount of valid Proof of Purchase Claims would consume more than two-thirds of the Available Settlement Funds, then Proof of Purchase Claimants shall receive full reimbursement for up to five (5) bottles of Prevagen, with claims for bottles in excess of five (5) reduced *pro rata* such that all Proof of Purchase Claims do not consume more than two-thirds of all Available Settlement Funds.

(b)     Available Settlement Funds remaining after all valid Proof of Purchase Claims are paid as described above shall be divided among valid No Proof Claims. If those remaining Available Settlement Funds suffice to provide each No Proof Claimant who claimed to have purchased two or more bottles of Prevagen with the full amount of their claims, then the Settlement Administrator shall cause those claimants seeking reimbursement for one or two bottles to receive the full amount of their claims and then reduce *pro rata* the claims for bottles 3-5. If those remaining Available Settlement Funds only suffice to provide each who claimed to have purchased one or more bottles of Prevagen with the full amount of their claims without a pro rata reduction, then the Settlement Administrator shall cause those claimants seeking reimbursement for one bottle to receive the full amount of their claims and then reduce *pro rata* the claims for second and third bottles. If the Available Settlement Funds remaining do not permit valid No Proof Claimants to receive the full amount of a claim for one bottle, then the remaining Available

16

Settlement Funds will be divided equally among No Proof Claimants regardless of the number of bottles claimed.

4.2.4.  If Available Settlement Funds remain after paying all valid Proof of Purchase Claims and valid No Proof Claims in full, then any remaining Available Settlement Funds will be paid out pro rata to all claimants.  *Only* if an amount of remaining funds is too small to warrant a supplemental distribution to claimants (*i.e.*, because a small number of checks issued in the initial or a supplemental distribution are uncashed by their expiration dates), an application shall be made to the Court by the Parties for authorization to distribute to case-related charitable organizations such as <u>Vitamin Angels</u>, the <u>National Multiple Sclerosis Society</u>, and the <u>Alzheimer's Association</u>.  Under no circumstances, once this Settlement Agreement becomes Final, will any portion of the settlement funds be returned to Defendants.

4.3 <u>Provisions for Direct Deposit and Electronic Transfer</u>.  The Claims Administrator will provide Settlement Class Members the option of receiving claimed benefits by check, direct deposit into such Settlement Class Member's bank account if the Settlement Class Member elects to furnish the Claims Administrator with the necessary bank routing and account numbers, or other available e-payment options that may be feasible at the time of distribution and agreed to by the Parties at the time of distribution, such as Zelle, Venmo and/or Paypal.  The Settling Parties

shall have no responsibility or liability in connection with the fulfillment of such requests.

4.4 <u>Uncashed Checks</u>. For Settlement Class Members who elect to receive their benefits by check, the checks will state on their face that they must be cashed or deposited within ninety (90) days of the date printed on the check, after which the checks will become void. The funds from any uncashed or undeliverable checks will be returned to the Claims Administrator for distribution as otherwise outlined above, in paragraph 4.2.4.

4.5 <u>Claim Forms</u>. Claim Forms shall be sent via e-mail to all Class Members for whom Defendants have an e-mail address. Claim Forms shall also be available from the Claims Administrator, as set forth in the Notice to the Settlement Class. The Settling Parties expect that the vast majority of claims will be completed online through a website to be set up by the Claims Administrator, but the Claims Administrator also will make hard-copy Claim Forms available to Settlement Class Members who request them. Completed Claim Forms shall be due to the Claims Administrator by the date set by the Court in the Preliminary Approval Order and described in the Notice (the "Claims Deadline").

4.6 <u>Opt-Out Forms</u>. Settlement Class Members who wish to opt out of the settlement may submit an Opt-Out Form or letter to the Claims Administrator prior to the deadline set by the Court for such action and described as such in the Notice

and Summary Notice. If a Settlement Class Member submits both a Claim Form and an Opt-Out Form, the Claims Administrator shall disregard the Opt-Out Form.

4.7 <u>Anti-Fraud Measures</u>. The claims process shall employ standard anti-fraud measures to be determined and implemented by the Claims Administrator, which may include consideration of information provided by Quincy regarding Settlement Class Members' purchases of Prevagen. The ultimate decision as to the validity and amount of any claim will be made by the Claims Administrator to be construed liberally in favor of payment. However, if Class Counsel and defense counsel agree on the payment of a claim rejected by the Claims Administrator, the Claims Administrator shall pay such claims.

