UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 19-22864-Civ-COOKE/GOODMAN

JUAN COLLINS and JOHN FOWLER,
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.

QUINCY BIOSCIENCE, LLC,
a Wisconsin limited liability company,

    Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

Defendant Quincy Bioscience, LLC ("Quincy") moves pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1 for the entry of summary judgment in its favor. The grounds for this motion are set forth in the following memorandum of law. A separate Statement of Undisputed Material Facts has been contemporaneously filed in accordance with Local Rule 56.1.

## I. PRELIMINARY STATEMENT

Plaintiffs Juan Collins and John Fowler (collectively, "Plaintiffs") challenge certain marketing claims for a line of brain health supplements marketed under the Prevagen® brand name ("Prevagen"). Plaintiffs' claims fail as a matter of law for at least five reasons. First and foremost, the challenged marketing claims are both truthful and fully substantiated by a double-blinded, placebo controlled, randomized clinical trial known as the Madison Memory Study. The Madison Memory Study defeats Plaintiffs' claims that Quincy violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and that Quincy was "unjustly enriched" by Plaintiffs alleged purchases of Prevagen.

Second, the FDUTPA and unjust enrichment claims fail because Plaintiffs did not act as reasonable consumers when purchasing Prevagen. Both Plaintiffs purchased Prevagen for off-label uses—to treat neurological diseases that they or their family members suffered from. Every package of Prevagen explicitly states that the product is not intended to cure, treat, or diagnose any disease. No reasonable consumer would purchase an over-the-counter dietary supplement to treat a serious neurological disease without reading the label (such as Plaintiff Fowler did) or in spite of the label (such as Plaintiff Collins did). Because Plaintiffs acted in an objectively unreasonable manner, their claims fail as a matter of law.

Third, Plaintiffs' claims fail because Plaintiffs have failed to present any evidence of damage actually suffered by any consumer that can be attributed to Quincy.

Fourth, Plaintiffs' claims are based on a lack of substantiation theory available only to government enforcement agencies—not private plaintiffs.

Finally, even though Plaintiffs may disagree with the science behind the Madison Memory Study and other clinical and pre-clinical studies that Quincy has provided to support the challenged marketing, they cannot dispute that the proffered science constitutes competent and reliable scientific evidence. Accordingly, Plaintiffs cannot establish that all

reasonable experts in the relevant field would disagree with Quincy's advertising and, therefore, the advertising cannot be false.

Accordingly, for the reasons set forth herein and in Quincy's pending Motion to Dismiss, summary judgment should be awarded in favor of Quincy on all counts.

## II. MATERIAL FACTS

### A. Undisputed Material Facts

Quincy incorporates by reference herein its Statement of Undisputed Material Facts in Support of its Motion for Summary (the "Undisputed Facts") (ECF No. 138).

## III. MEMORANDUM OF LAW

### A. Summary Judgment Standard

Motions for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). The moving party bears the initial burden of showing that summary judgment is appropriate, and all facts and inferences from the record must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the court an absence of evidence to support the non-moving party's case, but need not support its motion with affidavits or other materials negating the opponent's claim. *See Eloy v. Guillot,* No. 04-20037-CIV, 2005 WL 8167770, at *1–2 (S.D. Fla. Aug. 25, 2005) (stating "a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits."), *supplemented,* No. 04-20037-CIV, 2005 WL 8167769 (S.D. Fla. Oct. 5, 2005)*, report and recommendation adopted,* No. 04-20037-CIV, 2005 WL 8167777 (S.D. Fla. Oct. 7, 2005)*, aff'd in part, rev'd in part,* 289 F. App'x 339 (11th Cir. 2008). Once the movant demonstrates that there is an absence of evidence to support the non-moving party's case, the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations" in response to a properly supported

motion for summary judgment.  *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997); *see also Celotex*, 477 U.S. at 323; *Cramer v. Aguliar*, No. 12-CV-20790, 2013 WL 11320055, at *4 (S.D. Fla. Aug. 7, 2013).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]"  *Eloy*, 2005 WL 8167770, at *2 (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  "The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment."  *3700 Assocs., LLC v. Griffin*, No. 08-80158, 2008 WL 4542000, at *2 (S.D. Fla. Oct. 6, 2008).

