**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 19-22864-Civ-COOKE/GOODMAN**

JUAN COLLINS and JOHN FOWLER,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.

QUINCY BIOSCIENCE, LLC,
a Wisconsin limited liability company,

      Defendant.

_____/

**PLAINTIFFS' AMENDED[1] UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE**
**SETTLEMENT CLASS**

---

[1] Amended in accord with this Court's Paperless Order of June 24, 2020. ECF No. 143.

Plaintiffs Juan Collins and John Fowler ("Plaintiffs"), on behalf of themselves and on behalf of all those similarly situated, hereby move unopposed for entry of an order granting preliminary approval of the nationwide class action settlement as set forth in the parties' Settlement Agreement and Release, certifying a nationwide class for settlement purposes, and providing for issuance of notice to Class Members. The Settlement Agreement includes plaintiffs' counsel for six other pending Prevagen proposed class action cases being litigated in California, New York, Texas, and Missouri that have all joined together and support this proposed Global Settlement Agreement.

## INTRODUCTION

Plaintiffs and Defendant Quincy Bioscience, LLC ("Quincy") (collectively the "Parties") have negotiated a global nationwide settlement that provides significant and substantial monetary and injunctive relief to purchasers of Prevagen®,[2] that Plaintiffs allege has been falsely advertised and marketed by Quincy throughout the United States. Quincy certainly denies all such allegations, but has agreed to globally resolve this matter, instead of continuing to litigate all of these pending putative class action matters across the country. Under the careful supervision of the Honorable (Ret.) John W. Thornton, all of the parties conducted over a month long, extensive, arm's length mediation, which has resulted in the executed Settlement Agreement and Release (attached as Exhibit 1) ("Settlement Agreement") and agreed upon the form of proposed Notice to Class Members.[3]

Under the Settlement Agreement, Quincy has agreed, among other things, to offer substantial refunds to Settlement Class Members for Prevagen in varying amounts that

---

[2] "Prevagen" means Prevagen Regular Strength 30 Count, Prevagen Regular Strength Chewables, Prevagen Regular Strength 60 Count, Prevagen Extra Strength 30 Count, Prevagen Extra Strength Chewables, Prevagen Extra Strength 60 Count, and Prevagen Professional Strength sold in the United States.

[3] Unless otherwise noted, all capitalized terms used herein have the same definition that that provided in the Settlement Agreement.

are based upon whether those claims are supported by proof of purchase, and to important, stipulated injunctive relief (as set forth below). Notice of this Settlement Agreement will be disseminated to Class Members via, among other things, (i) internet notice, (ii) establishment of a settlement website, and (iii) direct mail (along with a Claim Form) or email to currently available addresses that have been provided to Quincy through Quincy's websites or via email by Prevagen consumers.

Undersigned Counsel were very well positioned to evaluate and negotiate this settlement because they have been actively litigating against Quincy in this and other fora for many years.[4] Specifically, Plaintiffs' counsel investigated their claims and allegations through extensive discovery, including the review of tens of thousands of pages of documents and the depositions of key Quincy personnel as well as expert discovery. Despite that work, Plaintiffs and the Class faced significant hurdles in litigating their claims to successful adversarial resolution. Given the immediate and substantial benefits the Settlement Agreement will provide to the Class, there can be no question that the terms of the proposed Settlement Agreement are at least "fair, reasonable, and adequate" and should receive the Court's preliminary approval, so that the Class can be informed and be heard as to their opinions of the Settlement Agreement at the Final Fairness Hearing.

---

[4] All of the current pending Prevagen class action cases around the country are referred herein as the "Prevagen Actions." They include *Collins, et al. v. Quincy Bioscience LLC*, No. 19-22864-Civ-COOKE/GOODMAN (S.D. Fla.); *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, (N.D. Cal.) ("*Racies*"); *Vanderwerff v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-07582-RA (S.D.N.Y.) ("*Vanderwerff*"); *Karathanos v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-08023-RA (S.D.N.Y.) ("*Karathanos*"); *Spath v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-03521-RA (S.D.N.Y.) ("*Spath*"); *Engert et al. v. Quincy Bioscience, LLC*, No. 1:19-cv-183-LY (W.D. Tex.) ("*Engert*"); and *Miloro v. Quincy Bioscience, LLC*, No. 16PH-cv01341 (Mo. Cir. Ct.) ("*Miloro*").

