Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60646-CIV-COHN/SELTZER

CAROL D. SMITH, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

WM. WRIGLEY JR. COMPANY,

    Defendant.

_____/

## ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**THIS CAUSE** is before the Court on the parties' Joint Request for Preliminary

Approval of Class Action Settlement [DE 85] ("Motion"). The Court has carefully

considered the Motion, the record in this case and is otherwise advised in the premises.

### I. BACKGROUND

This case is based on Defendant Wrigley's claim "that its Eclipse® gum brand is

'scientifically proven to help kill the germs that cause bad breath' . . . ." Compl. ¶ 3.

Plaintiff alleges that "[t]his claim is false, deceptive and likely to mislead." Id.

In June 2008, "Wrigley released a reformulated version of Eclipse® gum and

touted it as 'the first and only brand to include Magnolia Bark Extract, a natural

ingredient scientifically proven to kill the germs that cause bad breath.'" Id. ¶ 12. The

Complaint alleges that "Wrigley has engaged in an extensive and comprehensive

nationwide advertising campaign, spending millions of dollars to convey this deceptive

message to consumers throughout the United States." Id. ¶ 5.

Plaintiff asserts that "as a result of this deceptive advertising campaign," Wrigley

(1) "has elevated Eclipse® gum into one of the top sellers in the product category," id. ¶

6; and (2) "has been able to charge a premium price for Eclipse® gum over other

chewing gum products, including other Wrigley chewing gum products." Id. ¶ 7.

Plaintiff brings two causes of action.

> Count I of the Complaint asserts a claim under Florida's Deceptive and
> Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq., ("FDUTPA"),
> alleging, among other things, that "Plaintiff and the Class have been
> aggrieved by Wrigley's unfair and deceptive practices in that they paid for
> Eclipse® gum." [Compl. ¶¶ 49-58]. Count II of the Complaint asserts a
> claim for breach of express warranty in that . . . Wrigley falsely warrants
> that Eclipse® gum is "scientifically proven" to help kill germs that cause
> bad breath. [Compl. ¶¶ 59-63].

DE 25 at 1.

Defendant filed a Motion to Dismiss the Complaint in its entirety. First,

Defendant argued that Plaintiff's FDUTPA claim "fails as a matter of law because the

Complaint makes only conclusory allegations that advertising statements about Wrigley

Eclipse gum caused her to suffer 'actual damages' or be 'aggrieved.'" DE 20 ¶ 1.

Second, Defendant argued that Plaintiff's claim for breach of express warranty fails for

two independent reasons: (1) Plaintiff is not "in privity" with Defendant, and (2) Plaintiff

fails to allege a legally cognizable injury. Id. ¶ 2.

On October 1, 2009, the Court denied the Motion to Dismiss. In so ruling, the

Court pointed out that the Complaint alleges that the consumer was exposed to and

saw the manufacturer's advertising claims and purchased the gum in reliance on these

claims. In addition, the Complaint alleges that as a result of the misleading messages,

the manufacturer had been able to charge a price premium for the gum. Accepting

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60646-CIV-COHN/SELTZER

CAROL D. SMITH, on Behalf of Herself
and All Others Similarly Situated,

                Plaintiff,

vs.

WM. WRIGLEY JR. COMPANY,

                Defendant.

_____/

## JUDGMENT, FINAL ORDER AND DECREE

**THIS CAUSE** is before the Court on Plaintiff's Motion for Final Approval of Settlement, and for Attorneys' Fees and Expenses [DE 92] ("Motion"). The Court has carefully considered the Motion, the Stipulation of Settlement [DE 84], the Class Member Objections [DE 95, 96], Plaintiff's Reply in Support of Final Approval of Settlement and For Attorney's Fees and Expenses [DE 99], Defendant's Submission in Support of Approval of Class-Action Settlement [DE 98-1], the argument of counsel on November 5, 2010, and the record in this case, and is otherwise advised in the premises. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.     This Judgment incorporates by reference the definitions in the Stipulation of Settlement filed on June 1, 2010 ("Stipulation"), attached as Exhibit A, and all terms used herein shall have the same meanings as set forth in the Stipulation unless set forth differently herein. The terms of the Stipulation are fully incorporated in this Judgment as if set forth fully here.

- 1 -

2.     The Court has jurisdiction over the subject matter of this action and all Parties to the action, including all Settlement Class Members.

3.     Pursuant to Federal Rules of Civil Procedure, Rule 23(b)(3), the Court hereby certifies the following Class:

> All persons who purchased in the United States the Product at any time up to the date notice was provided to the Class. Excluded from the Class are Defendant's officers, directors and employees, and those who purchased the Product for the purpose of resale.

4.     Pursuant to Federal Rules of Civil Procedure, Rule 23(c)(3), all such Persons who satisfy the Class definition above, except those Class Members who timely and validly excluded themselves from the Class, are Settlement Class Members bound by this Judgment.

5.     Pursuant to Federal Rules of Civil Procedure, Rule 23(a), the Court finds that the Plaintiff in the Litigation, Carol D. Smith, is a member of the Class, her claims are typical of the Class, and she fairly and adequately protected the interests of the Class throughout the proceedings in the Litigation. Accordingly, the Court hereby appoints Carol D. Smith as class representative.

6.     The Court finds that the Class meets all requirements of Federal Rules of Civil Procedure, Rule 23(a) and (b)(3) for certification of the class claims alleged in the Complaint, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representative and Class Counsel; (e) predominance of common questions of fact and law among the Settlement Class; and (f) superiority.

7.     Having considered the factors set forth in Federal Rules of Civil Procedure, Rule 23(g)(1), the Court finds that Class Counsel have fairly and adequately represented the Class for purposes of entering into and implementing the settlement, and thus, hereby appoints Class Counsel as counsel to represent the Settlement Class Members.

- 2 -

17.     The Parties are hereby authorized without needing further approval from the Court, to agree to and adopt such modifications and expansions of the Stipulation, including without limitation, the forms to be used in the claims process, which are consistent with this Judgment and do not limit the rights of Class members under the Stipulation.

18.     Plaintiff's Motion for Final Approval of Settlement, and for Attorneys' Fees and Expenses is hereby **GRANTED**. The Class Member Objections are hereby **OVERRULED**.

19.     All pending motions in the above-captioned case are **DENIED** as moot. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this  8ᵗʰ  day of November, 2010.

**JAMES I. COHN**
**United States District Judge**

Copies provided to:
Counsel of record via CM/ECF

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60646-Civ-Cohn/Seltzer

CAROL D. SMITH, on Behalf of Herself and   )
All Others Similarly Situated,             )
                                           )
                         Plaintiff,        )
                                           )
           vs.                             )
                                           )
WM. WRIGLEY JR. COMPANY,                   )
                                           )
                         Defendant.        )
                                           )
_____   )


**STIPULATION OF SETTLEMENT**

Case No. 09-60646-Civ-Cohn/Seltzer

This Stipulation of Settlement is made and entered into by and among Plaintiff Carol D. Smith ("Plaintiff" or "Smith"), on behalf of herself and each of the Settlement Class Members, by and through Class Counsel authorized to settle this Litigation on their behalf, and Defendant Wm. Wrigley Jr. Company ("Defendant" or "Wrigley") (collectively, the "Parties"), by and through their counsel of record in this Litigation.

