**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 19-22864-Civ-COOKE/GOODMAN**

JUAN COLLINS and JOHN FOWLER,
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

v.

QUINCY BIOSCIENCE, LLC,
a Wisconsin limited liability company,

       Defendant.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS'**
**FEES AND EXPENSES, NOTICE REGARDING SERVICE AWARDS, AND**
**INCORPORATED MEMORANDUM OF LAW**

## INTRODUCTION

Class Counsel are very proud to present for final approval a class action settlement (the "Settlement") that was already granted Preliminary Approval by this Court, on behalf of millions of purchasers of Prevagen[1] nationwide, which was advertised and marketed by Defendant Quincy Bioscience, LLC ("Quincy"). The Settlement provides more than $36 million in monetary relief to approximately 3,000,000 Class Members from across the country and requires important and valuable injunctive relief. As of this date, the Parties have received only seven (7) opt-outs and only one (1) objection[2] to final approval. This response to the Settlement is overwhelmingly supportive.

The Settlement's benefits were the result of significant, rigorous arm's length negotiations by the Parties and their counsel, under the direction of a distinguished mediator, the Honorable John W. Thornton. Notice of this Settlement was disseminated to all Class Members via, among other things, (i) internet notice, (ii) establishment of a settlement website, and (iii) direct mail or email to those Settlement Class Members whose e-mail or mail addresses Quincy actually had and could reasonably locate. This Notice plan was approved by this Court.

Undersigned counsel were well positioned to evaluate and negotiate this Settlement because they have been actively litigating against Quincy in this and other jurisdictions for several years.[3] Specifically, Plaintiffs' counsel investigated their claims and allegations through

---

[1] "Prevagen Products" means all bottles of Prevagen® Regular Strength 30 Count, Prevagen Regular Strength Chewables, Prevagen Regular Strength 60 Count, Prevagen Extra Strength 30 Count, Prevagen Extra Strength Chewables, Prevagen Extra Strength 60 Count, and Prevagen Professional Strength sold in the United States by Quincy.

[2] Pursuant to Paragraph 18 of the Order, the deadline for any objections is **"no later than October 27, 2020"** and "**Settlement Class Counsel shall be obliged to file all responses to objections with the Court on or before November 10, 2020."** [ECF No. 158 at ¶18] Accordingly, Class Counsel will file a response to any and all objections on or before November 10, 2020. Plaintiffs do not waive any and all arguments regarding the validity or substance of any objections, by not addressing same in this Motion, because it would be premature.

[3] All currently pending Prevagen consumer class action cases around the country are referred herein as the "Prevagen Actions." They include *Collins, et al. v. Quincy Bioscience LLC*, No. 19-22864-Civ-COOKE/GOODMAN (S.D. Fla.); *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, (N.D. Cal.) ("*Racies*"); *Vanderwerff v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-07582-RA (S.D.N.Y.) ("*Vanderwerff*"); *Karathanos v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-08023-RA (S.D.N.Y.) ("*Karathanos*"); *Spath v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-03521-RA (S.D.N.Y.) ("*Spath*"); *Engert et al. v. Quincy*

extensive discovery, including the review of tens of thousands of pages of documents and the depositions of all key Quincy personnel, as well as extensive expert witness discovery. Despite that work, Plaintiffs and Class Members faced significant hurdles in litigating their claims to successful adversarial resolution. As such, and given the immediate and substantial benefits the Settlement will provide to the Class, there can be no question that the terms of the Settlement are "fair, reasonable, and adequate" and should be granted final approval.

This result is all the more extraordinary because it involved the resolution of very complex issues that in a similar class action, Defendant was recently able to obtain a hung jury in another district court, which eventually decertified that certified class and then dismissed the case. For this accomplishment, Class Counsel are asking for the Court to award them only 12% of just the monetary recovery (not including the significant injunctive relief) or up to $4,214,000.00 in fees and expenses, negotiated only *after* all Class Member's benefits had been secured, and under the direct supervision of a nationally recognized mediator, and payable by Defendants much *beyond* and outside of the benefits that are paid to the Class (it is paid over many months, due to the proven financial ability of Defendant to make such payments). A 12% recovery of just the monetary recovery (not including the significant injunctive relief) made available to Class Members, and is well within the parameters established by the Eleventh Circuit in *Poertner v. Gillette Co.*, 618 Fed. App'x 624, 629 (11th Cir. 2015).

Class Counsel respectfully request that this Court grant final approval of the Settlement and approve the application for attorneys' fees and costs. Plaintiffs further request that this Court reserve jurisdiction as to the Representative Plaintiffs' service awards and instead *reserve jurisdiction* for reconsideration of just those awards until *Johnson v. NPAS Solutions, LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), is fully resolved. *See* Section II.B., *infra*. A Proposed Order is attached as **Exhibit A**.

