# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 19-22864-Civ-COOKE/GOODMAN

JUAN COLLINS and JOHN FOWLER,
on behalf of themselves and all others
similarly situated,

    Plaintiffs,
v.

QUINCY BIOSCIENCE, LLC,
a Wisconsin limited liability company,

    Defendant.
_____/

**DECLARATION OF ADAM MOSKOWITZ AND JOHN SCAROLA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES, NOTICE REGARDING SERVICE AWARDS AND INCORPRATED MEMORANDUM OF LAW**

We, ADAM MOSKOWITZ and JOHN SCAROLA declare as follows:

1. We are Co-Lead Settlement Class Counsel, and counsel of record for Plaintiffs and the proposed Settlement Class in this action ("Class Counsel"), and we respectfully submit this Declaration in support of Plaintiffs' Motion for Final Approval of Settlement, Class Counsel's Application for Attorneys' Fees, Notice Regarding Service Awards, and incorporated Memorandum of Law. Except as otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2. In June 2020, after months of hard-fought, arm's-length negotiations, Plaintiffs and Defendants executed the Settlement Agreement and Release ("Agreement") under which Defendants have agreed to make available more than $36 million in cash benefits to Class

Members who submit a valid claim form, as well as significant injunctive relief.[1] We are proud to seek final approval and the reaction from the Class to date has been outstanding.

3. Plaintiffs maintain that the claims asserted in this matter are meritorious, a motion for class certification was successful (and would be upheld on appeal), Defendants' attempt to dismiss this action or win summary judgement would be unsuccessful, and Plaintiffs would prevail if this matter proceeded to trial. This case involved sharply opposed positions on several fundamental and dispositive legal and factual issues. The ultimate success of the litigation required Plaintiffs to prevail, in whole or in part, on *all* of these issues. Conversely, Defendants' success on any one of these issues could have spelled defeat for Plaintiffs and the Settlement Class. Therefore, continued litigation would have presented significant risks to attaining a successful judgment, as well as the time and expense associated with proceeding to trial, the time and expense associated with appellate review, and the countless uncertainties of litigation, particularly in the context of a large and complex litigation.

4. In light of the risks presented by continued litigation, and taking into account the substantial benefits extended to Settlement Class Members under the terms of the Settlement Agreement, the Settlement not only provides fair and adequate compensation to Settlement Class Members, it also represents a significant achievement benefitting the Settlement Class.

**I.     The Litigation**

5. Plaintiff Collins commenced this Action by filing a Class Action Complaint and Demand for Jury Trial on July 11, 2019. [ECF No. 1]. Plaintiff Collins and Plaintiff Fowler filed an Amended Class Action Complaint and Demand for Jury Trial on September 11, 2019. [ECF No. 15].

6. After reviewing the information and discovery produced in the *Racies* action (see below), as well as consulting with their own experts, Plaintiffs filed a comprehensive motion for class certification on September 17, 2019. [ECF No. 21]. The Court referred that

---

[1] All capitalized terms have the same meaning as defined in the Agreement attached as Exhibit A to Plaintiffs' Motion for preliminary approval. [ECF No. 147-1]. Any capitalized terms not defined there are defined herein.

motion to this Court for a report and recommendation. [ECF No. 23]. After Plaintiffs filed their class certification motion, Plaintiffs and Quincy filed 20 additional submissions through the course of discovery and class proceedings to fully brief the motion. R&R at 5–6 (citing submissions).

7. On September 25, 2019, Quincy moved to dismiss this Action. [ECF Nos. 25, 27–29, 34, and 89]. Quincy's motion to dismiss is currently pending.

8. Plaintiffs and Quincy conducted extensive discovery, including the depositions of both Plaintiffs Collins and Fowler, the corporate representative deposition of Quincy, depositions of Quincy's Chief Financial Officer and Market Development Director, and the exchange of substantial document requests, in response to which Quincy produced approximately 40,077 documents consisting of over 160,000 pages, requests for admissions and interrogatories. Plaintiffs also issued third party subpoenas to Florida retailers regarding their Florida sales of Prevagen and FOIA requests to the FDA. ECF Nos. 54-6 (Walmart), 56 (Amazon and The Vitamin Shoppe), 72 (The Vitamin Shoppe).