4.8 <u>Disbursement of Settlement Funds.</u> Upon the Settlement Agreement becoming Final, if the Settlement Administrator already is holding sufficient Available Settlement Funds—after accounting for expected administration costs—to pay all valid claims, then it will pay those claims as soon as practicable after the Settlement Agreement becomes Final. If, when the Settlement Agreement becomes Final, the Settlement Administrator has sufficient Available Settlement Funds to pay Proof of Purchase Claims, but not No Proof Claims, then the Settlement Administrator will pay all Proof of Purchase Claims as soon as practicable after the Settlement Agreement becomes Final, but hold payment on No Proof Claims until it has sufficient Available Settlement Funds to pay all No Proof Claims. Absent

19

further direction from the Court, for which Plaintiffs' counsel may apply as necessary, the Settlement Administrator will pay any fee awarded to Plaintiffs' counsel only after both Proof of Purchase Claims and No Proof Claims have been paid (but before any supplemental distribution made pursuant to Paragraph 4.2.4). The Settlement Administrator may disburse those fees to Plaintiffs' counsel on a monthly basis upon receipt from Quincy and need not wait until it has sufficient Available Settlement Funds to make the payment *in toto*.

4.9 <u>Privacy</u>. The Claims Administrator shall take reasonable measures to the extent permitted by law to assert and to protect the privacy rights of Settlement Class Members, including by maintaining the confidentiality and security of and preventing the unauthorized access or acquisition of any financial or personal information submitted in connection with any claim for benefits pursuant to this Settlement Agreement. In the event of any unauthorized access to or acquisition of personal information concerning any Settlement Class Member as a direct result of the intentional or negligent acts or omissions of the Claims Administrator, the Claims Administrator shall be responsible for complying with any privacy, data security, or breach notification obligations under state or federal law, and will be solely responsible for directly providing notice to state agencies, affected Settlement Class Members, and/or other persons or entities.

4.10 <u>Taxes on The Settlement Fund</u>. The Settlement Fund shall constitute a qualified settlement fund within the meaning of Treasury Regulations Sections 1.468B-1 through 1.468B-5, 26 C.F.R. §§ 1.468B-1 through 1.468B-5 (1992). The Settling Parties shall treat the Settlement Fund as qualified settlement funds for all reporting purposes under the federal tax laws. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the holder of the Settlement Fund (either the Escrow Agent or the Claims Administrator, depending upon whether such duties are performed before or after the Settlement Agreement becomes Final) shall be the "Tax Escrow Agent". As the Tax Escrow Agent, the Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. Section 1.468B-2(k)). Such returns shall be consistent with this Paragraph and in all events shall reflect that all taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the income earned by the Settlement Fund. Taxes and tax expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and paid without prior order from the Court. The Tax Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from the income earned by the Settlement Fund any funds necessary to pay such taxes, including the establishment of adequate

21

reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Section 1.468B2(1)(2)). The Tax Escrow Agent shall maintain accurate records of all expenditures made pursuant to this Paragraph, and shall provide the records upon request to Plaintiff's Counsel and Quincy's counsel. None of the Settling Parties, or any of their counsel, shall have any responsibility for the payment of taxes described in this Paragraph. The Settling Parties agree to cooperate with the Tax Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph. The Settling Parties further agree that the costs of claims administration will be excluded from the Settlement Fund for tax purposes.

4.11 <u>Discretion of Claims Administrator</u>. Heffler Claims Group shall have discretion to carry out the intent of the Settlement Agreement.

4.12 <u>Continuing Jurisdiction Over Direct Relief</u>. Disputes regarding this Agreement or disbursement of the Settlement Fund shall be within the jurisdiction of the Court, *custodia legis*, until such time as the Settlement Fund has been distributed pursuant to this Settlement Agreement.

## 5. CORPORATE POLICIES

5.1 In addition to denying the allegations made in the Action, Quincy asserts that at all times, it has conducted its business in full compliance with all applicable United States federal and state laws governing its business.