Here, Plaintiffs are unable to satisfy their burden to produce evidence supporting essential elements of their FDUTPA claims (Counts I and II) and unjust enrichment claim (Count III).  Quincy is entitled to summary judgment.

### B. Quincy is Entitled to Summary Judgment on Plaintiffs' FDUTPA Claims (Counts I and II)

Plaintiffs seek to impose liability upon Quincy for alleged violations of FDUTPA, Fla. Stat. § 501.201 *et seq.*, which declares unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  A claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *See, e.g., Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  "Whether an alleged act or practice is deceptive or unfair may be decided as a matter of law."  *Casey v. Florida Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015).

The Undisputed Facts demonstrate that Plaintiffs cannot establish any of the three elements necessary to maintain a FDUTPA cause of action.

#### 1. Quincy Did Not Engage in Any "Unfair or Deceptive Acts or Practices"

"Under FDUTPA, a deceptive practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Washington v. LaSalle Bank Nat. Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011).  Plaintiffs' FDUTPA claims are based on allegations that Quincy made false claims regarding Prevagen's efficacy on the products' labels among other places.  (ECF. No. 15 ¶¶ 14-15, 23-26, 60-62, 71-73, 78-

4

79.)  Plaintiffs allege (incorrectly) that Quincy's marketing statements with respect to Prevagen are "false, misleading, and deceptive." (*Id.* ¶ 22.)  The Undisputed Facts show that Quincy conducted a 90-day randomized, double-blind, placebo controlled study that fully substantiates its advertising for Prevagen, the Madison Memory Study. (ECF. No. 25-2.)  The Madison Memory Study fully supports and substantiates the challenged marketing statements.

Prevagen's advertising and labeling clearly state that Prevagen "help[s] with mild memory problems associated with aging," and supports a "sharper mind," "clearer thinking," and "healthy brain function." (ECF. No. 15 ¶ 1.)  These statements are supported by the Madison Memory Study, which studied normal, healthy, older individuals who took Prevagen.  The results of this gold standard study showed improvements in memory and cognition among the intended treatment population.  (ECF No. 25-2 at 5-9.)  Study participants with mild memory loss or normal aging experienced statistically significant improvements in scores on a number of tests for memory and cognition, when compared with a group of participants taking a placebo. (*Id.*)

True statements are not deceptive.  *See Allyn v. Am. Bd. of Med. Specialties, Inc.*, No. 5:18-cv-355, 2019 WL 297459, at *7 (M.D. Fla. Jan. 3, 2019), *report and recommendation adopted*, No. 5:18-CV-355, 2019 WL 293277 (M.D. Fla. Jan. 23, 2019).  Despite referencing the Madison Memory Study in the Amended Complaint (ECF No. 15 ¶ 9), Plaintiffs failed to take any discovery to refute these findings.  Thus, because the Madison Memory Study demonstrates that the challenged marketing statements are truthful, Plaintiffs cannot establish the first element of a FDUTPA claim and summary judgment in favor of Quincy is warranted on this basis alone.

Plaintiffs also allege that the challenged marketing constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because Prevagen is "misbranded" under the Florida Food Safety Act, Section 500.04(1) and (2). (ECF No. 15 ¶¶ 61-62, 72-73).  Under the Florida Food Safety Act, however, a food is deemed misbranded only if "its labeling is false or misleading in any particular." Fla. Stat. Section 500.11(1)(a).  Since Plaintiffs have failed to proffer any evidence refuting these findings in the Madison Memory Study, the challenged marketing cannot be "misbranded" under the Florida Food Safety Act and therefore cannot form the basis of a *per se* violation of FDUTPA.