2

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Litigation and Mediation

Plaintiff Collins commenced this Action by filing a Class Action Complaint and Demand for Jury Trial on July 11, 2019. ECF No. 1. Plaintiff Collins and Plaintiff Fowler filed an Amended Class Action Complaint and Demand for Jury Trial on September 11, 2019. ECF No. 15. After reviewing the information and discovery produced in the *Racies* action (see below), as well as consulting with their own experts, Plaintiffs filed a comprehensive motion for class certification on September 17, 2019. ECF No. 21. The Court referred that motion to The Honorable Judge Goodman for a Report and Recommendation. ECF No. 23. After Plaintiffs filed their class certification motion, Plaintiffs and Quincy filed 20 additional submissions through the course of discovery and class proceedings to fully brief the motion. ECF No. 119 ("R&R") at 5–6 (citing submissions).

On September 25, 2019, Quincy moved to dismiss this Action. ECF Nos. 25, 27–29, 34, and 89. Quincy's motion to dismiss is currently pending. Plaintiffs and Quincy conducted extensive discovery, including the depositions of both Plaintiffs Collins and Fowler, the corporate representative deposition of Quincy, depositions of Quincy's Chief Financial Officer and Market Development Director, and the exchange of substantial document requests, in response to which Quincy produced approximately 40,077 documents consisting of over 160,000 pages, requests for admissions and interrogatories. Plaintiffs have also issued third party subpoenas to Florida retailers regarding their sales of Prevagen within Florida. ECF Nos. 54-6 (Walmart), 56 (Amazon and The Vitamin Shoppe), 72 (The Vitamin Shoppe).

Judge Goodman held an over 5-hour hearing on Plaintiffs' motion for certification. ECF No. 84. After considering additional post-hearing briefing, Judge Goodman entered a Report and Recommendation certifying a Florida class of Prevagen purchasers. *See*

R&R. Quincy filed objections to the R&R, which Plaintiffs opposed, and which are currently pending before Judge Cooke for decision. ECF Nos. 129–130. On May 29, 2020, Quincy filed a motion for summary judgment. ECF Nos. 138–141.

In addition to this matter, as of the date of this Settlement Agreement, Prevagen Actions were previously filed and/or pending throughout the country. *Racies*, filed in the Northern District of California in February 2015, was the first-filed class action brought in the country against Quincy alleging deceptive marketing and sales of Prevagen. In December 2017, the Court granted certification of a California class of Prevagen purchasers. *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2017 WL 6418910, at *1 (N.D. Cal. Dec. 15, 2017). After extensive litigation of pretrial issues, including summary judgment motions and *Daubert* motions, *Racies* was tried before a jury in January 2020; however, the district court declared a mistrial after a jury deadlock, and the California class was later de-certified. *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2020 WL 2113852, at *1 (N.D. Cal. May 4, 2020).

In 2016, the *Miloro* matter was filed in Missouri state court on behalf of Missouri purchasers of Prevagen Products. By agreement of the parties to that action, *Miloro* was stayed for much of the past four years but Defendant produced all of the documents that were produced in another action filed by the Federal Trade Commission and the *Racies* matter. The parties in the *Miloro*, *Vanderwerff*, *Karathanos* and *Spath* matters engaged in extensive settlement efforts including several mediation sessions before Hon. Wayne Andersen (Ret.) and multiple in-person negotiations took place between Quincy and Miloro's and Spath's Counsel. Ultimately, an agreement-in-principle was reached but was conditioned on FTC action that did not take place. At that time, in March 2020, the stay was lifted in the *Miloro* matter and Quincy filed a motion to dismiss which is still pending.