I. **RECITALS**

A. On May 1, 2009, Plaintiff, on behalf of herself and all others similarly situated, filed a class action complaint against Wrigley in the United States District Court, Southern District Court of Florida, Case No. 09-60646;

B. On April 12, 2010, the Parties executed a Memorandum of Understanding ("MOU") memorializing an agreement to resolve this Litigation on behalf of Settlement Class Members.

C. Prior to execution of the MOU, the Parties engaged in extensive discovery, including the production and review of several hundred thousand pages of documents from Defendant and third parties, and extensive work with expert witnesses and consultants. Additionally, the Parties engaged in extensive and vigorously contested briefing on Wrigley's motion to dismiss and Plaintiff's motion for class certification.

D. The Parties also engaged in extensive settlement negotiations, including two-full day mediation sessions and numerous telephonic mediation sessions conducted by mediator Rodney A. Max of Upchurch Watson White & Max Mediation Group. As a result of these mediation sessions and settlement discussions, the Parties have agreed to settle all of the claims asserted in Plaintiff's lawsuit.

- 1 -

**B.    Additional Provisions Relating to Injunctive Relief**

(1)    By December 31, 2010 or within 90 days of the Effective Date, whichever comes later, and for a period of three (3) years from the Effective Date, Wrigley shall refrain from using in its advertising, and manufacturing further Products labeled with, the "germ kill" messages challenged in the complaint filed in the Litigation. In addition, Wrigley, which in the time frame specified in this Paragraph will cease to include the Magnolia Bark Extract ("MBE") ingredient in the Product, will discontinue use of all "germ kill" messages in the Product advertising and labeling. As used here, advertising includes the packaging of the Product and any type of advertisement or promotion on radio, television, the Internet, newspapers, periodicals, point of purchase displays and all other media.

(2)    Defendant shall not be prohibited from making claims about the Product if, at the time they are made, the representations are true and non-misleading and, as appropriate, are supported by competent and reliable scientific evidence that substantiates the representations.

(3)    Nothing in this Agreement will prohibit Defendant from making any representation in the labeling of the Products that is specifically permitted by applicable law, regulations, or policies promulgated by the Food and Drug Administration.

(4)    Nothing in this Agreement shall prohibit Defendant from communicating the results of one or more clinical studies on the Products provided the results are presented in a truthful and non-misleading fashion.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| JAMES GEMELAS, On Behalf of Himself and All Others Similarly Situated, ) | No. 1:08-cv-00236 |
| ) | |
| Plaintiff, ) | <u>CLASS ACTION</u> |
| ) | |
| vs. ) | Judge Dan Aaron Polster |
| ) | |
| THE DANNON COMPANY, INC., ) | |
| Defendant. ) | |

JUDGMENT, FINAL ORDER AND DECREE

LA: 610777v4

1

IT IS HEREBY ADJUDGED AND DECREED THAT:

1.  This Judgment incorporates by reference the definitions in the Amended Stipulation of Settlement dated January 21, 2010, as further amended on May 24, 2010 (collectively referred to herein as "Amended Stipulation"), and attached as Exhibit A. All terms used herein shall have the same meanings as set forth in the Amended Stipulation unless set forth differently herein. The terms of the Amended Stipulation are fully incorporated in this Judgment as if set forth fully here.

2.  The Court has jurisdiction over the subject matter of this action and all Parties to the action, including all Settlement Class Members.

3.  Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court hereby certifies the following Class:

> All persons who purchased in the United States the food products marketed and distributed by Dannon under the brand names of Activia or DanActive, including any variations, formats or line extensions thereof (the "Products") at any time up to the date notice is provided to the Class. Excluded from the Class are Defendant's officers, directors and employees and those who purchased the Products for the purpose of resale.

4.  Pursuant to Federal Rule of Civil Procedure 23(c)(3), all such Persons who satisfy the Class definition above, except those Class Members who timely and validly excluded themselves from the Class, are Settlement Class Members bound by this Judgment.

5.  Pursuant to Federal Rule of Civil Procedure 23(a), the Court finds that the Plaintiff in the Litigation, James Gemelas, is a member of the Class, his claims are typical of the Class, and he fairly and adequately protected the interests of the Class throughout the proceedings in the Litigation. Accordingly, the Court hereby appoints James Gemelas as class representative and he is entitled to an incentive award of $7,500.00.

2

21. The Parties are hereby authorized without needing further approval from the Court, to agree to and adopt such modifications and expansions of, the Amended Stipulation, including without limitation, the forms to be used in the claims process, which are consistent with this Judgment and do not limit the rights of Class members under the Amended Stipulation.

IT IS SO ORDERED.

DATED: ____6/24/10____

_____
THE HONORABLE DAN A. POLSTER
UNITED STATES DISTRICT JUDGE

1844783v.2

# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| JAMES GEMELAS, On Behalf of Himself and ) | No. 1:08-cv-00236 |
| All Others Similarly Situated, ) | |
| ) | CLASS ACTION |
| Plaintiff, ) | |
| ) | Judge Dan Aaron Polster |
| vs. ) | |
| ) | |
| THE DANNON COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

AMENDED STIPULATION OF SETTLEMENT

This Amended Stipulation of Settlement is made and entered into by and among Plaintiff
James Gemelas, on behalf of himself and each of the Settlement Class Members and their Class
Counsel authorized to settle this Litigation on their behalf, and Defendant The Dannon Company,
Inc. ("Defendant" or "Dannon"), and its counsel of record in this Litigation. This Amended
Stipulation of Settlement supersedes the Stipulation of Settlement filed with the Court on
September 18, 2009.

I.    **RECITALS**

A.      On January 29, 2008, Plaintiff James Gemelas initiated this Litigation against
Defendant in the United States District Court for the Northern District of Ohio, Eastern Division.
Plaintiff alleged that statements Defendant made in its marketing and advertising materials about the
purported health benefits of Activia, Activia Light, DanActive, and DanActive Light were false,
misleading or otherwise deceptive. A number of other similar actions were filed in various United
States District Courts between January 2008 and January 2009.[1]

B.      On January 23, 2009, the Settling Parties executed a Memorandum of Understanding
("MOU") memorializing an agreement to resolve this Litigation on behalf of Settlement Class
Members.

C.      Prior to execution of the MOU, the Settling Parties engaged in intensive discovery,
including the production and review of approximately one million pages of documents from
Defendant and third parties, and extensive work with expert witnesses and consultants. The Settling
Parties also engaged in three full-day mediation sessions conducted by United States District Court

---

[1]      These cases are: *Bednarz v. The Dannon Company, Inc.*, No. 09-cv-00077 (D. Conn. Jan. 20,
2009); *Horne, et al. v. The Dannon Company, Inc.*, No. 09-CV-0011 (E.D. Ark. Jan. 9, 2009);
*Knafla v. The Dannon Company, Inc.*, No. 08-cv-04940 (D. Minn. Aug. 15, 2008); *Park, et al. v.
The Dannon Company, Inc.*, No. 08-81147-CIV (S.D. Fla. Oct. 8, 2008); *Wegrzyniak v. The Dannon
Company, Inc.*, No. 08-cv-05992 (D.N.J. Dec. 8, 2008); *Wiener v. The Dannon Company, Inc.*, No.
CV08-00415 (C.D. Cal. Jan. 23, 2008).