<u>**FACTUAL BACKGROUND**</u>

1. <u>**Background of the Litigation and Mediation**</u>

Plaintiff Collins commenced this Action by filing a Class Action Complaint on July 11, 2019. [ECF No. 1]. Plaintiff Collins and Plaintiff Fowler filed an Amended Class Action

---

*Bioscience, LLC*, No. 1:19-cv-183-LY (W.D. Tex.) ("*Engert*"); and *Miloro v. Quincy Bioscience, LLC,* No. 16PH-cv01341 (Mo. Cir. Ct.) ("*Miloro*").

Complaint and Demand for Jury Trial on September 11, 2019. [ECF No. 15]. After carefully reviewing all of the extensive information and discovery produced in the *Racies* action (see discussion below), as well as consulting with their own experts, Plaintiffs filed a comprehensive Motion for Class Certification on September 17, 2019. [ECF No. 21]. Judge Cooke referred that motion to this Court for a report and recommendation. [ECF No. 23]. After Plaintiffs filed the class certification motion, the Parties filed 20 additional submissions through the course of discovery and class certification proceedings to fully brief the motion. R&R at 5–6.

On September 25, 2019, Quincy moved to dismiss this Action. [ECF Nos. 25, 27–29, 34, and 89]. Quincy's motion to dismiss remains pending. Plaintiffs and Quincy conducted extensive discovery, including the depositions of both Plaintiffs Collins and Fowler, the depositions of Quincy's corporate representative, Chief Financial Officer, and Market Development Director, and the exchange of substantial document requests, in response to which Quincy produced over 40,000 documents consisting of over 160,000 pages, requests for admissions and interrogatories. Plaintiffs also issued third-party subpoenas to Florida retailers to obtain evidence regarding their Florida sales of Prevagen and FOIA requests to the FDA. ECF Nos. 54-6 (Walmart), 56 (Amazon and The Vitamin Shoppe), 72 (The Vitamin Shoppe).

This Court held an over five-hour hearing on Plaintiffs' Motion for Certification. [ECF No. 84]. After considering additional, extensive post-hearing briefing, including specifically the significant, monetary value of the proposed injunctive relief, this Court entered the R&R recommending certifying a Florida Class of Prevagen purchasers. [ECF No. 119]. The proposed Settlement is broader and includes a nationwide class and longer class period. Currently pending before the Court is Quincy's objection to the R&R, which Plaintiffs opposed. [ECF Nos. 129–130]. Quincy then moved for summary judgment. [ECF Nos. 138–141].

In addition to this matter, as of the date of this Settlement, numerous Prevagen Actions were previously filed and/or pending throughout the country. *Racies,* filed in the Northern District of California in February 2015, was the first-filed class action brought in the country against Quincy alleging deceptive marketing and sales of Prevagen. In December 2017, the District Court granted certification of a California Class of Prevagen purchasers. *Racies*, 2017 WL 6418910, at *1 (N.D. Cal. Dec. 15, 2017). After extensive litigation of pretrial issues, including summary judgment and *Daubert* motions, *Racies* was tried before a jury in January 2020; however, the District Court declared a mistrial after a jury deadlock, and the California

class was later de-certified, *Racies*, 2020 WL 2113852, at *1 (N.D. Cal. May 4, 2020), and the case was dismissed.

In 2016, the *Miloro* matter was filed in Missouri state court on behalf of Missouri purchasers of Prevagen Products. By agreement of the parties to that action, *Miloro* was stayed for much of the past four years but Quincy produced the documents that were produced in the *FTC* Action and the *Racies* matter. In February 2017, the *Vanderwerff* and *Karathanos* actions were filed on behalf of New Jersey and New York consumers, respectively. Although those cases were originally filed in the District of New Jersey and the Eastern District of New York, they were eventually transferred to the Southern District of New York. Meanwhile, motions to dismiss have been fully briefed in *Vanderwerff* and *Karathanos* remains pending. In 2018, the *Spath* action was filed in the District of New Jersey on behalf of New Jersey purchasers of Prevagen Products. The *Spath* case was also subsequently transferred to the Southern District of New York. On June 3, 2020, Judge Ronnie Abrams in the Southern District of New York stayed the *Vanderwerff*, *Karathanos*, and *Spath* actions pending approval of this Settlement. The parties to these actions engaged in extensive settlement efforts, including several mediation sessions before Hon. Wayne Andersen (Ret.), and multiple in-person negotiations between Quincy and those plaintiffs' Counsel. Ultimately, an agreement-in-principle was reached, but was conditioned on FTC enforcement action that did not take place.

In February 2019, the *Engert* action was filed in the Western District of Texas seeking to represent Texas (and alternatively nationwide) purchasers of Prevagen Products. The *Engert* court denied Quincy's Motion to Dismiss on October 8, 2019.

Defendant **twice** unsuccessfully moved the Judicial Panel on Multidistrict Litigation to coordinate the then-pending Prevagen Actions before a single federal district court. Both attempts were extensively briefed and litigated by all of the parties.

Counsel for the Parties, along with counsel from all of the other Prevagen Actions, participated in multiple mediation sessions with the Honorable John W. Thornton (Ret.) on April 22, May 4, May 21, and May 26, 2020. Before, during, and after the mediation, the Parties engaged in a series of discussions, with and without Judge Thornton, regarding a settlement of the Prevagen Actions, including substantial arm's-length negotiations. The result was this Settlement, culminating with this Settlement Agreement, which includes the settlement of this and all Prevagen Actions in their entirety.