9. This Court held an over 5-hour hearing on Plaintiffs' motion for certification. [ECF No. 84] After considering additional post-hearing briefing, this Court entered a Report and Recommendation certifying a Florida class of Prevagen purchasers. [ECF No. 119]. Quincy filed objections to the R&R, which Plaintiffs opposed and which are currently pending before Judge Cooke for decision. [ECF Nos. 129–130].

10. On May 29, 2020, Quincy filed a motion for summary judgment. [ECF Nos. 138-141].

11. In addition to this matter, as of the date of this Settlement, Prevagen Actions were previously filed and/or pending throughout the country. *Racies,* filed in the Northern District of California in February 2015, was the first-filed class action brought in the country against Quincy alleging deceptive marketing and sales of Prevagen.

12. In December 2017, the Court granted certification of a California class of Prevagen purchasers. *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2017 WL 6418910, at *1 (N.D. Cal. Dec. 15, 2017). After extensive litigation of pretrial issues, including summary judgment motions and *Daubert* motions, *Racies* was tried before a jury in January 2020; however, the district court declared a mistrial after a jury deadlock, and the California

3

class was later de-certified. *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2020 WL 2113852, at *1 (N.D. Cal. May 4, 2020).

13. In 2016, the *Miloro* matter was filed in Missouri state court on behalf of Missouri purchasers of Prevagen Products. By agreement of the parties to that action, *Miloro* was stayed for much of the past four years but Defendant produced all of the documents that were produced in the *FTC* Action and the *Racies* matter. The parties to that action engaged in extensive settlement efforts including several mediation sessions before Hon. Wayne Andersen (Ret.) and multiple in-person negotiations took place between Quincy and Miloro's Counsel. Ultimately, an agreement-in-principle was reached but was conditioned on FTC action that did not take place. At that time, in March 2020, the stay was lifted and Quincy filed a motion to dismiss which is still pending.

14. In February 2017, the *Vanderwerff* and *Karathanos* actions were filed on behalf of New Jersey and New York consumers, respectively. Although those cases were originally filed in the District of New Jersey and the Eastern District of New York, they were eventually transferred to the Southern District of New York. Meanwhile, motions to dismiss have been fully briefed in *Vanderwerff* and *Karathanos* and are still pending.

15. In 2018, the *Spath* action was filed in the District of New Jersey on behalf of New Jersey purchasers of Prevagen Products. The *Spath* case was also subsequently transferred to the Southern District of New York. On June 3, 2020, Judge Ronnie Abrams in the Southern District of New York stayed the *Vanderwerff*, *Karathanos*, and *Spath* actions pending approval of this Settlement.

16. In February 2019, the *Engert* action was filed in the Western District of Texas seeking to represent Texas purchasers of Prevagen Products (and alternatively a nationwide class of purchasers of Prevagen Products). The *Engert* court denied Quincy's Motion to Dismiss on October 8, 2019.

17. Defendant, twice, unsuccessfully moved the Judicial Panel on Multidistrict Litigation to coordinate the then-pending Prevagen Actions to a single court.

18. Counsel for the Parties, along with counsel from all Prevagen Actions, participated in multiple mediation sessions with the Honorable John W. Thornton (Ret.) on April 22, May 4, May 21, and May 26, 2020. Before, during, and after the mediation, the Parties engaged in a series of discussions, with and without Judge Thornton, regarding a

settlement of the Prevagen Actions, including substantial arm's-length negotiations. The result was this Settlement, which includes the settlement of the Action in its entirety and also all of the remaining Prevagen Actions, culminating with this Agreement.

19. Plaintiffs filed an Amended Motion for Preliminary Approval on June 24, 2020 [ECF No. 147]. After a hearing on the Amended Motion for Preliminary Approval, on July 2, 2020, this Court required the Parties to file by July 20, 2020 a Supplemental Brief further explaining the proposed injunctive relief, represent one way or another if Quincy is going to continue to rely on the Madison Memory Study as support for its marketing, and include examples of orders in other class action cases involving alleged fraudulent misrepresentations where injunctive relief was approved. [ECF No. 153]

20. On June 24, 2020, Plaintiffs also filed a Second Amended Complaint to conform the class definition to the Settlement Class and add additional Defendants.