6.  **ENTRY OF PRELIMINARY APPROVAL ORDER, NOTICE TO THE SETTLEMENT CLASS, AND ENTRY OF FINAL JUDGMENT**

6.1  <u>Motion for Preliminary Approval</u>.  At a time mutually acceptable to the Settling Parties after execution of this Settlement, Plaintiffs shall submit this Settlement Agreement to the Court and shall apply to the Court for entry of the Preliminary Approval Order, which includes provisions that, among other things, will:

6.1.1  Preliminarily approve the Settlement Agreement as being fair, reasonable, adequate and the product of good faith negotiations;

6.1.2  Certify for settlement purposes only the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure;

6.1.3  Approve the Claim Form substantially in the form attached as Exhibit D, and approve Heffler Claims Group as the Claims Administrator;

6.1.4  Approve the Opt-Out Form substantially in the form attached as Exhibit E;

6.1.5  Approve the Notice and Summary Notice substantially in the form attached as Exhibits A and B;

6.1.6  Order that the Summary Notice be disseminated in the manner set forth in the Notice Program attached as Exhibit F and in accordance with the Preliminary Approval Order;

6.1.7 Provide that any person falling within the definition of the Settlement Class who desires to be excluded from the Settlement Class must request exclusion by submitting a timely and valid exclusion request, in compliance with the instructions in the Notice, to the Claims Administrator by the date specified in the Preliminary Approval Order, which shall fall not later than thirty (30) days before the Fairness Hearing;

6.1.8 Provide that persons falling within the definition of the Settlement Class who do not file valid and timely requests for exclusion will be: (i) bound by the Final Judgment dismissing the Action on the merits and with prejudice; and (ii) permanently barred from commencing, prosecuting or participating in the recovery in any direct or representative action, or any action in any other capacity, asserting any of the Released Claims, in the manner described in Section 8;

6.1.9 Provide that, pending final determination of whether the Settlement Agreement should be approved, neither Plaintiffs nor any Settlement Class Member, either directly, representatively, or in any other capacity, shall commence, continue to pursue, or prosecute any action or proceeding in any court or tribunal asserting or purporting to assert any of the Released Claims against Settling Defendants or any other of the Released Parties. This injunction shall specifically exempt *Racies v. Quincy Bioscience, LLC,* No. 15-cv-292-HSG (N.D. Cal.) ("*Racies*"), where the court certified a class limited to California purchasers on

24

December 15, 2017. However, because the Settlement Class would include California purchasers, nothing contained in the Preliminary Approval Order shall preclude the Settling Defendants from moving the *Racies* court to stay that case or take other appropriate action while the Settlement Agreement's fairness is under consideration, and Plaintiffs' Counsel shall not object to such a request;

6.1.10 Find that the Notice to be given in accordance with the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all members of the Settlement Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law;

6.1.11 Order that notice to persons falling within the definition of the Settlement Class shall be structured to be as efficient as possible and to make maximum use of notice by e-mail and other electronic means and that such notice shall be undertaken by the Claims Administrator;

6.1.12 Schedule a Fairness Hearing, no earlier than the date permitted under the Class Action Fairness Act, 28 U.S.C. § 1715(d), to consider and determine whether the settlement proposed under the terms of this Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the Final Judgment approving the Settlement Agreement and resolving the Action should be

entered, and to consider the request for an award of attorneys' fees and reimbursement of expenses;

6.1.13 Provide that the Fairness Hearing on this Settlement Agreement and any request for an award of attorneys' fees and reimbursement of expenses may, from time-to time and without further notice to the Settlement Class other than Settlement Class Members who have timely submitted objections, be continued or adjourned by order of the Court;

6.1.14 Provide that objections by any Settlement Class Member to (i) the proposed Settlement, (ii) entry of Final Judgment, (iii) entry of an order approving the Settlement Agreement, or (iv) any proposed award of attorneys' fees and reimbursement of expenses to Plaintiff's Counsel shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Fairness Hearing only if, by the date set forth in the Preliminary Approval Order, which shall be no later than thirty (30) days before the Fairness Hearing, such objector files with the Claims Administrator a written notice of his, her, or its intention to appear, states the basis for the objections, and includes information identifying any prior class action objections filed by the objector or the objector's counsel;

6.1.15 Provide that, on the Effective Date, all Settlement Class Members, whether or not they file a Claim Form or sign a release, shall be barred

from asserting any Released Claims against any of the Released Parties, and each and all Settlement Class Members shall conclusively be deemed to have released and forever discharged any and all such Released Claims as against all of the Released Parties, in the manner described in Section 8.