5

### 2. The Challenged Marketing Statements Did Not Cause Plaintiffs Any Loss

Under FDUTPA, Plaintiffs must also establish that the allegedly deceptive or unfair practice caused their alleged losses. Fla. Stat. § 501.211(2) ("In any action brought by a person who has suffered a loss *as a result of a violation of this part*, such person may recover actual damages") (emphasis added); *see also Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (granting defendant summary judgment on FDUTPA claim where plaintiff failed to present evidence that the allegedly misleading statement caused the claimed damages).

Causation "is a necessary element of the FDUTPA claim, and 'causation must be direct, rather than remote or speculative.'" *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015 (quoting *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012)). To establish causation, a plaintiff need not prove reliance on the allegedly false statement, but must "prove that an objectively reasonable person would have been deceived" by the allegedly deceptive conduct. *Id.* (quoting *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011)). An unfair trade practice claim also fails unless the alleged injury is one that "consumers themselves could not reasonably have avoided." *Casey v. Florida Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229, 2015 WL 10818746, at *3 (M.D. Fla. Sept. 29, 2015). Summary judgment on a FDUTPA claim is therefore warranted "where the record evidence fails to support the element of causation." *Flexiteek Americas, Inc. v. Plasteak, Inc.*, No. 12-60215-CIV, 2013 WL 6233175, at *5 (S.D. Fla. Dec. 2, 2013), *aff'd*, 603 F. App'x 994 (Fed. Cir. 2015) (citations omitted).

Here, both Plaintiffs acted in an objectively *unreasonable* manner. Prevagen is objectively marketed as a dietary supplement that helps with mild memory problems associated with aging. (ECF No. 39 ¶ 4; *see also* ECF No. 15 ¶ 22). Every package and label of Prevagen sold during the proposed class period contained the explicit statement that the product "is not intended to diagnose, treat, cure or prevent any disease." (ECF No. 15 ¶¶ 23, 25; ECF No. 39 ¶¶ 28, 32, ECF No. 39-4, ECF No. 39-5; Collins Dep.[1] Ex. 9 at 2 ). Despite this clear statement, neither Plaintiff purchased Prevagen for its intended use.

---

[1] "Collins Dep." refers to the Deposition of Plaintiff Juan Collins, dated October 28, 2019, attached as Exhibit A to the Declaration of Glenn T. Graham.

Plaintiff Collins (an attorney) did not purchase Prevagen for himself and he never ingested the product. (Collins Dep. 8:3-9, 78:25-79:2; Graham Decl., Exhibit B (Collins' responses to Quincy's Requests For Admission Resp. No. 2)). He did not purchase Prevagen to assist with mild memory problems associated with aging; rather, he purchased one bottle of Prevagen for his sister who had already been diagnosed with Alzheimer's disease about four or five years earlier. (Collins Dep. 9:6, 26:15-18, 81:9-24). Plaintiff Collins believes (but is not certain) that his sister took Prevagen for about two weeks because he did not personally give her the pills. (Collins Dep. 17:22-23, 22:18-23:4). Moreover, prior to purchasing Prevagen, Plaintiff Collins was aware that Alzheimer's is a disease and read the statement on the Prevagen label that Prevagen "is not intended to diagnose, treat, cure or prevent any disease." (Graham Decl., Exhibit B (Collins' responses to Quincy's Requests for Admission Resp. Nos. 6, 7, 10); Collins Dep. 24:16-25:3, 63:5-10). He further "knew there was no cure" for Alzheimer's disease, but purchased Prevagen anyway. (Collins Dep. 25:12-14, 63:11-19). Plaintiff Collins did not speak to any medical doctor or anyone else about giving Prevagen to his sister to address her symptoms caused by Alzheimer's disease, and testified that he purchased it based on a "hope" that it would help with his sister's disease. (Collins Dep. 26:9-14, 93:18-19, 94:1-8).