In February 2017, the *Vanderwerff* and *Karathanos* actions were filed on behalf of New Jersey and New York consumers, respectively. Although those cases were originally filed in the District of New Jersey and the Eastern District of New York, they were eventually transferred to the Southern District of New York. Meanwhile, motions to dismiss have been fully briefed in *Vanderwerff* and *Karathanos* and are still pending. In 2018, the *Spath* action was filed in the District of New Jersey on behalf of New Jersey purchasers of Prevagen Products. The *Spath* case was also subsequently transferred to the Southern District of New York. On June 3, 2020, Judge Ronnie Abrams in the Southern District of New York stayed the *Vanderwerff*, *Karathanos*, and *Spath* actions pending approval of this Settlement Agreement.

In February 2019, the *Engert* action was filed in the Western District of Texas seeking to represent Texas purchasers of Prevagen Products (and alternatively a nationwide class of purchasers of Prevagen Products). The *Engert* court denied Quincy's Motion to Dismiss on October 8, 2019.

Defendant, twice, unsuccessfully moved the Judicial Panel on Multidistrict Litigation to coordinate the then-pending Prevagen Actions to a single court.

Counsel for the Parties, along with counsel from all Prevagen Actions, participated in multiple mediation sessions with the Honorable John W. Thornton (Ret.) on April 22, May 4, May 21, and May 26, 2020. Before, during, and after the mediation, the Parties engaged in a series of discussions, with and without Judge Thornton, regarding a settlement of the Prevagen Actions, including substantial arm's-length negotiations. The result was this Settlement Agreement, which includes the settlement of the Action in its entirety as well as the settlement of the remaining Prevagen Actions.

2. **The Settlement Agreement and its Terms**

  A. *The Proposed Class*

The Settlement Agreement provides relief to all individuals who purchased one or more Prevagen Products, from a Settling Defendant (as defined in Exhibit 1) or from a

reseller authorized by the Settling Defendants to sell Prevagen Products, for personal consumption and not resale, within the United States, from January 1, 2007 through the date of Preliminary Approval. It is estimated that there are approximately 3,000,000 (three million) potential class members.

### B. *Monetary and Other Relief*

The Settlement Agreement affords these Class Members monetary relief, and provides other injunctive relief to assist the Class Members. Specifically, the Settlement Agreement provides that:

A.      The Settling Defendants shall offer partial refunds to Settlement Class Members for purchases of Prevagen Product(s) based upon a two-tier monetary relief structure to be distributed subject to the following provisions of the Claims Process:

        1.      The Settling Defendants agree to pay to all Settlement Class Members with Proof of Purchase who submit a valid "Claim Form," a cash refund of 30% of the Quincy MSRP for the Prevagen Products those claimants purchased within the Class Period, **up to $70 per individual claimant.** These claims will be referred to herein as "Proof of Purchase Claims," and each such claimant a "Proof of Purchase Claimant";

        2.      The Settling Defendants agree to pay to all Settlement Class Members without Proof of Purchase who submit a valid "Claim Form" a cash refund of 30% of the Quincy MSRP for the Prevagen Products those claimants purchased within the Class Period, **up to $12 per claimant.** These claims will be referred to herein as "No Proof Claims," and each such claimant a "No Proof Claimant";

B.      The Parties also stipulated to the following injunctive relief:

        The Settling Defendants agree that they will not make, or assist others in making, expressly or by implication, including through the use of a product name, endorsement, testimonial, depiction, or illustration, any representation that such Covered Product with respect to humans:

            A. improves memory;
            B. improves memory within 90 days or any other period of time; or

C. reduces memory problems associated with aging;

unless the representation is non-misleading. A representation is non-misleading if, at the time of making such representation, the Settling Defendants possess and rely upon competent and reliable scientific evidence substantiating that the representation is true, or if the representation is clearly and conspicuously qualified by either:

a. A disclaimer substantially similar to the following: "Based on a clinical study of subgroups of individuals who were cognitively normal or mildly impaired. This product is not intended to diagnose, treat, cure, or prevent any disease."; or

b. A disclaimer substantially similar to the following: "Based on results from two subgroups of individuals who participated in a randomized double blind placebo controlled clinical study. Participants in the two subgroups were cognitively normal or mildly impaired. This product is not intended to diagnose, treat, cure, or prevent any disease."

### C.  *Release of Claims against Defendant*

In exchange for the settlement relief, members of the Settlement Class will release the Settling Defendants from all claims as outlined in the Settlement Agreement.