(6) **Schedule of Payments Into the Settlement Fund**

Subject to §IV.A.(3)(a) and (4)(a) above, Defendant shall make payments into the Settlement Fund in accordance with the following schedule:

(a) An amount equal to the cost of publishing the Publication Notice, to be paid when such amount becomes due and owing. Upon agreement of the Parties, additional amounts equal to costs incurred by the Class Action Settlement Administrator may be paid into the Settlement Fund when such costs become due and owing. In the event such additional amounts are paid, the amount of the payment(s) made pursuant to §IV.A.(6)(b) shall be reduced by an amount equal to such additional payment(s);

(b) $15 million, to be paid into the Settlement Fund within 15 days of the entry of Judgment by the Court;

(c) up to $20 million, plus, if applicable, all amounts owed to the Supplemental Net Settlement Fund pursuant to §IV.A.(4)(a), to be paid into the Settlement Fund within 125 days from the date of entry of Judgment by the Court or 25 days from the Effective Date, whichever is later.

**B. Injunctive Relief**

Defendant agrees to make the following changes to its advertising and labeling, beginning within 120 days after the Effective Date, and for a period of three years from the Effective Date:

(1) **Activia® branded products:**

(a) Remove the words "clinically proven" and/or "scientifically proven" from the product labeling and packaging and commercials and advertisements of its Activia® branded products; and substitute such language with the phrases "there are a number of clinical studies that show" or "clinical studies show", or similar communication that reasonably conveys the same meaning.

- 12 -

(b)     Qualify the claim that Activia® branded products "helps regulate the digestive system" with the explanatory statement that the product "helps with slow intestinal transit when eaten daily for two weeks, as part of a balanced diet and healthy lifestyle," or similar communication that reasonably conveys the same meaning. On the product, this qualifier shall be made on the external back of the product label, packaging over-wrap, or a similarly prominent location. In television commercials, on point of purchase displays, on websites, in medical marketing materials and in print advertising, this qualifier shall be prominently displayed in the super (to the extent applicable and subject to reasonable space limitations).

(c)     Add on the frequently asked questions page of its Activia® website and on the inside of product packaging over-wrap (if any) the following statement, or words to the same or similar effect: "Activia® [or e.g. Activia® Light] is a food product and not a treatment or cure for any medical disorder or disease. If you have any concerns about your digestive system, you should consult a healthcare professional."

(d)     Place the correct genus, species and strain designation for *Bifidus Regularis®* ("*Bifidobacterium lactis* DN 173-010") in close proximity to the Food and Drug Administration required nutritional label and ingredient list for Activia® branded products.

(e)     Place the correct genus, species and strain designation ("*Bifidobacterium lactis* DN 173-010"), when referring to the probiotic strain on the inside packaging or similarly prominent location at least the first time *Bifidus* Regularis® is mentioned on the inside packaging or similarly prominent location of Activia® branded products.

(2)     **DanActive® branded products:**

(a)     Remove the word "IMMUNITY" from the product labeling, packaging, commercials and advertisements of its DanActive® branded products.

A/73264775.2                                                                 Ex. 3, p. 17

(b)     Remove the words "clinically proven" and/or "scientifically proven" from the product labeling and packaging and commercials and advertisements of its DanActive® branded products; and substitute such language with the phrases "there are a number of clinical studies that show" or "clinical studies show", or similar communication that reasonably conveys the same meaning.

(c)     Qualify the claims that DanActive "helps strengthen your body's defenses" and/or "helps support the immune system" with the explanatory statement "when eaten regularly as part of a balanced diet and healthy lifestyle", or similar communication that reasonably conveys the same meaning. On the product, this qualifier shall be made on the external back of the product label, packaging over-wrap, or a similarly prominent location. In television commercials, on point of purchase displays, on websites, in medical marketing materials and in print advertising, this qualifier shall be prominently displayed in the super (to the extent applicable and subject to reasonable space limitations).

(d)     Add on the frequently asked questions page of its DanActive® website and on the inside of product packaging over-wrap (if any) the following statement, or words to the same or similar effect: "DanActive® [or e.g. DanActive® Light] is a food product and not a treatment or cure for any medical disorder or disease. If you have any concerns related to your health or diet, you should consult a healthcare professional."

(e)     Place the correct genus, species and strain designation for *L. casei Immunitas*® ("*Lactobacillus casei* DN 114-001") in close proximity to the Food and Drug Administration required nutritional label and ingredient list for DanActive® branded products.

(f)     Place the correct genus, species and strain designation ("*Lactobacillus casei* DN 114-001"), when referring to the probiotic strain on the inside packaging or similarly

- 14 -

prominent location at least the first time *L. Casei* Immunitas® is mentioned on the inside packaging
or similarly prominent location of DanActive® branded products.

      (3)    **Additional Provisions Relating to Injunctive Relief:**

           (a)    No term or provision of this Agreement shall be in effect or otherwise
enforceable against Defendant if such term or provision is in conflict or inconsistent with a Consent
Order, judicial decree, Closing Letter or other memorialized understanding between Defendant and
the Federal Trade Commission (FTC) relating to the advertising or promotion of the Products, it
being understood by the Parties that in such conflicting circumstances the equitable relief obtained
by the FTC shall govern and Defendant shall be required to comply therewith. In the event the
parties dispute whether there is such a conflict or inconsistency, such dispute shall be resolved by the
Court upon application by either party.

           (b)    Nothing in this Agreement will prohibit claims about the Products if,
at the time they are made, the representations are true and non-misleading and, as appropriate, are
supported by competent and reliable scientific evidence that substantiates the representations.

           (c)    Nothing in this Agreement will prohibit Defendant from making any
representation in the labeling of the Products that is specifically permitted by applicable law,
regulations, or policies promulgated by the Food and Drug Administration.

           (d)    Defendant may continue or adopt any claim that qualifies as a
permissible "structure or function claim" as allowed/regulated by the Food and Drug Administration
that is not otherwise inconsistent with the settlement terms set forth in this Agreement.

           (e)    Nothing in this Agreement shall prohibit Defendant from
communicating the results of one or more clinical studies on the Products provided the results are
presented in a truthful and non-misleading fashion.

- 15 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

BENJAMIN CAREATHERS,

                         Plaintiff,

          v.

RED BULL NORTH AMERICA, INC.,

                       Defendant.

------------------------------------------------X

DAVID WOLF, *et al.*,

                         Plaintiff,

          v.

RED BULL GMBH, *et al.*,

                       Defendant.

------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: May 12, 2015 |

13 Civ. 0369 (KPF)

CLASS ACTION

13 Civ. 8008 (KPF)

KATHERINE POLK FAILLA, District Judge:

**FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

    This matter came before the Court on May 1, 2015, pursuant to the

Court's Preliminary Approval Order filed on September 3, 2014, for a hearing

on the application of the Plaintiffs for final approval of the settlement set forth

in the Stipulation of Settlement dated July 31, 2014, as amended and filed

with the Court on April 30, 2015 (ECF No. 78) (the "Stipulation"). Due and

adequate notice having been given to the Settlement Class as required in said

Preliminary Approval Order, and the Court having considered all papers filed

and proceedings conducted in these Actions and otherwise being fully

informed, and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.      This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has subject matter and personal jurisdiction over the Parties, including all Settlement Class Members.