Plaintiffs filed an Amended Motion for Preliminary Approval on June 24, 2020 [ECF No. 147]. On June 24, 2020, Plaintiffs also filed a Second Amended Complaint to conform the Class definition to the Settlement Class and add additional Defendants. [ECF No. 144-1]. This Court did not simply grant preliminary approval, as requested by the parties. Instead, after an extensive hearing on the Amended Motion for Preliminary Approval, on July 2, 2020, this Court required the Parties to file, by July 20, 2020, extensive supplemental briefing further explaining the real benefits and value of the proposed injunctive relief, representing if Quincy was going to continue to rely on the "Madison Memory Study" and requiring examples of orders in other class action cases involving alleged fraudulent misrepresentations where similar injunctive relief was approved. [ECF No. 153].

Plaintiffs responded on July 10, 2020, providing all of the requested information to the Court. [ECF No. 154]. Quincy responded on July 16, 2020. [ECF No. 155]. Specifically, Class Counsel demanded (and obtained) an important concession, namely, that any reference to the "Madison Memory Study" include the specific disclaimer that it was "based on a clinical study of subgroups of individuals" and "based on results of two subgroups of individuals." [ECF No. 154] at 4. This important disclaimer directly addresses issues raised not only in this case, but in a prior FDA investigation into Prevagen's marketing practices, where the FDA asserted that Quincy's marketing of the "Madison Memory Study" was improper. *Id.*, at 4–5. Class Counsel believe that the new marketing disclaimers should pass muster under the FDA's "competent and reliable scientific evidence" test. *Id.*, 6. Further, Quincy made clear that it produced discovery in this action regarding two additional studies (among other things), the "MS Hope Study" and the "Fibromyalgia/Chronic Fatigue Study," which it also contends will meet the FDA's "competent and reliable scientific evidence" test. [ECF No. 155] at 10–11. These additional disclosures will enable all consumers nationwide (the aggrieved parties) to make better-informed decisions regarding whether or not to continue purchasing Prevagen Products. Numerous Class Members contacted Class Counsel and stated that they had positive opinions regarding Prevagen and intended to continue purchasing the product.

The Court then preliminarily approved the Settlement on July 21, 2020. [ECF No. 158]. Thereafter, on July 1, 2020, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, KCC Legal Administration ("KCC"), the Court-appointed class action notice and claims administrator, caused 60 CAFA Notice Packets to be mailed via Certified U.S. Mail

to the U.S. Attorney General, the Attorneys General of every state and the District of Columbia. (Castillejos Decl., **Exhibit B**, at ¶ 2–3). To date, neither KCC nor the parties have *received a single inquiry* regarding the Settlement from the CAFA Notice. (*Id.* at ¶ 4.)

## 2. The Settlement Terms and Agreement

### A. *The Proposed Class*

The Settlement provides relief to all individuals who purchased one or more Prevagen Products from a Settling Defendant (defined in the Settlement Agreement) or from one of its authorized resellers, for personal consumption and not resale, within the United States, from January 1, 2007, through the date of Preliminary Approval. This Class Period is *longer* and *larger* than the class period that was certified by this Court and thus provides even more benefits to the nationwide (rather than just Florida) Settlement Class members.

### B. *Monetary and Other Relief*

The Settlement affords Settlement Class Members important monetary relief and injunctive relief. Specifically, the Settlement Agreement provides that:

A.      The Settling Defendants (as defined in the Settlement Agreement) shall offer refunds to Settlement Class Members for purchases of Prevagen Product(s) based upon a two-tier monetary relief structure to be distributed subject to the following Claims Process:

        1.      The Settling Defendants agree to pay to all Settlement Class Members with Proof of Purchase who submit a valid "Claim Form," a cash refund of 30% of the Quincy MSRP for the Prevagen Products those claimants purchased within the Class Period, **up to $70 per individual claimant.** These claims will be referred to herein as "Proof of Purchase Claims," and each such claimant a "Proof of Purchase Claimant";

        2.      The Settling Defendants agree to pay to all Settlement Class Members without Proof of Purchase who submit a valid "Claim Form" a cash refund of 30% of the Quincy MSRP for the Prevagen Products those claimants purchased within the Class Period, **up to $12 per claimant.** These claims will be referred to herein as "No Proof Claims," and each such claimant a "No Proof Claimant";

B.      The Parties also stipulated to the following injunctive relief:

        The Settling Defendants agree that they will not make, or assist others in making, expressly or by implication, including through the use of a product name, endorsement, testimonial, depiction, or illustration, any representation that such Covered Product with respect to humans:

> A. improves memory;
>
> B. improves memory within 90 days or any other period of time; or
>
> C. reduces memory problems associated with aging;

unless the representation is non-misleading. A representation is non-misleading if, at the time of making such representation, the Settling Defendants possess and rely upon competent and reliable scientific evidence substantiating that the representation is true, or if the representation is clearly and conspicuously qualified by either:

> a.    A disclaimer substantially similar to the following: "Based on a clinical study of subgroups of individuals who were cognitively normal or mildly impaired. This product is not intended to diagnose, treat, cure, or prevent any disease."; or
>
> b.    A disclaimer substantially similar to the following: "Based on results from two subgroups of individuals who participated in a randomized double-blind placebo controlled clinical study. Participants in the two subgroups were cognitively normal or mildly impaired. This product is not intended to diagnose, treat, cure, or prevent any disease."