21. Plaintiffs responded to the Court's directive on July 10, 2020, providing the requested information to the Court. [ECF No. 154]. Quincy responded on July 16, 2020. [ECF No. 155].

22. The Court then preliminarily approved the settlement on July 21, 2020 [ECF No. 158].

## II. The Settlement Terms and Agreement

### A. *The Proposed Class*

23. The Settlement provides relief to all individuals who purchased one or more Prevagen Products, from a Settling Defendant (as defined in the Settlement Agreement) or from a reseller authorized by the Settling Defendants to sell Prevagen Products, for personal consumption and not resale, within the United States, from January 1, 2007 through the date of Preliminary Approval.

### B. *Monetary and Other Relief*

24. The Settlement affords these Class Members monetary relief, and provides other injunctive relief to assist the Class Members.

25. The Settling Defendants (as defined in the Settlement Agreement) shall offer partial refunds to Settlement Class Members for purchases of Prevagen Product(s) based upon a two-tier monetary relief structure to be distributed subject to the following provisions of the Claims Process:

5

1. The Settling Defendants agree to pay to all Settlement Class Members with Proof of Purchase who submit a valid "Claim Form," a cash refund of 30% of the Quincy MSRP for the Prevagen Products those claimants purchased within the Class Period, **up to $70 per individual claimant.** These claims will be referred to herein as "Proof of Purchase Claims," and each such claimant a "Proof of Purchase Claimant";

2. The Settling Defendants agree to pay to all Settlement Class Members without Proof of Purchase who submit a valid "Claim Form" a cash refund of 30% of the Quincy MSRP for the Prevagen Products those claimants purchased within the Class Period, **up to $12 per claimant.** These claims will be referred to herein as "No Proof Claims," and each such claimant a "No Proof Claimant";

26. The Parties also stipulated to the following injunctive relief:

    The Settling Defendants agree that they will not make, or assist others in making, expressly or by implication, including through the use of a product name, endorsement, testimonial, depiction, or illustration, any representation that such Covered Product with respect to humans:

    A. improves memory;
    B. improves memory within 90 days or any other period of time; or
    C. reduces memory problems associated with aging;

    unless the representation is non-misleading. A representation is non-misleading if, at the time of making such representation, the Settling Defendants possess and rely upon competent and reliable scientific evidence substantiating that the representation is true, or if the representation is clearly and conspicuously qualified by either:

    a. A disclaimer substantially similar to the following: "Based on a clinical study of subgroups of individuals who were cognitively normal or mildly impaired. This product is not intended to diagnose, treat, cure, or prevent any disease."; or

    b. A disclaimer substantially similar to the following: "Based on results from two subgroups of individuals who participated in a randomized double-blind placebo controlled clinical study. Participants in the two subgroups were cognitively normal or mildly impaired. This product is not intended to diagnose, treat, cure, or prevent any disease."

6

### C. *Release of Claims against Defendant*

27. In exchange for the settlement relief, members of the Settlement Class will release the Settling Defendants from all claims as outline in the Settlement Agreement.

### D. *Claims Process*

28. To obtain relief from Defendant, Class Members will be required to submit a simple claim form electronically via the Settlement Website or by mail.

29. The claims will be reviewed by the Claims Administrator, who will work with Defendant to confirm whether those who timely file a claim are members of the Class.

30. The Class Action Settlement Administrator shall then pay all eligible claimants with approved claims.

### E. *Class Counsel Fees and Expenses and Named Plaintiffs Case Contribution Award*

31. The Court has already designated the law firms of The Moskowitz Law Firm, PLLC and Searcy Denney Scarola Barnhart & Shipley P.A., to serve as Co-Lead Class Counsel for the Settlement Class. *See* Preliminary Approval Order.

32. Pursuant to Section 14 of the Settlement Agreement, Class Counsel's application for attorneys' fees and expenses shall not exceed four million two hundred fourteen thousand dollars ($4,214,000.00). [ECF No. 147-1 at ¶ V.]