6.2 <u>Class Action Fairness Act Notices</u>.  Within ten (10) days after Plaintiffs move the Court for preliminary approval of the settlement, Quincy shall provide or cause to be provided notices of the settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

6.3 <u>Cooperation</u>.  Quincy shall cooperate in providing to the Claims Administrator information such as names, addresses, and e-mail addresses, or such other information as the Claims Administrator requests, for the notice and settlement administration process, which shall be provided to the Claims Administrator pursuant to a confidentiality agreement.

6.4 <u>Motion for Final Judgment</u>.  If, after the Fairness Hearing, the Court approves the Settlement Agreement, then counsel for the Settling Parties shall request that the Court enter Final Judgment.

## 7.  NO ADMISSION OF FAULT, LIABILITY, OR WRONGDOING

7.1 <u>No Acknowledgement of Liability or Wrongdoing</u>.  The Settling Defendants enter into this Settlement Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind.  The Settling Defendants continue to

deny all of the material allegations in the Actions and to assert that Plaintiffs' claims are without merit.

7.2 <u>No Inference of Liability or Wrongdoing</u>. Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with them, nor any other action taken to carry out this Settlement Agreement by any of the Settling Parties shall be construed as, or shall be used as, or shall raise any presumption or inference of, an admission or concession by or against or respecting the Settling Defendants of the truth of any of the allegations in the Actions, or of any liability, fault or wrongdoing.

7.3 <u>The Settlement is Not Evidence of Liability or Wrongdoing</u>. This Settlement Agreement, its terms or provisions, and the negotiations or proceedings connected with them shall not be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or be used to create any inference or presumption of liability or an admission of any kind by any Settling Defendant, except as may be necessary to enforce the terms of this Settlement Agreement.

7.4 Nothing herein shall affect any arguments that Settling Defendants may wish to raise in the FTC Action or any other action pending against any of the Settling Defendants. The individual settling parties are before this Court only for the limited purpose of settling this case, and in doing so they are not submitting to

28

the jurisdiction of the Courts of New York for any other purpose, and nothing in this Settlement Agreement should be construed as their submitting to the jurisdiction of the Courts of New York.

## 8. RELEASE

8.1 As of the Effective Date and in consideration of this Settlement Agreement and the benefits extended to the Settlement Class, the Settling Defendants and all of its and their present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives, shall be released and forever discharged by the Plaintiffs, for themselves and as the representatives of each Settlement Class Member; each Settlement Class Member on behalf of himself or herself; and their respective present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively, the "Releasing Parties") release all claims, demands, rights, liabilities, suits, or causes of action, known or unknown, as of the Effective Date, that (1) were or could have been asserted in the complaints filed in the Actions,

29

or (2) are based upon, arise out of, or reasonably relate to, the claims asserted in the Actions (collectively, the "Released Claims").  Released Claims do not, however, include claims for personal injury.

8.2  Except as excluded in paragraph 8.1, the Released Claims include any unknown claims that reasonably could have arisen out of the same facts alleged in the Actions that the Settlement Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement.  With respect to the Released Claims only, the Settlement Class Members stipulate and agree that, upon the Effective Date, the Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

8.3  The Settlement Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the

subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule, or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaints in these Actions without regard to the subsequent discovery or existence of such different or additional facts.

8.4 Settling Defendants release Plaintiffs and Plaintiffs' Counsel from any and all claims arising out of Plaintiffs' filing and prosecution of the Actions.

8.5 <u>Continuing Jurisdiction</u>.   Except for the enforcement of the Final Judgment entered pursuant to this Settlement Agreement, the Releasing Parties shall be barred from prosecuting any proceeding against any of the Released Parties with respect to any Released Claim.  The Court shall retain jurisdiction to enforce the Final Judgment, releases, and bars to suits contemplated by this Settlement Agreement.  It is further agreed that the Settlement Agreement and the Final

Judgment may be pleaded as a complete defense to any proceeding subject to this Section.