The circumstances surrounding Plaintiff Fowler's purchase of Prevagen are similarly unreasonable. Plaintiff Fowler did not read the product's label or packaging before his first purchase of Prevagen. (Fowler Dep.[2] 9:4-10, 95:13-19). This is critical because Plaintiff Fowler himself was diagnosed with memory loss (a neurological disease) after multiple visits to and testing conducted by a neurological medical practice called "Brain Matters Research." (Fowler Dep. 19:2-20:3, 20:10-15, 21:4-22:25). Plaintiff Fowler had been going to Brain Matters Research since in or around February 2019, visited multiple times, and agreed to become a study subject for the practice. (Fowler Dep. 23:19-22, 28:25-29:4, 29:18-25). He does not know whether he told the doctor at Brain Matters Research that he was taking Prevagen. (Fowler Dep. 24:5-7). He also failed to do anything to monitor improvements or other changes to his memory during or after the time he took Prevagen. (Fowler Dep. 50:1-11, 83:21-84:5). If Plaintiff Fowler had read the label before purchasing Prevagen, as any

---

[2] "Fowler Dep." refers to the Deposition of Plaintiff Juan Collins, dated October 23, 2019, attached as Exhibit C to the Declaration of Glenn T. Graham.

7

reasonable consumer would do before purchasing a dietary supplement, he would have understood that the product "is not intended to diagnose, treat, cure or prevent any disease," and that he is not part of the population for which Prevagen is intended.

Thus, neither Plaintiff acted as a "reasonable consumer" within the lens of FDUTPA. Plaintiff Collins read and ignored the label statement that Prevagen was not intended to treat any disease, but purchased it anyway because he "hope[d]" that it would treat his sister's Alzheimer's disease. And Plaintiff Fowler did not even read the Prevagen label prior to his purchase. Had he done so, he would have realized that he was purchasing a dietary supplement intended for healthy, older individuals with "mild memory loss associated with aging"—not the neurological disease he hoped to treat.

*Solution Z v. Alma Lasers, Inc.*, No. 11-cv-21396-CIV, 2013 WL 12246356 (S.D. Fla. Jan. 22, 2013), is instructive. In *Solution Z*, the defendant argued that the plaintiff could not maintain a FDUTPA cause of action because "Plaintiff's reliance on any oral or written representations . . . contradict the express terms of the contract." *Id.* at *6. The court agreed, finding that "[b]ecause the oral and written misrepresentations were 'directly and fully rebutted by express evidence in a governing written contract,' the Court finds that Solution Z's reliance on these statements was unreasonable as a matter of law." *Id.* at *11.

*Casey* is also instructive. There, the plaintiffs brought FDUTPA claims based on the allegation that a law school's employment rate and job placement rates were falsely advertised on its website and in news reporting services. 2015 WL 10818746, at *2-3. The court dismissed plaintiffs' claims because they did not satisfy the reasonable consumer standard. *Id.* at *2-3. Despite plaintiffs' allegations concerning the allegedly false placement rates, the court noted that plaintiffs "acknowledge that [d]efendant had some of the lowest admissions standards of accredited or provisionally accredited laws schools in the nation." *Id.* at *3. The court further noted that, "[d]espite its low ranking, [p]laintiffs allege that [d]efendant's [e]mployment numbers rivaled 'those of much higher ranked, top-tier schools.'" *Id.* The court held that "[t]his would have been a red flag to a reasonable consumer in [p]laintiffs' position, and should have caused the reasonable consumer to, at a minimum, seek out more nuanced information to allow for a meaningful comparison of law schools, including the types of employment graduates obtained." *Id.* "Such an inquiry was reasonably expected and could have prevented [p]laintiffs' alleged injuries." *Id.* Accordingly, the court held that plaintiffs

8

"failed to state a plausible claim that the [d]efendant's publishing of the employment data in the manner alleged would result in probable deception to a reasonable consumer, or that the substantial injury alleged could not have been reasonably avoided." *Id.*