### D.  *Class Notice*

Class Members will receive notice of the Settlement Agreement in the manner recommended by the Class Action Settlement Administrator and in the form of the notice attached to the Settlement Agreement as Exhibit D, assuming the form is approved by the Court. The manner of notice will include, but not be limited to, (i) internet notice, (ii) establishment of a settlement website (the "Settlement Website"), and (iii) direct mail (along with a Claim form) or email to currently available addresses that have been provided to Quincy through Quincy websites or via email by potential Prevagen consumers. The Settlement Website will inform the Class Members of the Settlement Agreement and allowing them to file a claim electronically. Moreover, a long form notice, in substantially the same form attached to the Settlement Agreement as Exhibit B, shall be published on the Settlement Website.

Class Members may opt out of the Settlement Agreement (for purposes of damages claims only) by sending a request for exclusion to the Claims Administrator, which will communicate requests for exclusion to Class Counsel, who will in turn report to the Court. Defendant shall bear all of the costs and expenses in administrating the Settlement Agreement, including the hiring of a Claims Administrator, providing class notice, publication of the notice, and providing the claim forms.

### E. *Claims Process*

To obtain relief from Defendant, Class Members will be required to submit a simple claim form (in the form, if approved, attached to the Settlement Agreement as Exhibit A) electronically via the Settlement Website or by mail. The claims will be reviewed by the Claims Administrator, who will work with Defendant to confirm whether those who timely file a claim are members of the Class. Defendant shall fund the total amount to be paid to eligible Settlement Class Members within thirty (30) days after the Class Action Settlement Administrator determines the total amount to be paid to eligible claimants. The Class Action Settlement Administrator shall then pay all eligible claimants within thirty (30) days after Quincy deposits the funds to be paid.

### F. *Class Counsel Fees and Expenses and Named Plaintiffs Case Contribution Award*

Defendant has agreed not to object to a motion by Class Counsel for an award of attorneys' fees and expenses in the amount of four million two hundred fourteen thousand dollars ($4,214,000.00) to Class Counsel, a very small percentage of the recovery that is being made available to the National Class. Defendant also will not oppose an application for a case contribution award not to exceed $10,000 each to Class Representatives Juan Collins and John Fowler for taking on the risks of litigation, and for Settlement of their individual claims as a Settlement Class Member in this Action. Defendant shall not oppose an award of $2,000 each to Additional Plaintiffs Philip Racies, Elaine Spath, John Karathanos, James Vanderwerff, Max Engert, Jack Purchase, Ronald

8

Atkinson, and Diana Miloro for their active participation as the putative class representatives in the Prevagen Actions.

## LEGAL ARGUMENT

### I.   THE COURT SHOULD ENTER AN ORDER GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

To conclude the Settlement Agreement, the Federal Rules of Civil Procedure require that there be notice to the Settlement Class, a fairness hearing, and this Court's final approval. Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992).

"Approval of a class-action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citation omitted). In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable. *See id.*

The standard for preliminary approval of a class action settlement is not high — a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting Manual for Complex Litigation ("MCL") § 1.46 at 62, 64–65 (5th ed. 1982)). "Preliminary approval is

appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

Here, the proposed Settlement Agreement is the product of arm's-length negotiations before an experienced and respected mediator, by counsel with significant experience in complex class action litigation, carries no "obvious deficiencies," and falls well within the range of reason. The Court should therefore grant preliminary approval.

### A. The Settlement Agreement is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, courts consider whether the proposed settlement appears to be "the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion. . . ." *E.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011). Courts presume good faith in the negotiating process. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."); MCL (Third) § 30.42 ("a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel").

The Settlement Agreement is the product of significant give and take by the settling Parties and was negotiated at arm's length. The parties engaged in substantial settlement negotiations for months before their formal mediation sessions before Judge Thornton, and thereafter had regular communications, negotiating first the terms of an initial term sheet and then the Settlement Agreement reflecting the final terms. Judge Thornton has significant experience mediating complex commercial suits to resolution and his involvement alone weighs in favor of preliminary approval. *See, e.g., In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D. N.Y. 2004) (presence of

"respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged[]" belied suggestion of collusion in negotiating process).