3.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and consistent with the requirements of due process, the Court hereby finally approves the Settlement and finds that the entire Settlement is, in all respects, fair, reasonable and adequate.  The Court further finds that the Settlement was entered into in good faith following arm's-length negotiations and is not collusive.  The Parties are hereby directed to perform the terms of the Stipulation.

4.      Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, for purposes of effectuating the Settlement, the Court hereby certifies the Settlement Class as follows:

All Persons who purchased Red Bull Products in the United States[1] during the Class Period.  Excluded from the Settlement Class are: (a) employees, officers, directors, agents, and representatives of (1) Defendants and each of their subsidiaries and affiliates, and (2) all distributors,

---

[1]      As per § II.A.31 of the Stipulation, "United States" means all fifty States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the other territories and possessions of the United States.

2

12.     Without affecting the finality of this Judgment in any way, this

Court hereby retains continuing jurisdiction over: (a) implementation of the

Settlement and any disputes concerning payment or distribution of the

proceeds from the Settlement; (b) enforcement of this Order; and (c) all Parties

hereto solely for the purpose of construing, enforcing, and administering the

Settlement and this Order.

        SO ORDERED.

Dated:      May 12, 2015
            New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge

6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN CAREATHERS, individually, and on Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br>   vs. <br><br> RED BULL NORTH AMERICA, INC., a California corporation, <br><br>            Defendant. | Case No. 1:13-CV-0369 (KPF) |
| DAVID WOLF and MIGUEL ALMARAZ, individually and on behalf of others similarly situated, <br><br>            Plaintiffs, <br><br>     v. <br><br> RED BULL GMBH, a foreign company; RED BULL NORTH AMERICA, INC., a California corporation; and RED BULL DISTRIBUTION COMPANY, INC., a Delaware corporation, <br><br>            Defendants. | Case No. 1:13-CV-08008 (KPF) |

## AMENDED STIPULATION OF SETTLEMENT

1

This Stipulation of Settlement is made and entered into by and among Plaintiff Benjamin Careathers, individually and on behalf of himself and each of the Settlement Class Members, by and through Class Counsel authorized to settle *Careathers v. Red Bull North America, Inc., et al,* Case No. 1:13-CV-0369 (S.D.N.Y) (the "New York Action") on their behalf, Plaintiffs David Wolf and Miguel Almaraz, individually and on behalf of themselves and each of the Settlement Class Members, by and through Class Counsel authorized to settle *Wolf v. Red Bull GmbH, et al.*, originally filed in the Central District of California, Case No. CV 13-01444 (the "California Action") but subsequently transferred and consolidated with the New York Action, and Defendants Red Bull North America, Inc., Red Bull Distribution Company, Inc., and Red Bull GmbH (collectively, "Red Bull Defendants," "Defendants" or "Red Bull"), by and through their counsel of record in the New York and California Actions (collectively, the "Actions").[1]

## I.    RECITALS

A.     Plaintiffs Careathers, Wolf and Almaraz are collectively referred to herein as Plaintiffs.

B.     Defendants and Plaintiffs are collectively referred to herein as the Settling Parties.

C.     The New York Action was initiated on January 16, 2013 by Plaintiff Benjamin Careathers against Defendants in the United States District Court for the Southern District of New York.  Pursuant to the Individual Practices of Judge Marrero (who previously presided over the New York Action), Careathers and Defendants exchanged letters regarding the sufficiency of the allegations of the Complaint.  Careathers filed his Amended Complaint on April 1, 2013, asserting claims on behalf of a putative nationwide class of Red Bull purchasers and challenging

---

[1]  Although Plaintiff Careathers has dismissed without prejudice his claims against Red Bull Distribution Company and Red Bull GmbH pursuant to a prior stipulation between the Settling Parties, this Stipulation of Settlement applies to all Red Bull Defendants.

Red Bull's marketing and labeling that describe the functional benefits of Red Bull energy beverages. Careathers asserted claims against Red Bull for breach of express warranty, unjust enrichment, and violations of various states' consumer protection statutes, seeking both monetary and injunctive relief.

D.      Subsequent to this filing, Careathers and Defendants met and conferred in an effort to settle this litigation without trial, and entered into a Memorandum of Understanding on June 24, 2013.

E.      The California Action was initiated on February 27, 2013 by Plaintiffs David Wolf and Miguel Almaraz against Defendants in the United States District Court for the Central District of California. These Plaintiffs also assert claims on behalf of a putative nationwide class of Red Bull purchasers based on substantially the same alleged misconduct at issue in the New York Action. The California Action brings causes of action for violations of California consumer protection statutes and unjust enrichment, alleging, for example, that Red Bull, through its marketing and labeling, has misrepresented both the functionality and safety of Red Bull beverages.

F.      Counsel for the Settling Parties engaged in three-way mediation in Los Angeles on June 24, 2013 and in New York on July 12, 2013, before JAMS mediator Hon. Peter D. Lichtman (Ret.). The Settling Parties engaged in good faith, arms'-length negotiations and after more than 12 hours of mediation, the Settling Parties reached agreement on a settlement proposal presented by Judge Lichtman, the terms of which were memorialized in an October 24, 2013 Memorandum of Understanding signed by Defendants and Plaintiffs in both the New York Action and California Actions, expressly superseding the June 24, 2013 Memorandum of

Red Bull ® Energy Drink *or* Red Bull ® Sugarfree, and valid shipping addresses for the Claimants from the Class Action Settlement Administrator, as per § IV.A.11(b) above, Red Bull products fulfilling the Product Option will be shipped directly to valid Claimants selecting the Product Option at the addresses provided by the Class Action Settlement Administrator, via a shipping method to be determined by Red Bull in its discretion.

        B.      <u>Injunctive Relief</u>

        1.      Red Bull has voluntarily updated its Marketing and labeling directed at United States consumers and has done so to address the concerns raised in the New York and California Actions as to the specific representations identified in the complaints in those actions. Red Bull will work in good faith with Class Counsel on a mechanism to prevent U.S. Red Bull purchasers from inadvertently accessing Red Bull's foreign websites, which may contain different statements and representations than those found on Red Bull's U.S. website and marketing materials.

        2.      The parties agree that, for purposes of this Stipulation, such updated materials satisfy any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature against Defendants which Plaintiffs or Settlement Class Members asserted, or could have asserted, in the Actions.

        3.      While Red Bull believes that its Marketing and labeling directed at United States consumers have always been entirely truthful and accurate, and that its recent voluntary update in any event satisfies statutory safe harbors for consumer protection statutes for many of the statutes invoked by Plaintiffs in the Actions such that Red Bull has additional defenses to the award of any monetary damages and other relief in any jurisdiction in which the safe harbor

provisions exists, Red Bull further confirms that all future claims about the functional benefits of

its products will be medically and/or scientifically supported.

4.      The Settling Parties agree that the changes to Red Bull's Marketing and

labeling directed at United States consumers and prospective injunctive relief described above

have significant value to the Settlement Class.  Class Counsel reserves the right to submit an

expert declaration opining on the value to the Settlement Class of such injunctive relief.  Red

Bull agrees not to oppose a valuation, should one be proposed, of the changes in Marketing and

labeling up to $18.5 million of value to the Settlement Class.