### C.  *Release of Claims against Defendant*

In exchange for the Settlement relief, members of the Settlement Class will release the Settling Defendants from all claims, as outlined in the Settlement Agreement.

### D.  *Claims Process*

To obtain relief from Settling Defendants, Settlement Class Members are required to submit a simple claim form electronically via the Settlement Website or via mail. The claims will be reviewed by the Claims Administrator, which will work with the Parties to confirm whether those who timely file a claim are members of the Settlement Class. The Class Action Settlement Administrator shall then pay all eligible claimants with approved claims.

### E.  *Class Counsel Fees and Expenses and Named Plaintiffs' Case Contribution Award*

The Court has already designated the law firms of The Moskowitz Law Firm, PLLC and Searcy Denney Scarola Barnhart & Shipley P.A., to serve as Co-Lead Class Counsel for the Settlement Class. *See* Preliminary Approval Order. Pursuant to Section 14 of the Settlement Agreement, Class Counsel's application for attorneys' fees and expenses shall not exceed four million two hundred fourteen thousand dollars ($4,214,000.00). [ECF No. 147-1 at ¶ V]. Defendant have also agreed to not oppose an application for a case contribution award not to exceed $10,000 each to Class Representatives Juan Collins and John Fowler for taking on the

risks of litigation, and for Settlement of their individual claims as a Settlement Class Member in this Action. Defendant shall not oppose an award of $2,000 each to Additional Plaintiffs Philip Racies, Elaine Spath, John Karathanos, James Vanderwerff, Max Engert, Jack Purchase, Ronald Atkinson, and Diana Miloro for their participation as the putative class representatives in the Prevagen Actions. *Id.* The Court will consider whether to grant or deny these awards ***separate and apart*** from its analysis of the fairness, reasonableness, and adequacy of the settlement, and in light of recent Eleventh Circuit case law. *Id.*; *see also* section II.B, *infra*.

4.     Preliminary Approval and Settlement Administration

     After the Court preliminarily approved the Settlement and certified the proposed Settlement Class, it ordered the parties to implement the Notice plan. [ECF No. 158 at ¶ 9]. The Settlement Administrator, KCC disseminated the notice as required by the Preliminary Approval Order and in the form of the notice attached as Exhibit B to the Settlement Agreement. The manner of notice included (i) internet notice, (ii) establishment of a Settlement website, and (iii) direct mail (along with a Claim form) or email to currently available addresses that have been provided to Quincy through Quincy websites or via email by potential Prevagen consumers. KCC obtained Settlement Class Member records from Defendant, including the last-known mailing addresses for all persons meeting the Settlement Class definition. (Castillejos Decl., ¶ 5.) KCC updated the mailing list and standardized the address information using the National Change of Address Database. *Id.* KCC mailed a total of 140,202 mail notices. *Id.* ¶ 6. KCC also activated the Settlement website *id.* at ¶ 12, and, on August 28, 2020, commenced an internet notice campaign. *Id.* ¶ 11. The websites the settlement appeared on included AARP.com, Aol.com, HuffingtonPost.com, Investing.com, TheHill.com, and USAToday.com. A toll-free telephone line that is accessible 24 hours a day, seven days a week for Class Members who seek additional information. *Id.* ¶ 13.

     The deadline for opt-outs or objections is October 27, 2020. As of the date of this filing, KCC has received only 7 valid opt-out requests, representing only 0.000002% of the Settlement Class, and counsel has received only one objection. *Id.* ¶¶ 15–16.

## LEGAL ARGUMENT

## I.     THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

     Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient

utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

Courts in this circuit consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) complexity, expense and duration of litigation; (3) the stage of proceedings at which the settlement was achieved; (4) the likelihood of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *See Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 691-94 (S.D. Fla. 2014). "In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith,* 926 F.2d 1027, 1028 (11th Cir. 1991)). Analysis of these factors compels the conclusion that this Court should approve the Settlement.