33. Defendant also agreed to not oppose an application for a case contribution award not to exceed $10,000 each to Class Representatives Juan Collins and John Fowler for taking on the risks of litigation, and for Settlement of their individual claims as a Settlement Class Member in this Action. Defendant shall not oppose an award of $2,000 each to Additional Plaintiffs Philip Racies, Elaine Spath, John Karathanos, James Vanderwerff, Max Engert, Jack Purchase, Ronald Atkinson, and Diana Miloro for their participation as the putative class representatives in the Prevagen Actions. *Id.*

34. The Court will consider whether to grant or deny these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the settlement. *Id.*

35. These amounts will be roughly 12% of the lowest potential value of the settlement's monetary benefits alone, not taking into account the valuable injunctive relief.

### III. Considerations Supporting Settlement

#### A. *There Was No Fraud or Collusion.*

36. Class Counsel negotiated the Settlement vigorously and at arm's-length. Plaintiffs were represented by experienced counsel at these arm's-length negotiations, including other counsel for the Prevagen Actions. Settlement negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial, and settlement of nationwide class action cases. In particular, Plaintiffs' counsel were well positioned to evaluate and negotiate this settlement because they have been actively litigating against Quincy in this and other fora for many years.[2]

37. Specifically, Class Counsel counsel investigated their claims and allegations through extensive discovery, including the review of thousands of pages of documents and the depositions of key Quincy personnel as well as expert discovery.

38. Class Counsel's investigation and review of the information provided by Defendants enabled Class Counsel to gain an understanding of the evidence related to central questions in the case, and prepared them for well-informed settlement negotiations.

39. Thus, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them.

40. Moreover, the mediation was overseen by the Honorable John W. Thornton, a highly experience jurist and prominent mediator. Judge Thonton has significant experience mediating complex commercial suits to resolution and was involved in every step of the process. The settlement negotiations and mediation sessions were, at all times, adversarial,

---

[2] All of the current pending Prevagen cases around the country are referred herein as the "Prevagen Actions." They include *Collins, et al. v. Quincy Bioscience LLC*, No. 19-22864-Civ-COOKE/GOODMAN (S.D. Fla.); *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, (N.D. Cal.) ("*Racies*"); *Vanderwerff v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-07582-RA (S.D.N.Y.) ("*Vanderwerff*"); *Karathanos v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-08023-RA (S.D.N.Y.) ("*Karathanos*"); *Spath v. Quincy Bioscience Holding Co., Inc., et al.*, Case No. 1:19-cv-03521-RA (S.D.N.Y.) ("*Spath*"); *Engert et al. v. Quincy Bioscience, LLC*, No. 1:19-cv-183-LY (W.D. Tex.) ("*Engert*"); and *Miloro v. Quincy Bioscience, LLC,* No. 16PH-cv01341 (Mo. Cir. Ct.) ("*Miloro*").

and conducted at arm's length. The mediation process and subsequent negotiations spanned many weeks.

      **B.**    *The Settlement Will Avert Years of Highly Complex and Expensive Litigation.*

41.    This case involves approximately 3,000,000 Settlement Class Members who who purchased Prevagen. The claims and potential defenses are complex; litigating them to resolution would have been difficult and time consuming. Although Plaintiffs' claims have been pending for over a year, recovery by any means other than settlement would require additional years of litigation in this Court and appellate courts. By contrast, the Settlement provides immediate and substantial benefits to the Settlement Class.

      **C.**    *The Factual Record Is Sufficiently Developed to Enable Plaintiffs and Class Counsel to Make a Reasoned Judgment Concerning the Settlement.*

42.    As discussed above, Class Counsel were well-versed in the operations of the Defendants through considerable discovery in this action prior to Settlement. This afforded Class Counsel important insight into the strengths and weaknesses of their claims against Defendants. Before settling, Class Counsel had already developed ample information and performed extensive analyses from which to assess the probability of success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.

      **D.**    *Plaintiffs Would Have Faced Significant Obstacles to Obtaining Relief.*

43.    Plaintiffs and Class Counsel are confident in the strengths of their case, but are also pragmatic in their awareness of the various defenses available to Defendants and the risks inherent to litigation. Indeed, at the time of settlement Defendants' Motion to Dismiss and Motion for Summary Judgement were pending.