## 9. EXCLUSION (OPTING-OUT) FROM THE SETTLEMENT CLASS

9.1 Any person falling within the definition of the Settlement Class who does not wish to participate in the settlement and be bound by the dismissals and releases provided for in this Settlement Agreement must request exclusion from the Settlement Class. A request for exclusion must state: (1) the name, address, and telephone number of the person requesting exclusion and (2) that the person wishes to be excluded from the Settlement Class. The exclusion request must be sent by mail or e-mail to the Claims Administrator and postmarked or e-mailed on or before the date specified in the Preliminary Order. The Claims Administrator shall deliver copies of any and all requests for exclusion to Plaintiffs' Counsel and Quincy's counsel. The Claims Administrator shall make such deliveries on a weekly basis and shall ensure that the final such delivery is received by Plaintiffs' Counsel and Quincy's counsel at least thirty (30) days before the Fairness Hearing. Plaintiffs' Counsel shall file any and all such requests for exclusion with the Court at or before the Fairness Hearing. All persons who submit valid and timely requests for exclusion in the manner set forth in this Section 9 shall have no rights under this Settlement Agreement and shall not share in the distribution of the Settlement Fund. All persons falling within the definition of the Settlement Class who do not request

exclusion in the manner set forth in this Section shall be Settlement Class Members and shall be bound by this Settlement Agreement and the Final Judgment. Any person falling within the definition of the Settlement Class who timely requests exclusion shall, upon approval of the Court, be excluded from the class certified pursuant to Fed. R. Civ. Proc. 23(b)(3), but each such person shall remain in the class for purposes of injunctive relief claims, certified pursuant to Fed. R. Civ. Proc. 23(b)(2).

## 10. ATTORNEYS' FEES AND DISBURSEMENT OF EXPENSES

10.1 <u>Application for Attorneys' Fees and Expenses</u>. Plaintiffs' Counsel may apply and anticipate applying to the Court at the Fairness Hearing for an award of attorneys' fees and reimbursement of their expenses and costs from the Settlement Fund in an amount to be determined by the Court as a percentage of the entire value of settlement, including monetary and the value of the equitable relief, and, as a common fund, in accordance with applicable law. The Notice shall include the amount of fees and costs that Plaintiffs' Counsel plan to seek, and Plaintiffs' Counsel will file a separate motion with the Court requesting an award of attorney fees and costs at least two weeks *prior to* the deadline for Settlement Class Members to object to the settlement. Plaintiffs and Plaintiffs' Counsel agree that they will not seek to collect any attorneys' fees, expenses, or costs from any source other than the Settlement Fund. To the extent the Court may award fees to counsel for any class

member appearing before the Court in connection with the approval or implementation of this Settlement Agreement, such fees also shall be payable solely from the Settlement Fund. Under no circumstances shall any Settling Defendant other than Quincy have any monetary obligations to Settlement Class Members, and the monetary obligations of Quincy under this Settlement Agreement shall under no circumstances exceed its payment of the Settlement Fund and obligations specifically set forth herein

10.2 <u>Payment of Attorneys' Fees and Expenses Award</u>. The attorneys' fees, expenses, and costs approved by the Court to be distributed to Plaintiffs' Counsel shall be paid by the Claims Administrator as provided for above.

10.3 <u>Plaintiffs' Incentive Compensation</u>. The Court may award reasonable incentive compensation to the participating Plaintiffs for their service in the case, not to exceed $5,000 each, which shall come from the Settlement Fund. The list of participating Plaintiffs shall be provided to the Court prior to Notice. Any such Court-ordered compensation shall be paid simultaneously with or following the payments made for No Proof Claims. This shall be in addition to any benefits that the participating Plaintiffs may claim as Settlement Class Members.

10.4 <u>No Effect On Settlement</u>. Decisions by the Court with respect to Plaintiffs' Counsel's request for an award of attorneys' fees, costs, and expenses, or requests for incentive compensation to the participating Plaintiffs, shall not operate

to terminate or cancel this Settlement Agreement, and shall have no effect on the finality of the Final Judgment to be entered pursuant to this Settlement Agreement.