Plaintiffs here acted unreasonably when they purchased Prevagen. They should not be permitted to pursue false advertising claims (much less on behalf of a class of consumers) when they admit that they either willfully (Plaintiff Collins) or recklessly (Plaintiff Fowler) ignored the statement on the Prevagen packaging. The statement contained on every bottle and package of Prevagen is intended to advise consumers like Plaintiffs that Prevagen is a dietary supplement and that it is not intended to treat or cure the neurological diseases for which both Plaintiffs Collins and Fowler purchased the product. Thus, like in *Solution Z* and *Casey*, Plaintiffs could have avoided their perceived injuries simply by reading (or abiding by) the Prevagen label. Their failure to do so defeats FDUTPA's causation requirement and warrants summary judgment in Quincy's favor. *See, e.g., Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. App'x 565, 567-68 (11th Cir. 2009) (affirming summary judgment on FDUTPA claims because a consumer acting reasonably would not have been deceived by alleged misrepresentations when such representations were contradicted by the franchise agreement reviewed by plaintiffs).

### 3. Plaintiffs Have Failed to Prove Their Alleged Damages

Quincy is independently entitled to summary judgment because Plaintiffs have failed to prove their damages. FDUTPA requires that Plaintiffs suffer "actual damages" incurred as a consequence of a violation of the statute. It does not allow for the recovery of "nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008). Moreover, damages "under FDUTPA must directly flow from the alleged deceptive act or unfair practice." *Hennegan Co.*, 855 F. Supp. 2d at 1361. Plaintiffs cannot prove any "actual damages."

Plaintiff Collins claims to have purchased Prevagen at a Walgreens during the summer of 2017, but has failed to produce a receipt or other proof of his alleged purchase, even though the purchase price of the product is the only "damage" Plaintiff Collins seeks. (Collins Dep. 65:19-66:9, 66:19-20, 95:15-20). Similarly, Plaintiff Fowler claims to have purchased Prevagen at a Walgreens in September 2018, but does not have a receipt or other proof of that alleged purchase. (Fowler Dep. 55:10-13). Plaintiff Fowler also claims that he subsequently

9

bought four bottles of Prevagen Extra Strength 60 count from eBay (for which he *has* provided receipts) because "it was cheaper than buying at Walgreens." (Fowler Dep. 57:20-58:14, 58:24-59:5, 86:9-88:9, Fowler Dep. Exhibit 6). Plaintiff Fowler admits that "to some extent," he was concerned about how the eBay seller came into possession of Prevagen. (Fowler Dep. 60:10-25). Plaintiff Fowler's eBay receipts do not list the seller (Fowler Dep. 86:25-87:4).

Plaintiff Fowler was right to be concerned about how the eBay seller came into possession of Prevagen. In fact, there are a number of unauthorized vendors purporting to sell Prevagen online, including on www.eBay.com. (ECF No. 37 ¶ 20). Products sold by unauthorized sellers, such as those purchased by Plaintiff Fowler, may be damaged, defective, or stolen goods. (ECF No. 37 ¶ 21). Moreover, Quincy is not able to certify that the products purchased from an unauthorized seller are, in fact, Prevagen (ECF No. 37 ¶ 25), and such purchases are not recoverable as part of this action for the reasons set forth in the Report and Recommendation. (ECF No. 119 at 53). Thus, the only receipts produced by Plaintiff Fowler for his deeply discounted eBay purchases do *not* establish evidence of damages for his single actionable alleged purchase of Prevagen from Walgreens.

Thus, neither Plaintiff has any proof (aside from their own say so) that they actually purchased Prevagen or how much they paid for it. Further, to the extent Plaintiffs contend they can use the MSRP to satisfy their damages, such a damages model would be too speculative given that the retail pricing of Prevagen varies at nearly every retail location and Quincy does not know what the pricing is at any store at any time. (Underwood Tr.[3] 40:14-23).