The Parties' extensive negotiations were also informed by considerable discovery. The Parties have been actively litigating this matter for nearly a year and the other plaintiffs' counsel for many more years. The Parties produced tens of thousands of documents and deposed corporate and class representatives, as well as other key personnel. The Parties have also engaged in significant motion practice, class certification, a motion to dismiss and a motion for summary judgment.

### B. The Settlement Agreement Provides Considerable Benefits to the Class and Falls Squarely within the Range of Reasonableness.

The terms negotiated by the Parties provide considerable monetary benefits and injunctive relief to the class and fall well within the range of possible approval.

Courts routinely hold that settlements providing the class with a portion of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (approving recovery of $.20 per share where desired recovery was $3.50 a share and stating "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is unfair or inadequate"). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable [when weighing the benefits of the settlement against the risks associated with proceeding in the litigation]." *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D. N.Y. Sept. 16, 2011) (internal quotation marks omitted).

Plaintiffs and the proposed class faced significant hurdles in litigating their claims to trial and ultimate resolution, and the possible appeals of any of the Court rulings. Each Class Member now, however, stands to recover direct monetary and injunctive relief as

a result of the Settlement Agreement. The negotiated monetary recovery and injunctive relief falls well within the range of reasonableness.

### C.  The Settlement Agreement Saves the Class from Considerable Litigation Hurdles.

Any evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotation marks omitted). At bottom, had litigation continued, Plaintiffs and Class Members would have faced the risk of not prevailing on their claims.

The proposed settlement saves Plaintiffs and the proposed Class from facing these substantial obstacles and eliminates the significant risk that they would recover nothing at all after several more years of litigation.

### D.  Counsel Believes the Settlement Agreement is Reasonable and in the Class's Best Interest.

Finally, significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See, e.g.*, *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (the recommendation of experienced counsel is entitled to great weight). Plaintiffs' counsel here have litigated numerous class actions in state and federal courts and fully support the Settlement Agreement. Copies of Class Counsel's Resumes are attached hereto as composite Exhibit 2. Based on this experience, the substantial information learned in the course of the litigation, and decades of experience litigating consumer class action lawsuits, it is Plaintiffs' counsel's informed opinion that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class.

## II.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

The Settlement Class here meets the requirements of numerosity, commonality, typicality and adequacy of representation required by Rule 23(a) of the Federal Rules of Civil Procedure, as well as the requirements of Rule 23(b)(3) and 23(b)(2).

### A. The Settlement Class Meets the Four Requirements of Rule 23(a).

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,489 (S.D. Fla. 2003); *see* Fed. R. Civ. P. 23(a). The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Plaintiff satisfies all four requirements as set forth below.

"It is well established that [a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659 (internal quotations omitted; brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class[,]" save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.* However, "[t]he standards of Rule 23 for class certification are more easily met in the context of settlement than in the context of contested litigation." *Horton v. Metro. Life Ins. Co.,* No. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### i. The Settlement Class is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable. Here, the number of class members is in the thousands and thus well exceeds the minimum threshold. Moreover, through 10 pages of analysis, R&R 45–55, Judge Goodman explains how Plaintiffs satisfied the

'implicit Rule 23 requirement that the proposed class is "adequately defined and is ascertainable.'" R&R at 45 (citing *Reyes*, 2018 WL 3145807, at *9).

### ii. There Are Questions of Law and Fact Common to All Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney*, 213 F.R.D. at 490. Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft*, 2011 WL 3158998, at *4.

Plaintiffs' claims here depend on the common contention that Defendant deceptively labeled, packaged, and marketed Prevagen. All members of the putative class were allegedly injured in the same manner: they were deceived by Defendant's conduct, and they allegedly paid for Prevagen based on that deception.

While only one question of law *or* fact is required to establish commonality, several common questions capable of class-wide resolution—or that would "generate common answers"—arise from Plaintiffs' allegations (which Defendant and the Settling Defendants deny), including:

    a. Whether Defendant's labeling, packaging, and marketing of Prevagen is deceptive;

    b. Whether Defendant engaged in unfair and deceptive trade practices when labeling, packaging, and marketing Prevagen; and

    c. Whether Defendant was unjustly enriched as a result of its deceptive conduct.