5.      The Parties recognize that Red Bull has a quantity of Red Bull Products

containing the prior labels, as well as older Marketing materials, and agree that Red Bull shall

have until September 1, 2014 to use such materials or sell such products.

6.      Nothing in the Stipulation or approval of the Settlement constitutes a

finding by the Court about merit or lack of merit of the allegations made in the Actions.

## V.      NOTICE TO THE SETTLEMENT CLASS, COMMUNICATIONS WITH SETTLEMENT CLASS MEMBERS AND REDEMPTION OF SETTLEMENT RELIEF

### A.      Class Notice

1.      Defendants shall pay the costs of Class Notice and claims administration,

including, *inter alia,* reimbursement and/or payment of the total costs reasonably and actually

incurred by the Class Action Settlement Administrator and in connection with providing notice

to and locating Settlement Class Members, soliciting Settlement Class claims, assisting with the

filing of claims, administering and distributing the Net Settlement Balance, distributing  Red

Bull Products to fulfill Product Option selected by authorized Claimants, processing Claim

Forms, and paying the Notice Expenses.  The costs described in this paragraph will be paid from

the Settlement Fund.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KIMBERLY CAREY, SHANNON DILBECK, and
VICTORIA MOLINAROLO, individuals, on their
own behalf and on behalf of all others similarly
situated,

                   Plaintiffs,

      v.

NEW BALANCE ATHLETIC SHOE, INC.,

                   Defendant.

Civil Action No. 11-cv-10001-LTS

### FINAL JUDGMENT

IT IS on this _28th_ day of _January_, _2013_, HEREBY ADJUDGED AND

DECREED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 58 THAT:

1.     The settlement of this class action on the terms set forth in the Parties' Settlement

Agreement, with exhibits and any amendments thereto (collectively, the "Settlement

Agreement"), and definitions included therein, initially signed and filed with this Court on July

30, 2012, is finally approved, and the following class is granted final certification for settlement

purposes only under Fed. R. Civ. P. 23(a) and (b)(3):  all persons or entities that purchased any

and all Toning Shoes from New Balance and/or its authorized retailers including, without

limitation, New Balance U.S. Retailers, New Balance Stores, shopnewbalance.com,

joesnewbalanceoutlet.com, New Balance Outlets, and/or other third-party retailers, from January

1, 2010 up to and including August 29, 2012 (the "Class Period").  Excluded from the Class are:

(a) New Balance's Board members and executive-level officers, including its attorneys; (b)

persons or entities who purchased the Toning Shoes primarily for the purpose of resale; (c)

8.     Each of the named Plaintiffs, Kimberly Carey, Shannon Dilbeck, and Victoria

Molinarolo, shall each be awarded $ 5,000,00                as incentive awards in their

capacity as representative Plaintiffs in the Actions.

9.     The Court will retain continuing jurisdiction over the Actions for the reasons and

purposes set forth in this Court's Final Approval Order.

LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

KIMBERLY CAREY, SHANNON DILBECK, and VICTORIA MOLINAROLO, individuals, on their own behalf and on behalf of all others similarly situated,

     Plaintiffs,

 v.

NEW BALANCE ATHLETIC SHOE, INC.,

     Defendant.

Civil Action No. 11-cv-10001-LTS

# SETTLEMENT AGREEMENT

**IT IS HEREBY STIPULATED AND AGREED**, by, between and among Plaintiffs Kimberly Carey, Shannon Dilbeck, and Victoria Molinarolo, and Defendant New Balance Athletic Shoe, Inc., with all terms as defined below, through their duly-authorized counsel, that the above-captioned action, *Kimberly Carey et al. v. New Balance Athletic Shoe, Inc.*, Case Number 11-cv-10001-LTS (D. Mass.), and the matters raised therein, are settled, compromised, and dismissed on the merits with prejudice, on the terms and conditions set forth in this Settlement Agreement and the release set forth herein, subject to the approval of the Court.

## I. INTRODUCTION

A. There are two class actions pending in the United States District Court for the District of Massachusetts against New Balance alleging that New Balance engaged in untrue and deceptive advertising promotion and marketing practices associated with its toning shoes. These actions are: (i) *Kimberly Carey et al. v. New Balance Athletic Shoe, Inc.*, Case Number 11-cv-10001-LTS (D. Mass.) (captioned above); and (ii) *Kimberly Carey et al. v. New Balance Athletic Shoe, Inc.*, Case Number 11-cv-10632-LTS (D. Mass.). The complaints filed in both of these actions allege similar factual predicates, and each alleges similar claims, including unjust enrichment and consumer protection violations. New Balance's marketing campaign relating to the Toning Shoes is presently the focal point of the class action complaints.

B. On December 7, 2010, a putative class action lawsuit captioned *Bistra Pashamova v. New Balance Athletic Shoes, et al.* (BC450545) ("California Case"), was filed in the Superior Court of the State of California in the County of Los Angeles. In this complaint, plaintiff alleged, among other things, that she purchased New Balance toning footwear in the United States. The California Case was filed on behalf of the plaintiff and others similarly situated and sought to certify a class defined as "[a]ll consumers in the United States who purchased at retail any Toning Shoes (the "Class"), from December 7, 2006, until the final

2.      If the total of the timely, valid and approved Claims submitted by Class Members is less than the available relief, minus any fees, payments, and costs set forth in this Agreement, then the Initial Claim Amount award to each eligible Class Member shall be increased on a *pro rata* basis, with a maximum increase of up to, but not more than, $100.00, not including any applicable sales tax.

3.      If there are any funds remaining in the Escrowed Fund from the claim program, including, but not limited to, any funds remaining in the Escrowed Fund after all Claims have been paid or un-cashed distributions made payable to eligible Class Members ("Residual Funds"), the Class Action Settlement Administrator shall equally distribute the Residual Funds to the following non-profit organizations: Playworks (www.playworks.org), KaBOOM! (www.kaboom.org), and Special Olympics (www.specialolympics.org), and/or other nonprofit organization(s) or foundation(s) that are agreed upon by the Parties.  The Residual Funds will not be returned to Defendant.  Defendant represents and warrants that any payment of Residual Funds to any charities, non-profit organizations, or governmental entit(ies) shall not reduce any of its donations or contributions to any entity, charity, charitable foundation or trust, and / or non-profit organization.

D.      Agreement to Refrain from Certain Conduct

In addition to the relief discussed above, as part of this Agreement, New Balance will agree to take commercially reasonable efforts to refrain from the following conduct :  (i) New Balance will not make or assist others in making any claims that the Toning Shoes or the Controlled Instability Shoes, are effective in strengthening muscles or that wearing such product will result in quantified percentage or amount of muscle toning or strengthening, unless that representation is non-misleading and is supported by at least one adequate well controlled human

13

clinical study; (ii) New Balance will not make or assist others in making any other health or fitness benefit claims about the Toning Shoes and Controlled Instability Shoes, including, but not limited to, claims about muscle tone and/or muscle activation, unless that representation is non-misleading and New Balance possesses and relies upon competent and reliable scientific evidence to substantiate that the representation is true; and (iii) New Balance will not misrepresent or assist others in misrepresenting the existence, contents, validity, results, conclusions, or interpretations of any test, study or research relating to New Balance's Toning Shoes or Controlled Instability Shoes.  For the purposes of this agreement, third party sales of Controlled Instability Shoes in connection with product packaging illustrated in Exhibit 10 already in third party retail inventory prior to the Settlement Date shall not constitute a violation of this Agreement.