## A. The Prevagen Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

The first factor for final approval requires this Court to consider whether the Settlement was obtained by fraud or collusion among the parties and their counsel. Courts begin with a presumption of good faith in the negotiating process. *See Saccoccio,* 297 F.R.D. at 692 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion"); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement"). The Settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in an intensive mediation with the Honorable John W. Thornton, a well-respected mediator with significant experience resolving complex cases. Judge Thornton conducted multiple mediation sessions in Spring 2020.[4]

---

[4] *See* Joint Declaration of Adam Moskowitz and John Scarola in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, Notice Regarding Service Awards and Incorporated Memorandum of Law at ¶ 18. ("Joint Decl.") (attached as **Exhibit C**)

The parties, through regular telephonic sessions and email communications, and with the assistance of Judge Thornton, negotiated first the terms of an initial memorandum of understanding and then a final Settlement Agreement. *Id*. Judge Thornton has significant experience mediating complex commercial suits to resolution, and was involved in every step of the process. *Id*. ¶¶ 18, 40. The very fact of his involvement weighs in favor of approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion). The parties' negotiations were also informed by considerable discovery obtained by Class Counsel in litigating these claims.

## B. The Issues Presented Were Highly Complex and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.

This case involves complex legal claims and defenses brought on behalf of three million Settlement Class Members, and includes claims for complex deceptive trade practices claims and common law unjust enrichment. [ECF No. 144-1.] Litigating these claims would have undoubtedly proven difficult and consumed significant time, money, and judicial resources. Even if Plaintiffs were ultimately to have prevailed in this litigation (which Quincy contests), that success would likely have borne fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars by both sides. (Joint Decl. ¶¶ 44–45); s*ee, e.g., In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd,* 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

By contrast, the Settlement provides immediate and substantial monetary relief to the Settlement Class, with payments approximating a significant percentage of Settlement Class Members' actual damages. (Joint Decl. ¶¶ 51–54.) This recovery is extremely favorable, and constitutes an excellent result. *See, e.g., Beber et al. v. Branch Banking & Trust Co. et al.*, No. 15-cv-

23294 (S.D. Fla.) (ECF No. 109) (approving similar settlement with payment percentages of 10%, 8%, and 5%); *Saccoccio,* 297 F.R.D. at 693 (return of 12.5% of premiums charged for FPI with prospective relief "very likely exceeds what Plaintiffs could have won at trial"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (range of 9% to 45% of damages was an "exemplary" result). These benefits come without the expense, uncertainty, and delay of litigation. In light of the costs, uncertainties, and delays of litigating through trial—possibly an appeal—"the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

### C. The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Settlement.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Prior to Settlement, Class Counsel and their co-counsel had been litigating claims related to Quincy and Prevagen for over three years, including a trial where the jury considered the claims and evidence similar to those at issue in all of the Prevagen Actions, and familiarized themselves thoroughly with the facts of this matter. (Joint Decl. ¶¶ 36.) This knowledge led the parties to enter into Settlement discussions. Further, before, during, and after mediation, Class Counsel confirmed details regarding Quincy's marketing and sales of Prevagen, the Class members affected, and the amount at stake to ensure the Settlement was fair and complete, and to confirm the value of the relief provided to the Settlement Class. *Id.* ¶¶ 37–39.

### D. Plaintiffs Faced Significant Obstacles to Obtaining Relief.

"[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"). Class Counsel and Plaintiffs believe they have a compelling case, but also

11

recognize that Quincy would have raised significant defenses to all claims. *See e.g.* ECF Nos. 138–140. Although Plaintiffs and Class Counsel maintain that these defenses lack merit, had litigation continued, Plaintiffs and Settlement Class Members would have risked not prevailing on their claims. (Joint Decl. ¶¶ 4, 43–47). Had the parties continued to litigate, Plaintiffs could have stood to recover nothing on behalf of a nationwide Class.

### E. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.

As explained above, the Settlement offers over $36 million in just monetary benefits[5] to the Settlement Class, as well as prospective relief and separately paid attorneys' fees. This will make available a significant percentage of claimants' actual potential damages, which meets and likely exceeds the standards established by this and other courts. (Joint Decl. ¶¶ 51–54); *see, e.g., Behrens v. Wometco Enter. Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate . . . A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of settlement is . . . a yielding of absolutes and an abandoning of highest hopes").

Similarly, in *LiPuma v. American Express Co.,* 406 F. Supp. 2d 1298 (S.D. Fla. 2005), this Court found that a settlement that recovered 8.1% of the possible damages was fair, adequate, and reasonable. When valuing the total recovery, this Court included the cash fund, the proposed value of the prospective relief, and the costs of notice and administration. *Id*. at 1322. This Court focused on "the possible recovery at trial" and evaluated the settlement in its "totality" and not on a "claim-by-claim" or "dollar-by-dollar" basis. *Id*. Further, the presence of "strong defenses to the claims" makes lower recoveries more reasonable, *id*; *see also Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346 ("standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."),[6]

---

[5] This amount is the lowest valuation as it assumes that three million Settlement Class members would only make a claim for the lower tier ($12) recovery, however, the maximum monetary value of the settlement is much higher. (Joint Decl. at ¶ 35)

[6] *See also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (holding a 5.6% recovery was fair and adequate in view of the risks of further litigation and litigation objectives).

and "when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at \*12 (S.D.N.Y. Sept. 16, 2011) (citation and quotations omitted).