44.    While Plaintiffs and Class Counsel believe they have a compelling case against Defendants, Class Counsel is mindful of the fact that Defendants would have advanced significant defenses that they would be required to overcome in the motion to dismiss, summary judgment, trial, and eventually on appeal on any merits and class certification. Class Counsel and Plaintiffs thus appreciate that, absent a settlement, it would have taken years of additional litigation – and overcoming vigorous legal and factual defenses – to bring the action to finality. Even then, the outcome would be uncertain. Given the myriad risks attending these claims, the Settlement cannot be seen as anything other than a fair compromise.

45. Another risk Plaintiffs have considered is the need for and reliance upon expert witnesses if the matter were to proceed to trial. To establish liability and damages in a case of this sort, expert testimony is essential. Because Plaintiffs' claims are premised on issues concerning the marketing and sale of Prevagen, the efficacy of Prevagen, and the calculation of damages for the Class, the litigation through trial would entail extensive (and expensive) evaluation and development of these complex issues. The acceptance of expert testimony by the Court or a jury is always far from certain, regardless how distinguished the source. Settlement of this action avoids the risk that Defendants' competing experts would prevail, resulting in a dispositive finding or ruling against Plaintiffs and the Class.

46. Indeed, courts have rendered opinions which illustrate the risks associated with these types of actions. In *Racies,* the action was tried before a jury in January 2020; however, the district court declared a mistrial after a jury deadlock, and the California class was later de-certified. *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2020 WL 2113852, at *1 (N.D. Cal. May 4, 2020).

47. Protracted litigation carries inherent risks and inevitable delay.

48. Plaintiffs and Class Counsel determined that the benefits of the Settlement reached with Defendants clearly outweigh the risks of continued litigation.

49. The Settlement provides substantial value to the Settlement Class. Such value is well within the range of reasonableness.

50. According to Defendants' records and Plaintiffs' calculations, the total value of the cash portion of the settlement is more than $36 million.

51. Here, the Settlement Agreement provides that all Class Members are eligible to receive a cash payment of 30% of the manufacturer's suggested retail price subject to a cap of $12 or $70 depending on whether the class member provides a proof of purchase. [ECF No. 147-1 ¶ IV.]

52. Moreover, all class members who submit a valid claim form will recover a cash payment regardless of whether the class member provides any proof of purchase documents.

53. The potential Class recovery of approximately $36 million represents between a significant portion of the Class Members' anticipated total recovery, depending on the final damages calculations of Plaintiffs' experts had the claims proceeded to trial.

54. Importantly, the percentage of the amount returned to Class Members in this settlement is of the MSRP price, and not based upon a percentage of the diminished value of the product.

55. In addition, Class Counsel have spent a year with their experts understanding the nature of the deceptive practice, the potential efficacy of the product, and the potential damages models which would need to be employed. The return here is eminently fair.

56. Finally, Defendants are mandated to provide meaningful disclaimers on their products and other injunctive changes which will provide real value to the Class and the consuming public.

### E. *The Settlement Amount Is Reasonable Given the Range of Possible Recovery.*

57. The Settlement provides substantial value to the Settlement Class. Such value is well within the range of reasonableness. Under the Settlement, Plaintiffs and the Settlement Class have recovered over $36 million in potential monetary relief, which represents between a significant percentage of the Class Members' anticipated total recovery, depending on the final damages calculations of Plaintiffs' experts.

58. While it is certainly possible that the maximum recoverable damages at trial for all claims could exceed the amount of the Settlement, this assumes complete acceptance of Plaintiffs' liability and damage evidence on a class-wide basis. Given the obstacles and uncertainties of continued litigation, Class Counsel believe the proposed settlement represents an outstanding recovery for the Class who otherwise may have not recovered anything.