10.5 Released Parties Not Responsible for Allocation of Award. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' counsel, and any other Person who may assert some claim thereto, of any award of attorneys' fees, costs, or expenses that the Court may make.

## 11. TERMINATION OF SETTLEMENT AGREEMENT

11.1 Consequences of Termination. If the Effective Date does not occur, then this Settlement Agreement shall have no further force or effect and the Settling Parties shall revert to their respective positions as of the date that the Settlement Agreement was executed by the Settling Parties, as though this Settlement Agreement had never been executed. The terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties, and to the extent permitted by law, no part of the Settlement Agreement or its exhibits shall be used in any action or proceeding for any purpose and any orders entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*. In that event, within five (5) business days after written notification of such event is sent by Quincy's counsel or Plaintiffs' Counsel to the Claims Administrator, the Settlement Fund, less expenses and any costs which

already have been disbursed, shall be refunded by the Claims Administrator to Quincy. In such event, Quincy shall be entitled to any tax refund owing to the Settlement Fund. At the request of Quincy, the Claims Administrator or its designee shall apply for any such refund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for a refund, to Quincy.

11.2 <u>Inadmissible for Purposes of Certifying a Litigation Class</u>. If the Settlement Agreement is terminated according to its terms or the Effective Date does not occur for any reason, the Settling Parties will not offer any part of this Settlement Agreement or its exhibits, any agreement negotiated between the parties in connection with or regarding the Settlement or the Settlement Agreement, or any motion seeking approval of the Settlement or Settlement Agreement in connection with a motion to certify a litigation class or in any other proceeding in the Actions.

## 12. OTHER PROVISIONS OF THE SETTLEMENT

12.1 <u>Public Communications</u>. The Settling Parties agree that any communications regarding the settlement will be consistent with what the Settling Parties have advised the Court in public filings. The Settling Parties and their counsel further agree not to disparage each other.

12.2 <u>Stay of Proceedings</u>. The Settling Parties anticipate that the Order granting Preliminary Approval to this Settlement Agreement will include a provision enjoining members of the Settlement Class from bringing or continuing to pursue or

prosecute Released Claims while the Court considers whether to grant Final Approval to the Settlement Agreement. The sole anticipated exceptions to this injunction are that it would not apply to the *Racies* case, except as set forth in paragraph 6.1.9, or to any governmental entity suing in its law enforcement capacity rather than in a *parens patriae* capacity on behalf of Settlement Class Members. Should the Court grant that injunction, the Settling Parties shall cooperate to effectuate it. In the event the Preliminary Approval Order does not include such an injunction, the Settling Parties shall cooperate and use best efforts to cause any Court hearing claims that would have been covered by the proposed injunction to stay those matters pending the Court's consideration of whether to grant Final Approval to the Settlement Agreement. In the event the Parties are not able to persuade such Court to stay those matters, Defendants shall have the right to terminate this Settlement Agreement.

12.3 <u>Best Efforts and Cooperation</u>. The Settling Parties acknowledge that it is their intent to consummate this Settlement Agreement. Accordingly, the Settling Parties agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Settlement Agreement and exercise their best efforts to establish the foregoing terms and conditions of the Settlement Agreement. The Settling Parties further agree to cooperate in effecting notice to members of the Settlement Class and in securing the Court's approval of the Settlement.

12.4 <u>Entire Agreement</u>.  This Settlement Agreement constitutes the entire agreement among the Settling Parties and supersedes any prior agreements or understandings between them.  Other than as set forth in Paragraph 12.9, all terms of this Settlement Agreement are contractual and not mere recitals and shall be construed as if drafted by all Settling Parties.  The terms of this Settlement Agreement are and shall be binding upon and inure to the benefit of each of the Settling Parties and Settlement Class Members, their agents, attorneys, employees, heirs, successors, and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the parties hereto, including any Plaintiff or Settlement Class Member.

12.5 <u>Amendment</u>.  This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their successors in interest.  Amendments and modifications may be made without notice to the Settlement Class, unless notice is required by the Court.