Thus, Plaintiffs cannot satisfy the third element of their FDUTPA claim and summary judgment should be granted in Quincy's favor. *See Walker v. Super 8 Worldwide, Inc.*, No. 6:08-cv-552, 2012 WL 13102078, at * (M.D. Fla. June 6, 21, 2012) (granting defendant summary judgment on FDUTPA claim because plaintiff failed to produce evidence concerning the value of the accommodations he received and "cannot establish actual damages for FDUTPA").

---

[3] "Underwood Tr." refers to the 30(b)(6) deposition of Mark Underwood, dated April 30, 2020, attached as Exhibit D to the declaration of Glenn T. Graham.

### C. Plaintiffs' Claims Are Based On a Lack of Substantiation Theory Not Available to Private Plaintiffs

Quincy is entitled to summary judgment in its favor on all counts because Plaintiffs have not offered any evidence that Prevagen's advertising is actually false. At most, by criticizing the Madison Memory Study in the Amended Complaint, Plaintiffs are actually pursuing their claims based on the theory that Quincy lacks substantiation for its advertising and marketing claims of Prevagen. (ECF No. 15 ¶¶ 7-9 n.3). However, these "lack of substantiation" claims are only available to government enforcement agencies, such as the Federal Trade Commission. They cannot be pursued by private plaintiffs, who are required to establish that Quincy's advertising is false. Plaintiffs have not done so – and cannot do so – in this action.

Courts around the country have held that "prior substantiation claims—*i.e.*, claims in which a plaintiff alleges that a defendant cannot substantiate the advertising effects it made about a product—are not cognizable under" consumer protection statutes like FDUTPA. *Hoffman v. Nat. Factors Nutritional Prods. Inc.*, No. 12-7244, 2014 WL 2916452, at *9 (D.N.J. June 26, 2014) (citing *Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 128 (3d Cir. 2010)); *see also Scheuerman v. Nestle Healthcare Nutrition, Inc.*, Nos. 10-3684 (FSH)(PS), 10-5628 (FSH)(PS), 2012 WL 2916827, at *6 (D.N.J. July 17, 2012) ("the case law is clear . . . that prior substantiation claims are not cognizable under" New Jersey and California's consumer protection statutes) (collecting cases); *Franulovic*, 390 Fed. App'x at 128 ("a New Jersey Consumer Fraud Act claim cannot be premised on a prior substantiation theory of liability").

Because Plaintiffs have no right to pursue a "lack of substantiation" theory of liability and because the Madison Memory Study actually substantiates the challenged marketing statements, summary judgment should be awarded in Quincy's favor on all counts.

### D. Plaintiffs Cannot Set Up A "Battle of Experts" To Survive Summary Judgment

Notwithstanding that Plaintiffs' claims should be dismissed because they are based on a "lack of substantiation" theory available only to government actors, Quincy's scientific evidence also precludes Plaintiffs' FDUTPA and unjust enrichment claims. It is undisputed that Quincy possesses and produced to Plaintiffs sufficient competent and reliable scientific evidence to support any and all of Prevagen's advertising statements. In addition to the Madison Memory Study, which fully substantiates Prevagen's advertising statements, Quincy

11

has produced human clinical, canine, and preclinical rodent studies that demonstrated efficacy and improvement in cognitive functions and other benefits relating to brain function and mild memory loss associated with aging. (Graham Decl., Exhibit E (Quincy's Response to Plaintiffs' Interrogatory No. 17)).

While Plaintiffs may disagree with the proffered scientific evidence regarding Prevagen's efficacy, if Plaintiffs' claims proceed to trial, the result will ultimately be a battle of experts.[4] Complex matters of science like the ones at issue here, should not be decided by judges or juries; they should be decided by experts in the relevant field.