These common questions are capable of class-wide resolution. *See Williams*, 2012 WL 566067, at *5 (finding commonality where "all members of the proposed class were injured in the same manner").

### iii. Plaintiffs' Claims are Typical of Those of the Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 686 n.23. "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney*, 213 F.R.D. at 491.

Plaintiffs' claims arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed class. For example, the alleged deception to which each of the class representatives was exposed was no different than the alleged deception to which all of the Class Members allegedly were exposed. Because Plaintiffs' claims are based on alleged injuries caused by conduct allegedly affecting the class as a whole, their claims easily satisfy the typicality requirement. *See, e.g., Williams*, 2012 WL 566067, at *6 (holding that the named plaintiffs were typical of the class where they were charged and paid an inflated price based upon the same alleged deceptive conduct).

Moreover, Plaintiffs' claims are based on the same legal theories of the violation of state consumer protection laws and unjust enrichment. This identity of claims and legal theories between Plaintiffs and the class satisfies the typicality requirement set forth in Rule 23(a)(3).

### iv. Plaintiffs will Fairly and Adequately Represent the Interests of the Class.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

The attorneys who seek to represent the Class in this case are highly qualified to serve as class counsel, have served as lead and co-lead counsel in some of the largest class actions in the country, and are well respected in the communities that they serve. Copies of the firm resumes are attached hereto as composite Exhibit 2. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 Newberg on Class Actions 3d (1992) § 3.24 at 3-133 n. 353.; *see also Griffin v. Carlin*, 755 F. 2d 1516, 1533 (11th Cir. 1985) (inquiry as to adequacy of plaintiffs "involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to those of the rest of the class."). The firms representing Plaintiffs have overseen the litigation strategy, the briefing and argument of motions, and the vigorous pursuit of discovery.

Plaintiffs in this action also do not have interests that are antagonistic to those held by the rest of the class. There has been no evidence that would in any way show that Plaintiffs do not have the same interests as the other class members or are in any way antagonistic to the class. On the contrary, Judge Goodman acknowledged that Plaintiffs made their purchases based on Quincy's representations that Prevagen could improve

memory, and "sued Quincy to expose the falsity of its AQ Memory Representations and to have the class receive refunds of the purchase price of Prevagen" R&R at 64 (citing ECF Nos. 66-13, 47:17–18, 71:12–17, 75:1–7; 66-12, 95:15–18). Judge Goodman therefore correctly found that Plaintiffs are adequate and had no conflict of interest "because Plaintiffs and class members all seek (1) a declaration that the AQ Memory Representations are false, making Prevagen worthless, and (2) full refunds for their purchases," such that "Plaintiffs and '[a]ll of the members of the class are seeking recovery on the same grounds.'" R&R at 63 (citing *Singer*, 185 F.R.D. at 690). Thus, Plaintiffs have satisfied Rule 23(a)(4)'s adequacy requirement.

## B. The Settlement Class Meets the Requirements of Rules 23(b)(3) and 23(b)(2).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b). Plaintiffs here seek certification under Rules 23(b)(3) and 23(b)(2).

### i. Rule 23(b)(3)

Certification is appropriate under Rule 23(b)(3) if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. See Fed. R. Civ. P. 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 694. "Common questions need only predominate; they need not be dispositive of the litigation." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear

justification for handling the dispute on a representative rather than on an individual basis." *Checking Overdraft Litig.*, 2011 WL 3158998, at \*7.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" allegedly deceptively sell and market Prevagen. *Checking Overdraft Litig.,* 2011 WL 3158998, at \*7. As Judge Goodman found, the overriding common questions are (1) whether Quincy's AQ Memory Representations are false and (2) whether those misrepresentations were likely to deceive a reasonable targeted consumer. R&R, 66–67 (citing *Carriuolo*, 823 F.3d at 983–84). Proof of this alleged scheme may be substantiated by common evidence that would remain the same regardless of class size or composition. Common issues would predominate over any individual issue that might arise.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. "Since the damage amounts allegedly owed to each individual [consumer] are relatively low—especially as compared to the costs of prosecuting [these] types of claims . . . —the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Even if the class members were able individually to prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). Accordingly, the Court should certify the proposed class for purposes of achieving this Settlement Agreement.