## IV.  **NOTICE TO THE CLASS**

> A.  Duties of the Class Action Settlement Administrator and the Notice Administrator

> 1.  The Parties shall jointly recommend and retain Garden City Group, Inc. to be the Class Action Settlement Administrator and the Notice Administrator to help implement the terms of this Agreement.  Following the Court's preliminary approval of this Agreement and the Court's appointment of the proposed Class Action Settlement Administrator and the proposed Notice Administrator, the Notice Administrator shall disseminate notice to the Class as provided for in the Affidavit of the Notice Administrator, substantially in the form attached as Exhibit 8 to this Agreement, as specified in the Preliminary Approval Order and in this Agreement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the Constitution.

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

JENNELL CARR and PHYLLIS
SIERRA, individually, on behalf of all
others similarly situated, and the
general public,

Plaintiffs,

vs.

TADIN, INC.,

Defendant.

CASE NO. 12-CV-3040 JLS (JMA)

**ORDER: (1) GRANTING
PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; AND
(2) GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR ATTORNEYS'
FEES, COSTS, AND INCENTIVE
AWARDS**

(ECF Nos. 43, 40)

11

12

13

14

15

16

17

18

19

Presently before the Court is Plaintiffs Jennell Carr and Phyllis Sierra's

20

("Plaintiffs," or, "Class Representatives") Motion for an Order Granting Final

21

Approval of Class Action Settlement (ECF No. 43), as well as Defendant Tadin, Inc.'s

22

("Defendant") Statement of Non-Opposition (ECF No. 45), the sole objection to the

23

settlement (Decl. of Ronald A. Marron in Supp. of Mot. for Final Approval ("Marron

24

Decl.") Ex. 1, ECF No. 43-1), and the Declaration of Compliance by Class Action

25

Administrator Gajan Retnasaba (ECF No. 41). Also before the Court are Plaintiffs'

26

Motion for Attorneys' Fees, Costs, and Incentive Awards (ECF No. 40), the

27

Declaration of Posting of Fee Motion by Class Action Administrator Gajan Retnasaba

28

(ECF No. 43-2), and Plaintiffs' Supplemental Memorandum of Points and Authorities

1  in Support of Class Counsel's Motion for Attorneys' Fees and Costs (ECF No. 49). A

2  final approval hearing was held on July 21, 2014. (ECF No. 46.) Having considered

3  the Motions and the law, the Court **GRANTS** final approval of the class action

4  settlement and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for

5  Fees, Costs, and Incentive Awards.

## BACKGROUND

7  This case arises out of Defendant's purported misrepresentations concerning

8  certain of its weight loss teas and dietary supplements ("the Products"). (Mot. for Final

9  Approval 6, ECF No. 43.) Plaintiffs allege claims including breach of express and

10  implied warranties and violations of the Unfair Competition Law ("UCL"), California

11  Business and Professions Code § 17200, *et seq*.; the False Advertising Law ("FAL"),

12  California Business and Professions Code § 17500, *et seq.*; and the Consumer Legal

13  Remedies Act ("CLRA"), California Civil Code § 1750, *et seq*. (*See generally* 1st Am.

14  Compl., ECF No. 17.)

15  The Court preliminarily approved the Settlement Agreement on April 18, 2014.

16  (ECF No. 37.) The Court held a final approval hearing on July 21, 2014. (ECF No.

17  46.)

## TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

19  The proposed settlement class ("the Settlement Class," or, "the Class") consists

20  of "[a]ll U.S. consumers who purchased the Products (listed in Exhibit A to the

21  Agreement) for household or personal use during the Class Period (December 21, 2008

22  to the Objection Deadline, as set by the Court)." (Settlement Agreement ¶ 7.1, ECF

23  No. 34-2.)

24  The January 6, 2014 Settlement Agreement requires Defendant to provide the

25  Settlement Class with injunctive relief by modifying the labeling of and packaging for

26  the Products. (*Id.* ¶ 4.1.) The Settlement Agreement does not provide the Settlement

27  Class with any monetary relief, purportedly because (1) the CLRA would have

28  precluded a damages award at trial, (2) "[i]t would be cost prohibitive to implement a

1   claims procedure to refund" the average price of the Products, which is approximately

2   $2 per box, and (3) the injunctive relief is a substantial and more important form of

3   relief.  (Mot. for Final Approval 9–10, ECF No. 43; Settlement Agreement ¶ 4.1, ECF

4   No. 34-2.)

5        Defendant agreed to pay: (1) $50,000 to Class Counsel for the purpose of

6   providing notice to the class; (2) $297,000 in attorneys' fees and costs; and (3)

7   incentive awards of $1,500 to each of the Class Representatives.  (Settlement

8   Agreement ¶¶ 5.1, 9.1, ECF No. 34-2.)  In exchange, Plaintiffs and the Settlement Class

9   release all of their claims, known and unknown, against Defendant.  (*Id.* ¶¶ 6.1–6.4.)

10  **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

11       A threshold requirement for final approval of the settlement of a class action is

12  the assessment of whether the Class satisfies the requirements of Federal Rule of Civil

13  Procedure 23(a) and the requirements of one of the types of class actions enumerated

14  in subsection (b).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1022 (9th Cir.

15  1998).  No facts that would affect these various requirements have changed since this

16  Court preliminarily approved the Class on April 18, 2014.  Accordingly, this Order

17  incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the

18  Preliminary Approval Order.  (*See* Prelim. Approval Order 3–9, ECF No. 34.)

19       Moreover, before granting final approval of a class-action settlement, the Court

20  must determine that the Class received adequate notice.  *Hanlon*, 150 F.3d at 1025.

21  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

22  *Id*.  This Court preliminarily approved the parties' proposed notice plan ("the Notice

23  Plan").  (*See* Prelim. Approval Order 12–15, ECF No. 34.)  On June 20, 2014, class

24  action administrator Classaura ("Classaura," or "the Class Action Administrator") filed

25  a declaration detailing the actions it has taken with regard to this class action, including

26  providing notice.  (*See generally* EC No. 41.)  A review of the declaration and attached

27  exhibits reveals that Classaura provided notice in accordance with the Notice Plan.