Here, the Settlement Agreement provides that all Settlement Class Members are eligible to receive a cash payment of 30% of the manufacturer's suggested retail price subject to a cap of $12 or $70 depending on whether the Settlement Class member provides a proof of purchase. [ECF No. 147-1 ¶ IV.] Moreover, all Settlement Class Members who submit a valid claim form will recover a cash payment regardless of whether the Settlement Class member provides any proof of purchase. This supports a finding of reasonableness here. Quincy admittedly does not know the name and address of each purchaser of over the counter Prevagen.

The fact that the parties agreed to a "claims-made" settlement does not render its terms unreasonable and, in some cases, it is a better result. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.").[7]

The Settlement will also provide valuable prospective relief to the Settlement Class. (Joint Decl. ¶¶ 2, 26.) The Settlement Agreement ensures that any reference to the "Madison Memory Study" include the specific disclaimer that it was "based on a clinical study of ***subgroups*** of individuals" and "based on results of ***two subgroups*** of individuals". *See* [ECF No. 147-1 at ¶ IV.A]. This revised disclaimer directly addressed the concerns of the FTC and provides value for all consumers so they can make better-informed decisions in terms of their

---

[7] *See also Casey v. Citibank*, No. 12-cv-820 (N.D.N.Y.) (D.E. 222 at ¶ 6) (approving virtually identical claims-made settlement and finding that regardless of the take rate, "[t]he settlement confers substantial benefits upon the Settlement Class members, is in the public interest, and will provide the parties with repose from litigation."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (discussing claims-made settlement and affirming contingency fee award based on total possible recovery); *Shames v. Hertz Corp.*, 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (approving claims-made settlement over objections because "there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements") (citations omitted); *Lemus v. H & R Block Enters. LLC,* No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at \*5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion).

purchase. There have been many consumer class action settlements where final approval was granted (and upheld on appeal) that included similar injunctive relief to the marketing representations made by the defendant. *See Marty v. Anheuser-Busch Companies, LLC*, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015); *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 25 (E.D. N.Y. 2019); *Hazlin v. Botanical*, 2015 WL 11237634 (S.D. Cal. May 20, 2015); *Bezdek v. Vibram USA Inc.*, 809 F.3d 78 (1st Cir. 2015); *Arnold v. Fitflop USA LLP*, 2014 WL 1670133 (S.D. Cal. Apr. 28, 2014); *Weeks v. Kellogg Company*, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013); *Nigh v. Humphreys Pharmacal, Inc.*, No. 2013 WL 5995382, at *2 (S.D. Cal. Oct. 23, 2013); *United States v. Washington Mint,*115 F. Supp. 2d 1089, 1105 (D. Minn. 2000).

These courts have all found that such relief had "value" for the class and was supported by "competent and reliable scientific evidence." *Id*. Moreover, courts have routinely found in many finally-approved consumer class action settlements that adding disclaimers to packaging provided significant benefits to class members. *Id*. These results are clearly reasonable.

## F.  The Opinions of Class Counsel, the Class Representatives, and Absent Class Members Strongly Favor Settlement Approval.

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiffs will adequately represent the Class in this action, and its conclusion was warranted. *See* Preliminary Approval Order.

Class Counsel litigated this matter aggressively and competently, reviewed tens of thousands of documents, obtained a certified litigation class, and fully support the Settlement. Further, all counsel in the Prevagen Actions also support this Settlement as well. Based on this specific experience, and decades of experience in litigating consumer class action lawsuits, it is Class Counsel's informed opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. (Joint Decl. ¶ 95.)

As of October 12, 2020, of the approximate 3,000,000 Settlement Class members, KCC has received only seven valid opt out requests and Class Counsel received one objection. (Castillejos Decl. ¶¶ 15–16.) This overwhelming support is evidence of the Settlement's fairness. *See, e.g., Saccoccio*, 297 F.R.D. at 694 (opposition amounting to .018% of the class was termed as "low resistance to the settlement" and weighed "in favor of approving the settlement.");

*Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices). Viewed either independently or taken together, the above factors confirm that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

## II.   THE COURT SHOULD AWARD REASONABLE FEES AND COSTS AND RESERVE JURISDICTION ON THE REQUESTED SERVICE AWARDS.

For their extensive work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, and the litigation of the Prevagen Actions throughout the country, Class Counsel seek less than 12% of the settlement value made available to the Settlement Class or the amount of four million two hundred fourteen thousand dollars ($4,214,000.00) in attorneys' fees and expenses, excluding the valuable and important prospective relief.

### A.   The Court Should Award the Requested Attorneys' Fees and Expenses.

Class Counsel is entitled to attorneys' fees for the benefit obtained in the Settlement. *See Saccoccio*, 297 F.R.D. at 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Casey*, No. 12-cv-00820 (N.D.N.Y.) (D.E. 223); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 676 (1980); *David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower. *See Poertner*, 618 Fed. App'x at 630; *Saccoccio*, 297 F.R.D. at 695; *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir. 1999); *see also Lee v. Ocwen Loan Servicing, LLC,* 2015 WL 5449813, at *18 (S.D. Fla. Sept. 14, 2015) (Goodman, M.J.) ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims."); *Casey*, No. 12-cv-00820 (N.D.N.Y.) (D.E. 221) (the amount of claims

made is "irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate").