59. The Settlement also helps Class Members by providing for significant and real injunctive relief.

### B. *The Opinions of Class Counsel, Class Representatives, and Absent Class Members Strongly Favor Approval of the Settlement.*

60. Class Counsel believe that this Settlement is extraordinary and clearly deserving of final approval. Moreover, opposition to the Settlement has been *de minimis*. As of October 12, 2020, KCC received no objections and 7 exclusion requests. (Castillejos Decl. ¶¶ 15–16). Class Counsel received one objection via email, which Class Counsel will address at the appropriate time.

11

## IV. Service Awards

61. Defendant also agreed to not oppose an application for a case contribution award not to exceed $10,000 each to Class Representatives Juan Collins and John Fowler for taking on the risks of litigation, and for Settlement of their individual claims as a Settlement Class Member in this Action. Further, Defendant shall not oppose an award of $2,000 each to Additional Plaintiffs Philip Racies, Elaine Spath, John Karathanos, James Vanderwerff, Max Engert, Jack Purchase, Ronald Atkinson, and Diana Miloro for their participation as the putative class representatives in the Prevagen Actions. If the Court approves the awards, they will be paid over and above the settlement amounts available for Class Members, and in addition to the relief the Class Representative will be entitled to under the terms of the Settlement.

62. Service awards compensate the Named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.

63. The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation.

64. The above factors, as applied to the Action, demonstrate the reasonableness of a service awards to the Class Representative. Among other things, the Class Representative took numerous actions and provided substantial assistance to Class Counsel by locating and forwarding documents and information, sitting for their depositions, and engaging in conferences with Class Counsel.

65. The Class Representatives not only devoted time and effort to this litigation, but the end result of their efforts (and those of counsel) was a substantial benefit to the Class. The Class Representatives should be compensated for their service.

66. Class Counsel hereby acknowledge that, after the original Settlement Agreement and Release was executed and this Court's entry of the Preliminary Approval Order, a panel of the United States Court of Appeals for the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).

In *NPAS*, the Eleventh Circuit held that service awards for class action representatives are impermissible.

67. Although the Settlement Agreement makes clear that the settlement is in no way conditioned upon the granting of any service awards [ECF No. 147-1 at ¶V.], Class Counsel does not intend to seek any service awards for the Named Plaintiffs unless the ruling in *NPAS* prohibiting service awards is reversed, vacated, or overruled on or before the final approval hearing. Class Counsel will advise this Court of the status of *NPAS* prior to the Final Fairness Hearing. To the extent is still binding on this Court at the time of final approval, Class Counsel respectfully requests that this Court the Parties respectfully submit that this Court could still approve the settlement and all of its terms, but also deny approval of specifically a service award and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing en banc in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS*. *See Metzler, et al. v. Medical Management International, Inc., et al.*, Case No 19-02289-VMC-CPT, 2020 WL 5994537 (M.D. Fla. October 9, 2020) (reserving jurisdiction to award service awards if NPAS is reversed). Class Counsel could then "move for reconsideration upon such a reversal." *Id*. However, should NPAS be reversed, vacated, or overruled, the Court should approve the service awards for the Representative Plaintiffs. The detailed notice advised Class Members that the Plaintiffs would apply for a service awards not to exceed $10,000 each to Class Representatives Juan Collins and John Fowler for taking on the risks of litigation, and for Settlement of their individual claims as a Settlement Class Member in this Action. Further, the Notice disclosed that an application for an award of $2,000 each to Additional Plaintiffs Philip Racies, Elaine Spath, John Karathanos, James Vanderwerff, Max Engert, Jack Purchase, Ronald Atkinson, and Diana Miloro for their participation as the putative class representatives in the Prevagen Actions will be made. To date, no class member has filed an objection to this reasonable request.

**V.    Class Counsel's Attorneys' Fees**

68. Pursuant to the Settlement, Class Counsel are entitled to request that the Court award attorneys' fees up $4,214,000.00 which is roughly 12% of the cash settlement benefits.

If the value of the injunctive relief is included, the percentage is even lower.[3] Defendants have agreed not to oppose Class Counsel's request for attorneys' fees and expenses. *Id*. The Parties negotiated and reached this agreement regarding attorneys' fees and expenses only after reaching agreement on all other material terms of this Settlement.