12.6 <u>Execution in Counterparts</u>.  This Settlement Agreement may be executed in counterparts or by facsimile, with each counterpart or facsimile signature having the same force and effect as an original.  All executed counterparts and each of them shall be deemed to be the one and the same instrument.  Counsel for the parties to this Settlement Agreement shall exchange among themselves original

signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

12.7 <u>Jurisdiction</u>. The Court shall have exclusive and continuing jurisdiction over the implementation, interpretation, and execution of the Final Judgment and this Settlement Agreement, with respect to all parties hereto, including all Settlement Class Members.

12.8 <u>Governing Law</u>. The rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of New York.

12.9 <u>Headings</u>. The headings and subheadings to this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

12.10 <u>Severability</u>. In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if the Settling Parties all elect in writing, to proceed as if such invalid, illegal, or unenforceable provision had never been included in the Agreement.

IN WITNESS WHEREOF, each of the Settling Parties has caused the Settlement Agreement to be executed on his or her own behalf or on its behalf by its duly authorized representative, all as of the day set forth below.

Dated:

Scott A. Kamber, Esq.
KAMBER LAW, LLC
201 Milwaukee Street, Suite 200
Denver, Colorado
(212) 920-3072

Counsel for Plaintiff Spath
and the Settlement Class

Elaine Spath

---

Daniel R. Lapinksi, Esq.
Motley Rice LLC
201 Lake Drive East, Ste 101
Cherry Hill, NJ 08002
(856) 667-0500

Counsel for Plaintiffs Vanderwerff
and Karathanos, and the
Settlement Class

James Vanderwerff

---

Kevin P. Roddy, Esq.
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Dr., Ste 900
Woodbridge, NJ 07095
(732) 855-6402

Counsel for Plaintiffs Vanderwerff
and Karathanos, and the
Settlement Class

John Karathanos

41

Dated:

---

Scott A. Kamber, Esq.
KAMBER LAW, LLC
201 Milwaukee Street, Suite 200
Denver, Colorado
(212) 920-3072

Counsel for Plaintiff Spath
and the Settlement Class

---

Elaine Spath

---

Daniel R. Lapinksi, Esq.
Motley Rice LLC
201 Lake Drive East, Ste 101
Cherry Hill, NJ 08002
(856) 667-0500

Counsel for Plaintiffs Vanderwerff
and Karathanos, and the
Settlement Class

---

James Vanderwerff

---

Kevin P. Roddy, Esq.
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Dr., Ste 900
Woodbridge, NJ 07095
(732) 855-6402

Counsel for Plaintiffs Vanderwerff
and Karathanos, and the
Settlement Class

---

John Karathanos

41

Mark Underwood

Michael Beaman

John E. Villafranco, Esq.
Geoffrey W. Castello, Esq.
Glenn T. Graham, Esq.
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

Jeffrey S. Jacobson, Esq.
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas
41st Floor
New York, New York 10036-2714
(212) 248-3191

Counsel for Settling Defendants

Counsel for Settling Defendants

Michael B. deLeeuw, Esq.
COZEN O'CONNOR
45 Broadway
New York, New York 10006
(212) 908-1331

Counsel for Settling Defendants

_____      *Michael L Beaman*

Mark Underwood                     Michael Beaman

_____      _____

John E. Villafranco, Esq.           Jeffrey S. Jacobson, Esq.
Geoffrey W. Castello, Esq.        DRINKER BIDDLE & REATH LLP
Glenn T. Graham, Esq.             1177 Avenue of the Americas
KELLEY DRYE & WARREN LLP    41st Floor
101 Park Avenue                   New York, New York 10036-2714
New York, New York 10178       (212) 248-3191
(212) 808-7800

Counsel for Settling Defendants     Counsel for Settling Defendants

_____

Michael B. deLeeuw, Esq.
COZEN O'CONNOR
45 Broadway
New York, New York 10006
(212) 908-1331

Counsel for Settling Defendants

42

# EXHIBIT A

## (NOTICE-TO BE ADDED)

# EXHIBIT B

# (SUMMARY NOTICE-TO BE ADDED)

# EXHIBIT C

## (PRELIMINARY APPROVAL ORDER-TO BE ADDED)

# EXHIBIT D

## (CLAIM FORM-TO BE ADDED)

# EXHIBIT E

## (OPT-OUT FORM-TO BE ADDED)

# EXHIBIT F

## (NOTICE PROGRAM-TO BE ADDED)