In *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015), the plaintiffs asserted claims under FDUTPA, and the consumer protection laws of six other states, based on allegations that GNC's advertisements of dietary supplements were false and "incapable of providing the advertised joint health benefits." 789 F.3d at 510. The district court dismissed the plaintiffs' complaint notwithstanding that in "twelve studies released between 2004 and 2013, researchers concluded that glucosomine and chondroitin, taken alone or in combination, perform no better than a placebo in treating the symptoms of osteoarthritis of the knee, hip, or lower back." *In re GNC Corp.*, MDL No. 14-2491-JFM, 2014 WL 2812239, *3 (D. Md. June 20, 2014). The plaintiffs also alleged that "'experts in the field' consider these studies to be an effective proxy for measuring the ability of glucosomine and chondroitin to improve the health and performance of joints in non-arthritic consumers" and that the "'vast weight' of the evidence" supported that GNC's dietary supplements "have little to no effect on the symptoms and discomfort associated with deteriorating joint." *Id.*

The court reasoned that "the mere existence of a 'battle of the experts'" was "not sufficient to establish that defendants' advertisements violate the state consumer protection statutes [including FDUTPA]" because "[d]isagreements between experts . . . are to be expected." *Id.* at 4. The Court further held that "the fact that one set of experts may disagree with the opinions expressed by other qualified experts does not *ipso facto* establish any violation of the applicable consumer protection laws." *Id.* Thus, "[i]f there are experts who

---

[4] Plaintiffs' expert disclosures are currently due June 5, 2020. (ECF No. 115). Quincy's expert disclosures are currently due June 19, 2020. *Id.* The parties filed a joint motion to extend the current scheduling order deadlines. (ECF No. 135). That motion is pending before the Court.

12

support what defendants say in their advertisements," as there are here, the advertisements are not false or misleading in violation of FDUTPA. *Id.*

The Fourth Circuit affirmed, holding that "[i]n order to state a plausible claim for relief under all of the state consumer protection statutes specified in the [complaint], Plaintiffs must plead facts from which we might infer that the representations made on the products' packaging were false, deceptive, or misleading." *In re GNC Corp.*, 789 F.3d at 513. The Fourth Circuit held that a plaintiff cannot pursue a dispute that should be resolved through a "battle of the experts:"

> [W]e need not resolve any "battle of the experts" in order to decide whether the [complaint] states a claim for false advertising. When litigants concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is "literally false." Either the experts supporting the Companies are unreasonable and unqualified (in which case, there is no real battle of the experts to begin with) or they reflect a reasonable difference of scientific opinion (in which case the challenged representations cannot be said to be literally false). By characterizing the dispute as a battle of the experts, Plaintiffs highlight the [complaint]'s concession that a reasonable difference of scientific opinion exists as to whether glucosamine and chondroitin can provide the advertised joint health benefits.

*Id.* at 515.

The Fourth Circuit's holding bears directly on Plaintiffs' claims in this action and should be followed in its entirety:

> In sum, we hold that in order to state a false advertising claim on a theory that representations have been proven to be false, plaintiffs must allege that all reasonable experts in the field agree that the representations are false. If plaintiffs cannot do so because the scientific evidence is equivocal, they have failed to plead that the representations based on this disputed scientific evidence are false.

*Id.* at 516.

Summary judgment is appropriate here for the same reasons. The Madison Memory Study studied normal, healthy, older individuals who took either apoaequorin or a placebo. The results of that gold standard study showed improvements in memory and cognition among the intended treatment population. (ECF No. 25-2 at 5-9). The participants with mild

memory loss or normal aging in the apoaequorin arm of the study experienced statistically significant improvements on a number of tests for memory and cognition compared to those participants with mild memory loss or normal aging who received a placebo. *Id.*

Scientific debates about efficacy might never end, but such disagreements should not be decided in courtrooms. So long as there are legitimate scientific experts that believe in Quincy's claims, and there are, those claims cannot be "false." Far from establishing falsity, at most, Plaintiffs will be able to demonstrate that reasonable experts may disagree about the benefits of apoaequorin. As the Fourth Circuit held in *In re GNC*, this is legally insufficient to sustain Plaintiffs' FDUTPA and unjust enrichment claims.