The predominant issues raised by Plaintiffs and the Class, all susceptible to common proof, include the allegedly deceptive Quincy conduct in labeling, packaging, and marketing Prevagen; and Quincy's monetary gains as a direct result of that deception. Moreover, courts have certified claims under FDUTPA, holding that

individual proof of reliance is not required in class actions under FDUTPA. *See, e.g., Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1004 (Fla. 4th DCA 2004) ("[A] demonstration of reliance by an individual consumer is not necessary in the context of FDUTPA."); *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 693 (S.D. Fla. 2010) (under FDUTPA, a plaintiff "may rely on any evidence concerning that message, including advertisements to which he or she was not personally exposed."); *see also Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 & n.2 (S.D. Fla. 2010) (noting that deceptive marketing may injure consumers even without individual reliance upon misrepresentations); *Roggenbuck Trust v. Dev. Res. Group, LLC*, 505 F. App'x 857, 862 (11th Cir. 2013) ("a plaintiff need not prove [actual] reliance on the allegedly false statement to recover damages under FDUPTA, but rather a plaintiff must simply prove that an objective reasonable person would have been deceived.") (alteration in original); *State, Office of the Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) (holding that consumers could recover for false port charges even where "the consumers paid no attention to the sales tax amount").

### ii. Rule 23(b)(2)

Rule 23(b)(2) provides for class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The term "generally applicable" has been interpreted to mean that the defendant "has acted in a consistent manner towards members of the class so that his

actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to all members." *Leszczynski v. Allianz Ins. Co.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997) (internal citations omitted).

Here, due to its use of uniform labels and packaging and the overarching theme of its marketing message that Prevagen improves memory, Quincy allegedly engaged in a standard and uniform practice directed toward the Class as a whole. *See* R&R, 74. Therefore, certification under Rule 23(b)(2) for settlement purposes is appropriate.

### III. THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL.

The Parties have named the undersigned firms as Class Counsel, Adam Moskowitz, Esq. of The Moskowitz Law Firm and Jack Scarola, Esq. of Searcy, Denney, Scarola, Barnhart & Shipley. Undersigned counsel have significant experience in litigating complex commercial litigation including class actions. *See* § I.D, *supra.* Because undersigned counsel are highly qualified and determined to represent the best interests of the Class, the Court should appoint them Class Counsel moving forward.

<u>CONCLUSION</u>

Plaintiffs respectfully request the Court enter an order certifying the proposed class for purposes of settlement, preliminarily approving the terms of Settlement Agreement, directing that Notice be given to the Class Members in the forms submitted with the Settlement Agreement, and setting a final fairness hearing at least 120 days after entry of the order, in the form attached as Exhibit 3, or in such other form as the Court deems just and proper.

Dated: June 24, 2020                          Respectfully submitted,

By: */s/ Adam Moskowitz*
      Adam Moskowitz, Esq.
      Florida Bar No. 984280
      adam@moskowitz-law.com
      Howard M. Bushman, Esq.
      Florida Bar No. 0364230
      howard@moskowitz-law.com
      Joseph M. Kaye, Esq.
      Florida Bar No. 117520
      joseph@moskowitz-law.com
      **THE MOSKOWITZ LAW FIRM, PLLC**
      2 Alhambra Plaza
      Suite 601
      Coral Gables, FL 33134
      Telephone: (305) 740-1423

      Jack Scarola, Esq.
      Florida Bar No. 169440
      jsx@searcylaw.com
      **SEARCY DENNEY SCAROLA**
      **BARNHART & SHIPLEY PA**
      2139 Palm Beach Lakes Blvd.
      West Palm Beach, FL 33409
      Telephone: (561) 686-6300
      Fax: (561) 383-9451

      *Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 24, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system, which will serve a copy of same on all counsel of record.

By: */s/ Adam M. Moskowitz*
  Adam M. Moskowitz