28  Accordingly, the Court finds that the Class received adequate notice of the Settlement.

1  is intended to restrict the ability of the parties to exercise their rights under the

2  Settlement Agreement.

3      **8.**     **No Admissions.**   This Final Order and the Settlement, all provisions

4  herein or therein, all other documents referred to herein or therein, any actions taken

5  to carry out this Final Order and the Settlement, and any negotiations, statements, or

6  proceedings relating to them shall not be construed as, offered as, received as, used as,

7  or deemed to be evidence of any kind, including in this action, any other action, or any

8  other judicial, administrative, regulatory, or other proceeding, except for purposes of

9  obtaining approval of the Settlement and the entry of judgment in the action,

10 enforcement or implementation of the Settlement, or supporting any defense by

11 Defendant based on principles of *res judicata*, collateral estoppel, release, waiver,

12 good-faith settlement, judgment bar or reduction, full faith and credit, setoff, or any

13 other theory of claim preclusion, issue preclusion, release, injunction, or similar

14 defense or counterclaim to the extent allowed by law.   Neither the Settlement

15 Agreement nor any related negotiations, statements, mediation positions, notes, drafts,

16 outlines, memoranda of understanding, or Court filings or proceedings relating to the

17 Settlement or Settlement approval shall be construed as, offered as, received as, used

18 as, or deemed to be evidence or an admission or concession by any person, including,

19 but not limited to, of any liability or wrongdoing whatsoever on the part of Defendant

20 or as a waiver by Defendant of any applicable defense, including without limitation any

21 applicable statute of limitation.

22     **9.**     **Dismissal of Action.**   This action, including all individual and Class

23 claims resolved in it, is hereby **DISMISSED** on the merits **WITH PREJUDICE**,

24 / / /

25 / / /

26 / / /

27 / / /

28

12cv3040

Ex. 3, p. 37

1   without an award of attorneys' fees or costs to any part except as otherwise provided

2   in this Order.

3        **IT IS SO ORDERED**.

4

5   DATED:  December 5, 2014

6                           Honorable Janis L. Sammartino
                            United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNELL CARR and PHYLLIS SIERRA, on behalf of themselves, all others similarly situated, and the general public,<br><br>          Plaintiffs,<br><br>v.<br><br>TADIN, INC.,<br><br>          Defendant. | Case No. 3:12-cv-03040-JLS-JMA<br>CLASS ACTION<br>Filed: December 21, 2012<br><br>**CLASS ACTION SETTLEMENT AGREEMENT**<br><br><br>Judge:     Hon. Janis L. Sammartino |

This Class Action Settlement Agreement (the "Agreement") is made and entered into by and between Plaintiffs Jennell Carr and Phyllis Sierra, the Representative Plaintiffs ("Plaintiffs"), on behalf of themselves and the Class in this action, and Defendant Tadin, Inc. ("Tadin" or "Defendant") to settle and compromise this action, and settle, resolve, and discharge the Released Claims, as defined below, according to the terms and conditions herein.

Counsel believes that the proposed Settlement confers substantial benefits upon the Class. Based on their evaluation of all of these factors, the Representative Plaintiffs and Class Counsel have determined that the Settlement is in the best interests of the Representative Plaintiffs and the Class.

## 4. SETTLEMENT CONSIDERATION

### 4.1. Injunctive Relief

Defendant will provide the Class with injunctive relief by way of modification of the label and packaging for the Products as set forth in this Agreement. Exemplars of the revised Product packaging are attached hereto as **Exhibit C**, which reflect that Tadin will implement the following modifications:

4.1.1. For all Products – FDA Disclaimer: Defendant will add the following disclaimer to all Products packaging and Product-specific webpages: "These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease."

4.1.2. For Zendo Dieters Tea, Zendo Extra Fuerte (Extra Strength) Dieters Tea and Zendo Capsules: Defendant will remove the pictures of men and women walking up stairs in exercise clothes, progressively getting thinner and more muscular from the labeling.

4.1.3. For Slim-Mate Tea: Defendant will remove the phrase "Want To Look Slim?*" ("Quieres Verte Slim?") from the labeling. Defendant will remove "May Help* Reduce Body Fat, Eliminate Toxins, Diuretic" from the labeling. Defendant will remove tape measure from the picture of the slim and toned woman's waistline/midriff.

4.1.4. For Alcachofa Extra Tea, Alcachofa Capsules and Alcachofa Extra Capsules: Defendant will remove the claims that the product "Reduces cholesterol, which diminished the risk for arteriosclerosis

and coronary heart disease" from the labeling.  Defendant will remove the phrases "Burn Fat" and "Fight Cellulite" from the labeling. Defendant will remove the phrase "Weight Loss" from the labeling. Defendant will remove the phrase "Diuretic" from the labeling. Defendant will remove phrase "Podria adelgazar y rejuvenecer" ("lose weight and rejuvenate") from the labeling.

4.1.5.  Defendant's Website: Defendant will modify its website to comport with the modifications to the Products' packaging and labeling, set forth above.   Defendant will also remove, at a minimum, the following phrases from its website:

4.1.6.  Zendo Dieters Tea: "Our Zendo Dieters Tea contains a delicious formula designed to help you lower cholesterol, uric acid levels, excess body fats and accumulated toxins. The senna leaves in Zendo produce a powerful cathartic effect in the treatment of constipation.

4.1.7.  Zendo Extra Fuerte (Extra Strength) Dieters Tea: Extra Strength Zendo has a unique delicious formula that may help your lower cholesterol and uric acid levels, as well as excess body fats and accumulated toxins. The senna leaves in Zendo produce a powerful cathartic effect used in the treatment of constipation.

4.2.  The FDA Disclaimer will appear in a legible font size and will be conspicuously displayed on the package, as described above, in a readable font color, in comparison to any background coloring on the package.  In no event shall the FDA Disclaimer be in a font size smaller than any additional disclaimer Tadin may include on its packaging, nor shall the FDA Disclaimer be featured any less prominently than any other disclaimer Tadin may include on its packaging, such as

through use of font color, placement on the packaging, or any other means of emphasis.

4.3.    Tadin shall have eighteen (18) months after the date the Settlement is finally approved to complete the labeling changes referred to in Section 4.1 of this Agreement.  The Parties understand that Tadin may continue to market and ship product stock with existing labeling for up to eighteen (18) months following final approval, as contemplated by the eighteen month time period it will take to complete the labeling changes as set forth herein, and that third-party retailers and distributors may have on hand product stock in existing labeling for some time after the Settlement is finally approved.

4.4.    To the extent that any state and/or federal statute, regulation, policies, and/or code may, in the future, impose other, further, different and/or conflicting obligations or duties on Defendant with respect to the Products, this injunctive relief shall cease as to Defendant's conduct covered by that statute, regulation, policy and/or code as of the effective date of such statute, regulation, policy and/or code.

## 5.  NOTICE

5.1.    Within seven (7) calendar days of entry of any Court Order granting preliminary approval to the Settlement, Tadin shall pay to Plaintiffs' counsel, in U.S. funds, the sum of $50,000 for the purpose of Plaintiffs providing notice to the Class.

5.2.    All costs and expenses of providing Notice in accordance with the Preliminary Approval Order ("Notice Costs") shall be paid by Plaintiffs to ClassAura ("Notice Administrator"), out of the $50,000 paid by Defendants, as approved by the Court through its approval of the Notice Plan.  Any excess Notice Costs, above and beyond the $50,000, shall be paid by Plaintiffs.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARRY DENNIS and JON KOZ, individually and on behalf of those similarly situated,<br><br>                                        Plaintiffs,<br><br>        vs.<br><br><br><br>KELLOGG CO.,<br><br>                                        Defendant . | CASE NO. 09-CV-1786- IEG (WMC)<br><br>**ORDER:**<br><br>**1.     GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL, ATTORNEYS' FEES, AND INCENTIVE AWARDS;**<br><br>[Doc. No. 101]<br><br>**2.     OVERRULING ALL OBJECTIONS AND DENYING OBJECTOR'S FEE REQUEST** |

Before the Court is Plaintiffs' motion for final settlement approval and attorneys' fees and costs, as well as several objections, one of which also requests attorneys' fees.  For the reasons below, the Court **GRANTS** Plaintiffs' motion in its entirety, **OVERRULES** all objections, and **DENIES** objector's request for attorneys' fees.