"[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added; awarding fees of 31½% of settlement fund). Here, the requested percentage falls well below the range provided by the Eleventh Circuit. *See Camden I,* 946 F. 2d at 774 (20%–50% of the value provided); *David*, 2010 WL 1628362 at *8 n.15 (20%-50% of common fund is "the customary fee in class actions that result in substantial benefits").

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class action counsel are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. This Court may also consider the time required to reach settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* support the full award requested.

### 1. The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the 12% Award.

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto*, 513 F. Supp. 2d at 1339. These factors weigh in favor of awarding Class Counsel approximately 12% of the lowest value of the cash benefits obtained. Class Counsel received no compensation during the course of this litigation and incurred expenses on behalf of the Class, which they risked losing had Quincy prevailed. (Joint Decl. ¶¶ 85–90.) From the time Class Counsel filed suit, there was a real possibility Class Counsel would receive no compensation, whatsoever.

16

### 2.  The Fee Request Reflects the Market Rate in Complex, Contingent, Litigation.

A fee of approximately 12% of the cash value is below the market for class actions. *See Saccoccio*, 297 F.R.D. at 695 ("20-30% fee that is customary in common fund cases."). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract directly with their clients for contingent fees between 25% and 33%. These percentages are the prevailing market rates throughout the United States for contingent representation. *See id.* at 1341 (citing, *inter alia*, *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)). In making a determination of what constitutes a fair fee, this Court should be guided by such awards.[8] A fee of approximately 12% of the total monetary benefits is well below the range of the customary fee awarded in common fund cases. *See, e.g., Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749 at (D.E. 178) (awarding 16% of the total monetary benefits).

### 3.  The Novelty and Difficulty of the Questions at Issue

As previously mentioned, this case presents novel questions of law and issues of fact. Class action matters are generally complex. Quincy's defenses regarding differences in representations, amounts of purchase, and reasons for which consumers purchased Prevagen, the different federal and state laws at issue, and the formulation of a damages methodology led to significant briefing on class certification and would have led to further briefing on the merits, at trial, post-trial, and on appeal. (Joint Decl. at ¶¶ 3, 44, 67, 75, 84). Moreover, Quincy also moved for summary judgment. *Id.* Thus, even though Class Counsel successfully reached a settlement with Quincy, the difficulty and associated risk of mastering and litigating these issues amply supports the full award requested. *Id*.

### 4.  The Skill, Experience, and Reputation of Class Counsel

This litigation required a high degree of skill and experience. Class Counsel have

---

[8] *See also, e.g., Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding one-third of the common fund); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters*, 190 F.3d 1291 (affirming 33-1/3%).

established their skill, experience, and reputation in the record, and in repeated cases before this court. (Joint Decl. at ¶ 76–78); Firm Resumes at [ECF No. 147-2]. Class Counsel have many years of experience successfully litigating nationally recognized class actions. Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by Quincy detailed above. The quality of Class Counsel and their achievement in this case is equally shown by the strength of their opponents, Kelly Drye & Warren LLP and Genovese Joblove & Battista, P.A., who are excellent defense firms. (Joint Decl. at ¶ 78). This factor thus also favors awarding the requested fee.

### 5. The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award and here, it is significant and perhaps best establishes the propriety of the requested fee award. *See Hensley v. Eckerhart,* 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547–48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and prospective relief. *See Poertner*, 618 Fed. App'x at 629; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *LiPuma,* 406 F. Supp. 2d at 1323. The results here, of more than $36 million in cash and the prospective relief, are excellent. Quincy is required to provide meaningful disclaimers on their products and other injunctive changes. These results are powerful evidence supporting the fee award.

### 6. The Time and Labor of Class Counsel

Investigating, prosecuting, and settling the claims here demanded time and labor. (Joint Decl. ¶¶ 70–75). The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent many hours investigating the claims of many potential plaintiffs against Defendants in this action. *Id*. Plaintiffs' counsel investigated their claims and allegations through extensive discovery, including the review of thousands of pages of documents and the depositions of key Quincy personnel as well as expert discovery. Further, this Court held an over five-hour hearing on Plaintiffs' motion for certification. [ECF No. 84]. After considering additional post-hearing briefing, Magistrate Judge Goodman entered a Report and Recommendation certifying a

Florida class of Prevagen purchasers. [ECF No. 119]. This work required a significant amount of resources.

### 7. The Reaction of the Class to the Settlement.

To date, the parties have received one objection and only seven valid opt-out requests, which supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343; (Castillejos Decl. ¶¶ 15–16.)

### B. Notice Regarding Service Awards.

Plaintiffs and Class Counsel hereby acknowledge that, after the original Settlement Agreement and Release was executed and this Court's entry of the Preliminary Approval Order, a panel of the United States Court of Appeals for the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions*, *LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), holding that service awards for class action representatives are impermissible.[9] Although the Settlement Agreement makes clear that the settlement is in no way conditioned upon the granting of any service awards [ECF No. 147-1 at ¶V.], Plaintiffs and Class Counsel hereby submit that this Court should reserve jurisdiction regarding awarding service awards for Plaintiffs, unless and until the ruling in *NPAS* prohibiting service awards is reversed *en banc*, vacated, or overruled on or before the Final Fairness Hearing. Class Counsel will advise this Court of the status of *NPAS* prior to the Final Fairness Hearing.