69. As indicated in the Court-approved Notice disseminated to the Settlement Class, and consistent with standard class action practice and procedure, Class Counsel request a fee amounting to $4,214,000.00, inclusive of all litigation costs and expenses.

    **A.** *The Claims against Defendants Required Substantial Time and Labor*.

70. Investigating, prosecuting, and settling the claims here demanded considerable time and labor. The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and conference calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent many hours investigating the claims of many of the potential plaintiffs against Defendants in this action.

71. Class Counsel litigated this action tenaciously, including achieving a certified litigation class.

72. Class Counsel expended significant resources researching and developing the legal claims at issue.

---

[3] *See Poertner v. Gillette Co.*, 618 Fed. App'x 624 (11th Cir. 2015) (class counsel fees properly awarded based on percentage of total "settlement pie," including injunctive relief and *cy pres* award); *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.") (internal quotation and citation omitted); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *Sheppard v. Consol. Edison Co. of N.Y., Inc.,* 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (in valuing total settlement for percentage-based attorneys' fee award, court included $6.745 million in monetary relief and "an estimated $5 million in non-monetary, injunctive relief"); *Steiner v. Williams,* 2001 WL 604035, at *4 (S.D.N.Y. May 31, 2001) ("Although the settlement in this action did not involve the payment of money by the defendants, counsel may nonetheless recover a fee if the settlement conferred a substantial non-monetary benefit.").

73. Class Counsel prepared for and participated in many meetings and conference calls in an attempt to settle the action. After the Parties executed a term sheet, Class Counsel engaged in protracted discussions and drafting over the terms of the Settlement Agreement, Notice, and claim forms. In addition, Class Counsel had continued communications with Defendants, pending final approval of the Settlement.

74. Further, the Settlement requires a continuing role for Class Counsel after final approval, in reviewing the payments made to Class Members, as well as any denied claims and reasons for denial. Class Counsel have negotiated a procedure to resolve any disagreements with Defendants regarding denied claims and will not involve the Court unless those procedures fail to result in a mutually agreeable solution. Class Counsel have responded to many Class Member calls and written inquiries concerning the Settlement and will continue to do so. Finally, Class Counsel will be responsible for responding to any appeals that may be filed and for handling all other post-approval proceedings. These substantial efforts justify awarding Class Counsel the requested fee.

75. All told, Class Counsel's steadfast and coordinated work paid great dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement currently before the Court. Taken together, the time and resources Class Counsel devoted to prosecuting and settling this action of nationwide importance justify the fee we are now seeking.

**B.** *The Issues Involved Were Novel and Difficult and Required the Exceptional Skill of a Highly Talented Group of Attorneys.*

76. The Court has witnessed the high quality of Class Counsel's legal work, which has conferred a significant benefit on the Settlement Class in the face of daunting litigation obstacles. As the Court is aware, it is extremely challenging to establish liability based upon the facts at issue in this litigation. This complex action requires the acquisition and analysis of specific science and economic data – and the efforts of highly skilled lawyers.

77. Indeed, litigation of a case like this requires counsel highly trained in class action law and procedure as well as the specialized issues these cases present. All of the lawyers representing Plaintiffs possess these attributes, and their participation as Class Counsel added significant value to the representation of this Settlement Class consisting of millions of individuals. The record before the Court establishes that the Action involved a

wide array of complex challenges, which Class Counsel met at every juncture based on their extensive experience in complex litigation and class action litigation.

78. In assessing the quality of representation by Class Counsel, the Court also should consider the quality of their opposing counsel. Defendants are represented by extremely able and diligent attorneys. These were worthy, highly competent adversaries.

**C.** *The Claims against Defendants Entailed Considerable Risk.*

79. There have been vigorous defenses to similar claims in other actions denying any and all liability and similar defenses have been raised in this Action. The time and expense demands required to prepare to work on this for Class Counsel were daunting, to say the least, and obviated their ability to work on numerous other matters. Class Counsel's success under these circumstances thus represents a genuine milestone.

80. Prosecuting the Action was risky from the outset. While several risks existed, Class Counsel limit the discussion to the most serious risks.

81. First, the possibility that this Court would dismiss this action in its entirety based upon arguments that would be raised by Defendants in their motions to dismiss.