### E. Plaintiffs Cannot Prove their Claim for Unjust Enrichment (Count III)

"The essential elements of an action for unjust enrichment are a benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1322 (S.D. Fla. 2009), *aff'd*, 395 F. App'x 583 (11th Cir. 2010) (quoting *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710, 712 (Fla. 2d DCA 1988)). Additionally, there must be "actual damages incurred before a plaintiff can recover for a claim of unjust enrichment." *Id.* (citations omitted). Plaintiffs' unjust enrichment claims are based on the same allegations as their FDUPTA claims—*i.e.,* that Quincy made false claims regarding Prevagen's efficacy on the products' labels among other places—and fail for the same reasons the FDUTPA claims fail. (ECF No. 15 ¶¶ 14-15, 23-26, 60-62, 71-73, 78-79.)

As set forth above, Plaintiffs' allegations are squarely contradicted by the Madison Memory Study itself. Absent proof of falsity or deception, any retention of benefits by Quincy would not be inequitable. Further, because Plaintiffs are unable to prove actual damages, their unjust enrichment claim must also fail. Plaintiffs have not shown that they were overcharged by Quincy, such that it would be inequitable for Quincy to retain the benefit. In fact, they have not shown that they have provided any monies to Quincy. Accordingly, Quincy is entitled to summary judgment on Plaintiffs' unjust enrichment claim. *See Moore v. GNC, Holdings, Inc.*, No. 12-61703-CIV, 2014 WL 12634919, at *5 (S.D. Fla. Mar. 18, 2014) (granting summary judgment on FDUTPA and unjust enrichment claim where plaintiffs failed to submit evidence demonstrating all elements of the claim); *see also Koski v. Carrier*

*Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) (noting that an unjust enrichment claim should be dismissed "because it relied on the same wrongdoing addressed by Plaintiffs' FDUTPA claim").

## CONCLUSION

For the foregoing reasons, Quincy respectfully requests that the Court grant its motion and enter summary judgment in Quincy's favor with respect to each of Plaintiffs' claims.

Dated: May 29, 2020					Respectfully Submitted,

/s/  Matthew Luzadder
Matthew Luzadder (FBN:  0011286)
mluzadder@kelleydrye.com
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
26th Floor
Chicago, IL 60606
Telephone: (312) 857-7070
Facsimile: (312) 857-7095

- and –

KELLEY DRYE & WARREN LLP
Geoffrey W. Castello (*pro hac vice*)
NJ Attorney ID No. 021091995
gcastello@kelleydrye.com
Glenn T. Graham (*pro hac vice*)
NJ Attorney ID No. 013822009
ggraham@kelleydrye.com
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

Jaclyn M. Metzinger (*pro hac vice*)
NY Bar No. 4695920
jmetzinger@kelleydrye.com
Alina Mejer Schechner (FBN: 112638)
aschechner@kelleydrye.com
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

GENOVESE JOBLOVE & BATTISTA
Aaron S. Blynn (FBN: 73464)
ablynn@gjb-law.com
100 S.E. Second Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 913-6685

*ATTORNEYS FOR DEFENDANT QUINCY BIOSCIENCE, LLC*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2020, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system. I certify that all current participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system upon:

Adam Moskowitz, Esq.
(Adam@moskowitz-law.com)
Howard Bushman, Esq.
(Howard@moskowitz-law.com)
Joseph M. Kaye, Esq.
(joseph@moskowitz-law.com)
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Office: (305) 740-1423

John Scarola, Esq.
(_scarolateam@searcylaw.com)
Searcy Denney Scarola Barnhart & Shipley
PO Drawer 3626
West Palm Beach, FL 33402-3626
Office: (561) 383-9451

Attorneys for Plaintiff

/s/ *Matthew Luzadder*
Matthew Luzadder (FBN: 0011286)