**BACKGROUND**

This is a consumer class action alleging Defendant Kellogg Company made false and unsubstantiated representations in advertising and labeling its Frosted Mini-Wheats cereal products.  The action originally settled with the approval of this Court on April 5, 2011.  [*See* Doc. No. 49.]  Under the original settlement, all

1      **CONCLUSION**

2      For the foregoing reasons, the Court hereby:

3      •      **GRANTS** final settlement approval;

4      •      **GRANTS** certification of the settlement class;

5      •      **GRANTS** class counsel's request for attorneys' fees and costs;

6      •      **GRANTS** the requested incentive awards to the class representatives;

7      •      **OVERRULES** all objections; and

8      •      **DENIES** objector's request for attorneys' fees.

9      **IT IS SO ORDERED.**

10   **DATED:**   September 10, 2013

11                                                              **IRMA E. GONZALEZ**
                                                              **United States District Judge**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
Fax:: 619/338-1101
tblood@bholaw.com
lhurst@bholaw.com

Attorneys for Plaintiff

JENNER & BLOCK LLP
Dean N. Panos (admitted *pro hac vice*)
Richard P. Steinken (admitted *pro hac vice*)
353 North Clark Street
Chicago, IL 60654-3456
Telephone: 312/222 9350
Fax: 312/527-0484
dpanos@jenner.com
rsteinken@jenner.com

Attorneys for Defendant Kellogg Company

[Additional Counsel Appear on Signature Page.]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY DENNIS and JON KOZ, On Behalf of Themselves and All Other Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KELLOGG COMPANY, a Delaware Corporation,<br><br>Defendant. | Case No.: 3:09-CV-01786-IEG(WMC)<br><br>CLASS ACTION<br><br>STIPULATION OF SETTLEMENT<br><br>Judge: Hon. Irma E. Gonzalez<br>Courtroom: 1, 4th Floor<br>Date Filed: August 17, 2009<br>Trial Date: TBD |

00057150

This Stipulation of Settlement is made and entered into by and among Plaintiffs Harry Dennis and John Koz ("Plaintiffs"), on behalf of themselves and each of the Settlement Class Members, by and through Class Counsel authorized to settle this Litigation on their behalf, and Defendant The Kellogg Company ("Defendant" or "Kellogg") (collectively, the "Parties"), by and through its counsel of record in this Litigation.

## I.  RECITALS

**A.**    On May 5, 2009, Plaintiff Koz sent a demand letter to Kellogg along with a proposed Complaint alleging violations of Ohio's Consumer Sales Practice Act (Ohio Rev. Code §1345, *et. seq.*), Ohio's Deceptive Trade Practices Act, (Ohio Rev. Code §4165, *et. seq.*) and Breach of Warranty in connection with Defendant's advertising of Kellogg's® Frosted Mini-Wheats cereals ("Product").

**B.**    On August 17, 2009, Plaintiff Dennis filed a complaint against Defendant in the United States District Court for the Southern District of California.  On June 22, 2010, a First Amended Complaint (the "Amended Complaint") was filed by Dennis and Koz.

**C.**    In the Amended Complaint, Plaintiffs allege that Kellogg falsely claimed on its Product labels and packages and in its promotional materials and advertisements that ran during the Settlement Class Period that consumption of Kellogg's® Frosted Mini-Wheats cereal for breakfast improved kids' attentiveness, memory and other cognitive functions to a degree not supported by any competent clinical evidence.  The Amended Complaint alleges: (1) violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §17200, *et. seq.*, and similar laws of the various states, (2) violations of California's Consumers Legal Remedies Act, Civil Code §1750 *et seq.*, and similar laws of the various states and (3) unjust enrichment.  The Amended Complaint seeks equitable monetary relief and injunctive relief.

2011 (ECF No. 49) do not need to resubmit a Claim Form in order to be eligible for and to receive a cash payment. The Settlement Administrator may pay claims that are otherwise valid but untimely filed if there is sufficient money to pay all valid and timely claims in full plus untimely but otherwise valid claims from the Settlement Fund, and payment of any such untimely but valid claims is administratively feasible and otherwise reasonable, taking into account the need to timely pay claims. The determination of the Class Action Settlement Administrator concerning the eligibility and amount of payment shall be final. In the event a Settlement Class Member disagrees with such a determination, the Class Action Settlement Administrator agrees to reconsider such determination, which includes consultation with Class Counsel.

(b)     To be eligible, Claim Forms must be postmarked or submitted online no later than 80 days after the date the Court first sets for the Settlement Hearing ("Claim-In Period").

(c)     Timing of Payments. The Class Action Settlement Administrator shall send payment to eligible Settlement Class Members or, as applicable, a letter explaining the rejection of the claim, within ten (10) days from the close of the Claim-In Period.

### 7.     Schedule of Payments into the Settlement Fund

(a)     Subject to §IV.A.2, above, Defendant shall fund the Settlement Fund thirty (30) days after entry of Judgment by the Court.

(b)     In the event the Effective Date does not occur, all amounts paid into the Settlement Fund, less amounts paid for taxes and tax expenses and claims administration and notice in accordance with §IV.A.2(b)(i) and (ii), above, shall be returned to Defendant.

### B.     Other Relief

(a)     Within three (3) months of the Effective Date, and for a period of three (3) years from the Effective Date, Defendant shall refrain from

00057150

using in its advertising and on its labeling for the Product any assertion to the effect that "eating a bowl of Kellogg's® Frosted Mini-Wheats cereal for breakfast is clinically shown to improve attentiveness by nearly 20%." Notwithstanding the foregoing, Defendant may make claims about the impact on attentiveness from eating the Product, but Kellogg will limit and qualify such claims wherever made to "Clinical studies have shown that kids who eat a filling breakfast like Frosted Mini-Wheats have an 11% better attentiveness in school than kids who skip breakfast," or words to the same effect.  In the event Defendant makes claims about the impact on memory or other cognitive function from eating the Product, Kellogg will similarly limit and qualify any such claims. As used here, advertising includes the packaging of the Product and any type of advertisement or promotion of any kind, including on radio, television, the Internet, newspapers, periodicals, point of purchase displays and all other media.

## V. NOTICE TO THE CLASS, COMMUNICATIONS WITH SETTLEMENT CLASS MEMBERS AND REDEMPTION OF SETTLEMENT RELIEF

### A. Class Notice

The Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clauses), and any other applicable law, and shall otherwise be in the manner and form agreed upon by the Parties and approved by the Court. Collectively, the Class Notice shall set forth the following information:

1. General Terms.  The Class Notice shall:

(a) inform Settlement Class Members that, if they do not exclude themselves from the Class, they may be eligible to receive the relief under the proposed settlement;

(b) contain a short, plain statement of the background of the Litigation, the Class certification and the proposed settlement;