To the extent it is still binding on this Court at the time of final approval, the Parties respectfully submit that this Court still approve the Settlement and all of its terms, but not approve the service awards and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS*. *See Metzler, et al. v. Medical Mgmt. Int'l Inc., et al.*, 2020 WL 5994537 (M.D. Fla. Oct. 9, 2020)

---

[9] *NPAS* will not become binding precedent until issuance of the mandate (which has not yet occurred, nor has rehearing *en banc* yet occurred). *See, e.g., Nat. Res. Def. Council, Inc. v. County of Los Angeles*, 725 F.3d 1194, 1203–04 (9th Cir. 2013), *certiorari denied*, 572 U.S. 1100 (2014) (explaining that "[n]o opinion of this circuit becomes final until the mandate issues");*esee also* Fed R.App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not final until issuance of the mandate[.]")); *Key Enters. of Del., Inc. v. Venice Hosp.,* 9 F.3d 893, 898 (11th Cir. 1993) ("[B]ecause the panel's mandate had not issued, the panel's decision was never the 'law of the case.'"). Appellees in *NPAS* have indicated they will to seek rehearing *en banc*.

(reserving jurisdiction to award service awards if *NPAS* is reversed). Class Counsel could then "move for reconsideration upon such a reversal." *Id.*

However, should *NPAS* be reversed, vacated, or overruled, this Court should approve the service awards for the Representative Plaintiffs. The Notice advised Settlement Class Members that the Plaintiffs would apply for a service awards not to exceed $10,000 each to Class Representatives Juan Collins and John Fowler for taking on the risks of litigation, and for Settlement of their individual claims as a Settlement Class Member in this Action. Further, the Notice disclosed that an application for an award of $2,000 each to Additional Plaintiffs Philip Racies, Elaine Spath, John Karathanos, James Vanderwerff, Max Engert, Jack Purchase, Ronald Atkinson, and Diana Miloro for their participation as the putative Class Representatives in the Prevagen Actions will be made.

In instituting this litigation, the Representative Plaintiffs and Plaintiffs in the Prevagen Actions have acted as a private attorneys general seeking a remedy for what appeared to be a public wrong. *See Pinto,* 513 F. Supp. 2d at 1344. The Class Representatives aided in the investigation of these claims and settlement. (Joint Decl. ¶¶ 62-68.) Private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public. *See Pinto,* 513 F. Supp. 2d at 1344. Approval of this award is warranted as a matter of policy and is appropriate under applicable precedents. *See Gevaerts v. TD Bank*, No. 2015 WL 6751061, at *9 (S.D. Fla. Nov. 5, 2015) (approving the requested service awards of $10,000); *Dorado v. Bank of Am., N.A.*, 2017 WL 5241042, at *7 (S.D. Fla. Mar. 24, 2017) (same); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886, at *14 (C.D. Cal. Feb. 6, 2019) (awarding $10,000 service awards to both class representatives and named plaintiffs).

## CONCLUSION

Plaintiffs and Class Counsel respectfully request that the Court grant final approval of the Settlement, as well as the application for Class Counsel's fees and expenses. Further, Plaintiffs and Class Counsel request that the Court grant the request for service awards should *NPAS* be reversed, vacated, or overruled by the time this Court enters its final order approving the settlement, or alternatively deny the request and reserve jurisdiction for Plaintiffs and Class Counsel to move for reconsideration if *NPAS* is thereafter reversed, vacated, or overruled.

Dated: October 16, 2020                    Respectfully submitted,

                              By: */s/ Adam Moskowitz*
                                  Adam Moskowitz, Esq.
                                  Florida Bar No. 984280
                                  adam@moskowitz-law.com
                                  Howard M. Bushman, Esq.
                                  Florida Bar No. 0364230
                                  howard@moskowitz-law.com
                                  Joseph M. Kaye, Esq.
                                  Florida Bar No. 117520
                                  joseph@moskowitz-law.com
                                  **THE MOSKOWITZ LAW FIRM, PLLC**
                                  2 Alhambra Plaza
                                  Suite 601
                                  Coral Gables, FL 33134
                                  Telephone: (305) 740-1423

                                  Jack Scarola, Esq.
                                  Florida Bar No. 169440
                                  jsx@searcylaw.com
                                  **SEARCY DENNEY SCAROLA
                                  BARNHART & SHIPLEY PA**
                                  2139 Palm Beach Lakes Blvd.
                                  West Palm Beach, FL 33409
                                  Telephone: (561) 686-6300
                                  Fax: (561) 383-9451

                                  *Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system, which will serve a copy of same on all counsel of record.

                              By: */s/  Adam M. Moskowitz*
                                  Adam M. Moskowitz