82. Second, the Court could have granted summary judgment on a variety of issues raised by Defendants including failure to state a claim, as Defendants would argue that they did nothing wrong and their marketing of Prevagen was proper under the law.

83. Each of these risks, standing alone, could have impeded Plaintiffs' successful prosecution of these claims at trial (and in any appeal).

84. Together, they overwhelmingly demonstrate that Plaintiffs' claims against Defendants were far from a "slam dunk" and that, in light of all the circumstances, the Settlement achieves an excellent class-wide result.

**D.** *Class Counsel Assumed Substantial Risk to Pursue the Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.*

85. Class Counsel prosecuted the Action entirely on a contingent fee basis. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants the requested fee.

86. Public policy concerns – especially ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs whose individual claims would defy vindication – further justify the requested fee award.

87. Because of the nature of a contingent practice where cases are predominantly "big cases" lasting for years, not only do contingent firms have to pay regular overhead, but they also have to advance the substantial expenses of litigation of this kind. The financial burden on counsel bringing contingent fee cases is far greater than on a firm that is paid on an ongoing basis.

88. The above does not take into consideration the possibility of no recovery. It is not unusual to spend tens of thousands of hours on losing efforts. Prosecutions without recovery are exceedingly expensive. While the Court must focus on the reasonableness of the fees to be paid in this case, the fees and expenses that go unpaid when the cases are dismissed should not be ignored.

89. The progress of the Action to date readily demonstrates the inherent risk that Class Counsel faced in taking these cases on a contingency fee basis. Despite Class Counsel's ongoing effort in litigating before this Court, Class Counsel remain completely uncompensated for the time and expenses they have invested. Uncompensated expenditures of this magnitude can severely damage or even destroy law firms. There can be no reasonable dispute that the Action entailed substantial risk of nonpayment and resulting financial harm for our practices.

90. Furthermore, the time Class Counsel spent on the Action was time that they could not spend on other matters. This factor thus strongly militates in favor of Class Counsel's requested fee.

E. *Class Counsel Have Achieved an Excellent Result.*

91. The result Class Counsel achieved is outstanding. Instead of facing additional years of costly and uncertain litigation, Settlement Class Members will receive an immediate benefit from the potential monetary settlement benefits of over $36 million, which represents a significant portion of the Class Members' anticipated total recovery, depending on the final damages calculations of Plaintiffs' experts. The number is much higher when one considers the injunctive relief obtained. The Settlement represents an exceptional achievement by any measure.

F. *The Requested Fee Comports with Customary Fees Awarded in Similar Cases.*

92. The fee requested here matches the fee typically awarded in similar cases. As legions of decisions have recognized, a fee award of 30% or more of a common benefit is well

17

within the range of a customary fee. The fee requested is only just under 12% (without any consideration of the injunctive relief). Moreover, the requested fee falls squarely below the range of awards made in numerous cases brought in this Circuit and District.

### G. *Other Factors Also Favor Approving Class Counsel's Fee Request*.

93. Other factors likewise support granting Class Counsel's fee request. As noted, the burdens of this litigation have precluded Class Counsel's pursuit of other cases. The relatively small size of the firms representing Plaintiff, and the major commitment involved in accepting this representation, precluded Class Counsel's firms from working on other matters and accepting other representations. In addition, Class Counsel's fee request is firmly rooted in the economics of prosecuting a class action. *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir. 1991). Without adequate compensation and financial reward, cases such as this simply could not be pursued.

## VI. Conclusion

94. Class Counsel are well aware of the strengths and weaknesses of their case, the principles of law applicable to the disputed issues, and the relative risks of continuing to prosecute the litigation and believe the Settlement obtained is an excellent result. For the reasons set forth above and in the accompanying memoranda, Class Counsel respectfully submit that the Settlement is fair, reasonable, and adequate and should be approved. In addition, the amount of attorney's fees expenses and service award agreed upon by the Parties is fair and reasonable and should be approved by the Court.

We declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami-Dade County, Florida on October 16, 2020.

By: /s/ *Adam M. Moskowitz*
    Adam M. Moskowitz

By: /s/ *John Scarola*
    John Scarola